IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLUEEARTH BIOFUELS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-08-CV-1779-L |
| HAWAIIAN ELECTRIC COMPANY, | § | |
| INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Hawaiian Electric Company, Inc. ("HECO"), Maui Electric Company, Ltd. ("MECO"), and Karl E. Stahlkopf ("Stahlkopf"), collectively referred to as the "HECO Defendants," and Defendant Aloha Petroleum, Ltd. ("Aloha") have filed separate motions to transfer this diversity action to a federal district court in Hawaii. For the reasons stated herein, the motions are granted.

I.

In March 2006, Plaintiff BlueEarth Biofuels, LLC ("BlueEarth"), a Nevada limited liability company headquartered in Texas, entered into negotiations with HECO and its wholly-owned subsidiary, MECO, for the joint development of a biodiesel production facility on the Hawaiian island of Maui ("the Maui Project"). (HECO App. at 2, ¶ 4). During the course of those negotiations, plaintiff entered into separate Mutual Non-Circumvention and Non-Disclosure Agreements ("NDAs") with HECO and MECO to facilitate the exchange of confidential information as the parties worked toward their mutual goal of developing "renewable energy opportunities." (*Id.* at 2, ¶ 5; *see also* Plf. First Am. Compl., Exhs. A & B). The NDAs prohibited the parties from, *inter alia*, disclosing confidential information to third parties, using confidential information for purposes

unrelated to the Maui Project, and soliciting or accepting business from sources made available by the other party without express written authorization. (Plf. First. Am. Compl., Exh. A at 1, 3 & Exh. B at 1, 3). After months of additional negotiations, plaintiff, HECO, and MECO executed a Memorandum of Understanding ("the Project Agreement") outlining the responsibilities of each party in developing the Maui Project, including the mutual obligation to work exclusively with one another in good faith to finalize an investment agreement, to develop the site of the biodiesel production facility, and to negotiate an acceptable tolling agreement. (HECO App. at 2, ¶ 6 & 9, ¶¶ 1-3). Karl E. Stahlkopf signed both the NDA and the Project Agreement in his capacity as Senior Vice-President of HECO. (*Id.* at 12; Plf. First Am. Compl., Exh. A at 4).

In August 2007, plaintiff approached Aloha about operating a fuel storage facility that would provide logistical and transportation support for the Maui Project. (Aloha App. at 3-4, ¶¶ 5, 7). To facilitate their discussions, plaintiff and Aloha entered into a Mutual Non-Disclosure Agreement which, like the NDAs with HECO and MECO, prohibited the parties from disclosing confidential information to third parties and using confidential information for purposes unrelated to the project. (*See id.* at 18-21). After the agreement was signed, plaintiff introduced Aloha to MECO as a potential operator of the fuel storage facility. (*See* Plf. First Am. Compl. at 12, ¶ 29). An Aloha representative then traveled to Iowa to visit a biodiesel production facility operated by NewMech Companies, Inc. ("NewMech") that was similar to the facility planned for Maui. (Aloha App. at 9, ¶¶ 35-36). Prior to that visit, plaintiff, Aloha, and NewMech entered into yet another confidentiality agreement to protect the disclosure of confidential information and to prevent one party from soliciting business from clients of another party ("the Aloha NDA"). (Plf. First Am. Compl., Exh. D at 1, ¶ 1 & 2, ¶ 6.b).

The events giving rise to this suit started to unfold around the time Aloha visited NewMech. According to plaintiff, the HECO Defendants ceased all efforts to negotiate an acceptable tolling agreement with investors and refused to work in good faith with plaintiff to jointly develop the Maui Project. (Plf. First Am. Compl. at 13, ¶¶ 32-34 & 14-15, ¶ 38). Instead, the HECO Defendants allegedly promised Aloha a key investment role in the project and the opportunity to purchase plaintiff's majority interest. (*Id.* at 13-14, ¶ 35). Plaintiff further alleges that the HECO Defendants and Aloha violated their respective confidentiality agreements by disparaging plaintiff, by using confidential information for unauthorized purposes, and by soliciting plaintiff's clients. (*Id.* at 14-15, ¶¶ 37, 41).

On October 6, 2008, plaintiff filed this lawsuit against the HECO Defendants and Aloha. In its complaint, plaintiff alleges that venue is proper in this district because "all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of Texas," and the various confidentiality agreements executed by the parties provide for jurisdiction and venue in this forum. (*Id.* at 6, ¶ 11). Defendants, all of whom reside in Hawaii for venue purposes, now move to transfer this case to the District of Hawaii.[1] The transfer motions have been fully briefed by the parties and are ripe for determination.

II.

The court begins its analysis by examining the relevant venue statute. Under 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded only on diversity of citizenship must be

---

[1] The venue issue has been raised in at least four motions filed by defendants, including: (1) Aloha's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and Rule 12(b)(3) motion to dismiss for improper venue or, alternatively, motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Doc. #4); (2) the HECO Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and Rule 12(b)(3) motion to dismiss for improper venue or, alternatively, motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Docs. #7 & 11); (3) Aloha's motion for immediate transfer of venue pursuant to 28 U.S.C. § 1404(a) (Doc. #32); and (4) the HECO Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Doc. #35). Only the section 1404(a) motions have been referred to the magistrate judge for determination. (*See* Doc. #46).

brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. Plaintiff does not allege that any of the defendants reside in the Northern District of Texas. Nor is there any evidence that all or a substantial part of the events or omissions giving rise to plaintiff's claims occurred within this district. Instead, plaintiff argues that all parties contractually agreed to litigate any dispute involving the Maui Project in a Texas federal court. In particular, plaintiff relies on a forum selection clause in the Aloha NDA, which provides:

> Jurisdiction in any action brought in any court, federal or state, shall reside within the State of domicile of the party aggrieved, in any such court having subject matter jurisdiction arising under this Agreement.

(*Id.*, Exh. D at 2, ¶ 8). A similar provision in the HECO and MECO agreements states:

> This Agreement is hereto enforceable in any United States court as the exclusive venue.

(*Id.*, Exh A at 3, ¶ 7 & Exh. B at 3, ¶ 7). Defendants counter that this action should be transferred to Hawaii because none of the agreements provide for mandatory venue in Texas, and Hawaii is a more convenient forum for the parties and witnesses.

A.

Forum selection clauses may be classified either as mandatory or permissive. *See Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 560 (N.D. Tex. 2003). Where the agreement contains clear language showing that venue is appropriate only in a designated forum, the clause is mandatory. *See id.* (citing cases). By contrast, a permissive forum selection clause authorizes jurisdiction or

venue in a designated forum, but does not prohibit litigation elsewhere. *See id.* (citing cases). It is important to distinguish between jurisdiction and venue when interpreting a forum selection clause. "Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction." *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004), *cert. denied*, 125 S.Ct. 1396 (2005). *See also Interactive Music Technology, LLC v. Roland Corp. U.S.*, No. 6-07-CV-282, 2008 WL 245142 at *3 (E.D. Tex. Jan. 29, 2008) ("[W]here *venue* is specified in a forum selection clause *with mandatory or obligatory language,* the clause will be enforced, while where only *jurisdiction* is specified, the clause will generally not be enforced without some further language indicating the parties' intent to make venue exclusive.") (emphasis in original).

None of the agreements at issue provide for exclusive venue in the Northern District of Texas. In fact, the Aloha NDA does not mention venue at all. Rather, the agreement states that "*[j]urisdiction* in any action brought in any court, federal or state, shall reside within the State of domicile of the party aggrieved[.]" (Plf. First Am. Compl., Exh. D at 2, ¶ 8) (emphasis added). While the HECO and MECO agreements provide for "exclusive venue" in any United States court, (*see id.*, Exh. A at 3, ¶ 7 & Exh. B at 3, ¶ 7), neither agreement identifies the Northern District of Texas as the preferred forum for litigating disputes involving the Maui Project. The plain language of this forum selection clause permits litigation in any federal district court, including Hawaii. Because none of the agreements contain clear language showing that venue is appropriate only in Texas, the forum selection clauses are permissive, not mandatory. *See BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, 546 F.Supp.2d 437, 442-43 (S.D. Tex. 2008) (forum selection clause providing that party may bring suit in "any jurisdiction" was permissive).

B.

Having determined that the parties are not contractually obligated to litigate this dispute in Texas, the court must decide whether to transfer the action to Hawaii. Under 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of this statute is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 593 (N.D. Tex. 2003), *quoting Andrade v. Chojnacki*, 934 F.Supp. 817, 832 (S.D. Tex. 1996). In ruling on a motion to transfer venue, the court first must determine whether the plaintiff's claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc), *cert. denied*, 129 S.Ct. 1336 (2009). If venue is proper in the transferee district, the defendant must show "good cause" for the transfer. *Id.* at 315. To show "good cause," the defendant must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* If the defendant cannot meet this burden, the plaintiff's choice of forum should be respected. *Id.*; *see also Doubletree Partners, L.P. v. Land America American Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599 at *4 (N.D. Tex. Dec. 3, 2008).

In deciding a transfer motion, the court must consider various private and public interest factors. *In re Volkswagen*, 545 F.3d at 315. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Id.*; *see also Von Graffenreid*, 246 F.Supp.2d at 562 (citing cases). The public interest factors are: (1) the administrative difficulties flowing from court

congestion; (2) the local interest in having localized disputes resolved at home; (3) the familiarity of the forum with the law that governs the action; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen*, 545 F.3d at 315; *Von Graffenreid*, 246 F.Supp.2d at 562. While these factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. *In re Volkswagen*, 545 F.3d at 315. Moreover, no single factor is entitled to dispositive weight. *Id.*

1.

The court has little difficulty concluding that plaintiff could have brought this action in Hawaii. Absent a mandatory forum selection clause establishing venue in Texas, Hawaii is clearly a proper forum for litigating this dispute. Indeed, plaintiff concedes as much in its response. (*See* Plf. Resp. Br. at 10).

2.

Next, the court considers the private interest factors relevant to the section 1404(a) transfer analysis. The evidence submitted by plaintiff shows that key witnesses are located in at least 13 different states, including Texas and Hawaii. (*See* Plf. App. at 7, ¶ 21).[2] In addition, at least one potential witness resides in London, England. (*Id.*). It is reasonable to infer that many of these witnesses possess documents that are relevant to the subject matter of this litigation. Where, as here, witnesses and documents are spread across the globe, this factor is neutral. *See Interactive Music Technology*, 2008 WL 245142 at *10 (convenience of witness factor neutral where witnesses were scattered across the country); *Metromedia Steakhouses Co., L.P. v. BMJ Foods Puerto Rico, Inc.*,

---

[2] Plaintiff objects to and moves to strike evidence contained in a consolidated reply appendix filed by defendants, including evidence that 17 current or former HECO and MECO employees who were involved in the Maui Project still reside in Hawaii. Because the court has not considered this evidence in deciding the transfer motions, plaintiff's motion to strike [Doc. #52] is denied as moot. *See Ondova Ltd. v. Manila Industries, Inc.*, 513 F.Supp.2d 762, 768 (N.D. Tex. 2007) (denying motion to strike reply appendix as moot where court did not consider new evidence in deciding the underlying motion).

3-07-CV-2042-D, 2008 WL 794533 at *3 (N.D. Tex. Mar. 26, 2008) (same as to documents located in different states); *N2 Consulting, LLC v. Engineered Fastener Co.*, No. 3-02-CV-0308-BD, 2002 WL 31246770 at *4 (N.D. Tex. Oct. 2, 2002) (same).

Nor are any of the other private interest factors determinative of the transfer issue. Regardless of whether this action is litigated in Hawaii or Texas, the parties may take advantage of modern technology to minimize any inconvenience to themselves and their witnesses and to control the costs of litigation. *See In re Volkswagen*, 545 F.3d at 316 (due to increasing technological advances, concerns regarding relative ease of access to sources of proof have been significantly diminished, though not rendered completely superfluous). Most relevant documents can be exchanged electronically, "making the physical location of the documents of lesser consequence." *Interactive Music Technology*, 2008 WL 245142 at *10, citing *Symbol Technologies, Inc. v. Metrologic Instruments, Inc.*, 450 F.Supp.2d 676, 678 (E.D. Tex. 2006). The parties may depose any witness who is unwilling or unable to travel to Hawaii or Texas for trial. *See Levy v. City of Rio Grande City*, No. 3-04-CV-0381-B, 2004 WL 2847273 at *3 (N.D. Tex. Dec. 9, 2004) (inconvenience to witnesses did not require transfer where movant failed to explain why it could not effectively present testimony by deposition); *Wash Solutions, L.L.C. v. Auto Spa of Oklahoma, L.L.C.*, No. 3-06-CV-0437-BD, 2006 WL 1348748 at *1 (N.D. Tex. May 16, 2006) (same). Even the fact that the site of the proposed biodiesel production facility is located in Hawaii does not weigh in favor of transfer. *See Ternium International U.S.A. Corp. v. Consolidated Systems, Inc.*, No. 3-08-CV-0816-G, 2009 WL 464953 at *3 (N.D. Tex. Feb. 24, 2009) (proximity of proposed transferee district to the premises did not weigh in favor of transfer where the moving party failed to establish why the ability to view the premises was necessary); *N2 Consulting*, 2002 WL 31246770 at *4 n. 5 (same).

4.

While the private interest factors are neutral, the public interest factors weigh heavily in favor of transfer. Most importantly, Hawaii has a significant connection to the subject matter of this litigation, which arises out of a failed endeavor to construct a biodiesel fuel production facility on the island of Maui for the benefit of Hawaii residents. The conduct of which plaintiff complains -- secret meetings between the HECO Defendants and Aloha in furtherance of an alleged conspiracy to oust plaintiff from the Maui Project--occurred in Hawaii. Not only do all the defendants reside in Hawaii, but plaintiff has strong connections to that forum. BlueEarth Biofuels, LLC was formed in March 2006 for the express purpose of developing the Maui Project. (*See* Plf. App. at 3-4, ¶¶ 4, 6). From March 6, 2007 to July 22, 2008, plaintiff maintained its principal place of business in Hawaii. (*Id.* at 4, ¶¶ 5, 9 & 7, ¶ 20). Plaintiff also registered in the State of Hawaii as a foreign limited liability company. (*Id.* at 4, ¶ 5). Conversely, the Northern District of Texas has absolutely no interest in this litigation. None of the events or omissions giving rise to this suit occurred in this district and plaintiff does not reside here.[3]

In addition, Hawaii law likely will govern at least part of this dispute. The Project Agreement signed by plaintiff, HECO, and MECO expressly provides that it "shall be governed by, construed and applied in accordance with the laws of the State of Hawaii." (Plf. First Am. Compl., Exh. C at 6, ¶ 6). Such choice-of-law clauses are presumptively valid and generally upheld "if reasonably related to the transaction, and the chosen law is not contrary to the fundamental policy of the forum." *CK DFW Partners Ltd. v. City Kitchens, Inc.*, No. 3-06-CV-1598-D, 2007 WL 2381259 at *7 n.17 (N.D. Tex. Aug. 17, 2007); *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco,*

---

[3] Plaintiff now maintains its principal place of business in Frisco, Texas, which lies within the Sherman Division of the Eastern District of Texas. (*See* Plf. App. at 3, ¶ 4 & 7, ¶ 22).

*Inc.*, 344 F.Supp.2d 986, 987 (S.D. Tex. 2004). This public interest factor weighs in favor of a transfer. *See NDC Investments LLC v. Lehman Bros., Inc.*, No 3-05-CV-2036-D, 2006 WL 2051030 at *5 (N.D. Tex. Jul. 21, 2006).

Finally, the court rejects plaintiff's unsubstantiated arguments regarding docket congestion and its inability to receive a fair trial in Hawaii. First, federal courts in the District of Hawaii, where each judge had an average of 207 pending cases last year, are *less congested* than courts in the Northern District of Texas, where each judge had an average of 325 pending cases during the same time period. *See* http://www.uscourts.gov/cgi-bin/cmsd2008.pl. That courts in the Northern District of Texas have a slightly faster disposition time for civil cases than courts in the District of Hawaii is inconsequential, particularly since the disposition time differs by only four-months. *See Sanchez v. Rawlings*, No. G-06-CV-718, 2007 WL 1040469 *2 (S.D. Tex. Apr. 2, 2007) (possibility of brief delay does not weigh for or against transfer). Second, the fact that Hawaii jurors might be customers of HECO or MECO and have a financial interest--or at least a perceived interest--in the outcome of this litigation does not necessarily mean they will be biased against plaintiff. *See In re Wyoming Tight Sands Antitrust Cases*, 723 F.Supp. 561, 563 (D. Kan. 1988) (speculation that utility customers will benefit from any recovery by the utility company does not weigh in favor of transfer); *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 389 F.Supp. 568, 571 (D.C. Va. 1975) (same). If the case proceeds to trial, the court and the lawyers can use proven voir dire techniques to eliminate potential jurors with any actual bias. None of these concerns outweigh the other public interest factors which favor transferring this case to Hawaii.

## **CONCLUSION**

Defendants have clearly demonstrated that Hawaii has a significant relationship to the parties and an interest in the subject matter of this litigation. This district has no such relationship or

interest. Accordingly, defendants' motions to transfer venue [Docs. # 4, 7, 11, 32 & 35] are granted.

This case is hereby transferred to the District of Hawaii pursuant to 28 U.S.C. § 1404(a).[4]

    SO ORDERED.

    DATED: April 3, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[4] Although the court does not decide the Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction and the Rule 12(b)(3) motions to dismiss for improper venue filed by defendants, it is likely those motions will be moot once the case is transferred to Hawaii.