IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BLUEEARTH BIOFUELS, LLC, ) | CIV. NO. 09-00181 DAE-KSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| HAWAIIAN ELECTRIC ) | |
| COMPANY, INC.; MAUI ) | |
| ELECTRIC COMPANY, LTD.; ) | |
| ALOHA PETROLEUM, LTD.; AND ) | |
| KARL E. STAHLKOPF, ) | |
| Individually, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS
HAWAIIAN ELECTRIC COMPANY, INC., MAUI ELECTRIC COMPANY,
LTD. AND KARL E. STAHLKOPF'S AMENDED MOTION TO DISMISS THE
FOURTH, SIXTH, SEVENTH, NINTH, TENTH AND ELEVENTH CAUSES OF
ACTION OF PLAINTIFF BLUEEARTH BIOFUELS, LLC'S THIRD
AMENDED COMPLAINT AND; (2) GRANTING IN PART AND DENYING IN
PART ALOHA PETROLEUM, LTD.'S MOTION FOR JUDGMENT
ON THE PLEADINGS ON COUNTS SIX THROUGH TEN
OF THE THIRD AMENDED COMPLAINT

On February 7, 2011, the Court heard Defendants Hawaiian Electric

Company, Inc. and Maui Electric Company, Ltd.'s (the "HECO/MECO

Defendants") Amended Motion to Dismiss the Fourth, Sixth, Seventh, Ninth,

Tenth and Eleventh Causes of Action of Plaintiff BlueEarth BioFuels, LLC's Third

Amended Complaint and Defendant Aloha Petroleum, Ltd.'s ("Aloha") Motion for Judgment on the Pleadings on Counts Six through Ten of the Third Amended Complaint. John S. Edmunds, Esq., Michael K. Hurst, Esq., Jaime Olin, Esq., and Steven W. Hopkins, Esq., appeared on behalf of Plaintiff; Teri-Ann E.S. Nagata, Esq., and C. Michael Heihre, Esq., appeared at the hearing on behalf of Defendant Aloha Petroleum, Ltd. ("Aloha"); and Clyde J. Wadsworth, Esq., appeared at the hearing on behalf of the HECO/MECO Defendants. After reviewing the motions and the supporting and opposing memoranda, the Court: **GRANTS IN PART** and **DENIES IN PART** the HECO/MECO Defendants' Motion to Dismiss (Doc. # 392) and **GRANTS IN PART** and **DENIES IN PART** Aloha's Motion for Judgment (Doc. # 406). Specifically, the Court **DENIES** Aloha's Motion for Judgment and the HECO/MECO Defendants' Motion to Dismiss with respect to Count Nine and **DENIES** the HECO/MECO Defendants' Motion to Dismiss with respect to Count Eleven. Counts Four, Seven, Eight, and Ten of the Complaint are **DISMISSED**. Count Six is **DISMISSED WITHOUT PREJUDICE**.

<u>BACKGROUND</u>

This case involves failed plans to create and construct a biodiesel production facility on Maui. (Third Amended Complaint ("TAC"), Doc. # 65.)

In 2006, BlueEarth Biofuels, LLC's ("BlueEarth"), Hawaiian Electric Company, Inc. ("HECO") and Maui Electric Company, Ltd. ("MECO") began talks to jointly and exclusively develop a local biodiesel production facility to replace their use of petroleum diesel for power production. (Id. ¶ 12; Doc. # 325, Ex. 166.) The new facility would produce biodiesel, which is derived from vegetable feedstock. (Id.)

On September 27, 2006, BlueEarth executed Mutual Non-Circumvention and Non-Disclosure Agreements ("NDAs") with both HECO and MECO. (TAC ¶¶ 14, 15.) These NDAs established, among other things, that: (1) confidential information given by one party to another would remain property of the originating party; (2) such confidential information would not be disclosed or used for any purpose by the receiving party, other than for evaluation of the Project; (3) any contacts would be exclusive and valuable contacts of the disclosing party; (4) the party receiving contacts would not enter into direct negotiations or transactions with contacts; and (5) neither party would solicit or accept any business from sources made available by one party to the other without the express written permission of the disclosing party. (Doc. # 269, Ex. A; id., Ex. B.)

After several months of negotiations, BlueEarth, HECO, and MECO signed a confidential Memorandum of Understanding (the "MOU") detailing the

plan for the "evaluation, funding and development" of the large-scale biodiesel

production facility to be developed by a newly formed limited liability company,

originally termed "Newco," owned by the parties and located on MECO-owned

land on Maui (the "Project").  (TAC ¶ 19; Doc. # 269, Ex. C.)  Although the MOU

was entered into between BlueEarth, HECO, and MECO, HECO's responsibilities

in the MOU were expressly contemplated to be superceded by an unregulated

subsidiary identified as "HUS" and were so designated by the MOU's terms.

(Doc. # 269, Ex. C.)  HUS was defined as "[b]oth HECO and the Unregulated

Subsidiary[.]"  (Id.)

The MOU specified how the parties would proceed with the Project's

planning, developing, permitting, funding, construction, and operation.  (Id.)  The

MOU also contained a provision in which the parties agreed to "work exclusively

and in good faith with each other to develop" the Project.  (Doc. # 269, Ex. C at 4.)

The MOU explicitly contemplated future formal agreements in furtherance of the

parties' business relationship, including a "Tolling Agreement" for the long-term

sale of biodiesel produced by the Project.  (TAC ¶ 21, n.1; Doc. # 269, Ex. C at 2.)

The Project was anticipated to be owned 51% by BlueEarth and 49% by HUS.

(Doc. # 269, Ex. C at 1-3.)  Specific formalities were left to an "Investment

Agreement" to be entered into the parties at a later date.  (Doc. # 269, Ex. C at 1–5.)

Subsequent to the signing of the MOU, two companies were formed: (1) the parties created the entity identified in the MOU as "Newco" and named the company BlueEarth Maui Biodiesel LLC ("BEMB") (Doc. # 316, Ex. 111 at H091481); and (2) HECO created the unregulated subsidiary contemplated in the MOU as HUS and named it Uluwehiokama Biofuels Corp ("UBC").  (Doc. # 316, Ex. 117).  The parties negotiated, and on February 4, 2008 signed, an Operating Agreement and an Investment Agreement (collectively, the "BEMB Agreements") to govern the operation and ownership of BEMB as contemplated in the MOU. The BEMB agreements were entered into between BlueEarth, UBC and BEMB and were signed on February 4, 2008.  (Doc. # 326, Exs. 102, 103.)

Sometime in 2007, BlueEarth began searching for potential fuel subcontractors who would manage and run logistics for a fuel terminal.  (TAC ¶ 27.)  The fuel terminal would be used to store and transfer the raw materials, such as palm oil, and fuel in connection with the Project.  (Id. 27–28.)  One of the subcontractors approached by BlueEarth was Aloha.[1]  (Id.)  BlueEarth also

_____

[1] Aloha's later role in the Project and HECO/MECO's alleged unilateral attempt to replace BlueEarth with Aloha is a matter of great contention between the (continued...)

subsequently considered Aloha as a candidate for providing an equity investment in the Project. (See Doc. # 300 Exs. 14 at BE022996, 93.) According to BlueEarth, over the course of the next two years BlueEarth spent over $1.2 million working to develop the Project. (TAC ¶ 25.)

As the Project progressed, BlueEarth and HECO worked jointly to develop the Tolling Agreement and originally engaged in negotiations with Energy Capital Partners ("ECP") for this purpose.[2] (Doc. # 316, Ex. 104.) After the negotiations with ECP fell through, BlueEarth alleges that HECO, MECO, Karl Stahlkopf—HECO's then-Vice President of Energy Solutions and Chief Technology Officer—and Aloha began engaging in private negotiations concerning the development, investment, and ownership of the Project. (TAC ¶¶ 32–36.) BlueEarth further contends that HECO, MECO, and Aloha worked to circumvent the MOU and their respective NDAs in order to cut BlueEarth out of the Project altogether. (Id.)

---

[1](...continued)
parties.

[2] The Court notes that although the responsibility for negotiations regarding the Tolling Agreement was a UBC obligation (Doc. # 326, Ex. 102, Schedule C), HECO and BlueEarth appear to have engaged in the negotiations as representatives of BEMB. (Id.)

Eventually, negotiations for the Project fell through and plans ceased. (Id. ¶ 39.)  In early October 2008, BlueEarth filed the instant lawsuit in the Northern District of Texas, claiming that Defendants had violated the various NDAs and the Confidentiality Agreement and engaged in a scheme to circumvent BlueEarth's role in the Project.  (Id. ¶ 10.)  On April 21, 2009, the case was transferred to this District.  (Id.)

On November 1, 2010, BlueEarth filed its Third Amended Complaint ("Complaint").  (Doc. # 387.)  The Complaint alleges the following eleven causes of action:

- First: breach of contract (HECO NDA) against HECO (TAC ¶¶ 44–48);

- Second: breach of contract (MECO NDA) against MECO (Id. ¶¶ 49–53);

- Third: breach of contract (MOU) against HECO and MECO (Id. ¶¶ 54–59);

- Fourth: quantum meruit/unjust enrichment against HECO and MECO (Id. ¶¶ 60–63);

- Fifth: breach of contract (Aloha NDA and Confidentiality Agreement) against Aloha (Id. ¶¶ 64-68);

- Sixth: unfair competition under Haw. Rev. Stat. § 480-2 against HECO, MECO, Stahlkopf, and Aloha (Id. ¶¶ 69–76);

- Seventh: tortious interference with existing contracts (all NDAs and the Confidentiality Agreement) as to all Defendants (Id. ¶¶ 77–84);

- Eighth: tortious interference with existing contract (MOU) against Aloha (Id. ¶¶ 85–89);

- Ninth: misappropriation of trade secrets against all Defendants in violation of Haw. Rev. Stat. § 482B-2 (Id. ¶¶ 90–93);

- Tenth: conversion against all Defendants (Id. ¶¶ 94–95);

- Eleventh: breach of fiduciary duty against HECO and MECO (Id. ¶¶ 96–101).

On June 29, 2009, Defendant Aloha filed a Motion to Dismiss (Doc. # 74) and HECO/MECO Defendants and Karl Stahlkopf filed a joint Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 75). On October 7, 2009, this Court issued an order denying without prejudice Defendant Aloha's Motion to Dismiss and HECO/MECO Defendants and Karl Stahlkopf's joint Motion to Dismiss and directed the parties to submit proposed questions to be certified to the Supreme Court of Hawai`i. (Doc. # 168.)

On September 14, 2009, BlueEarth filed a motion for a Temporary Restraining Order.  (Doc. # 143.)  On October 26, 2009, after significant briefing from both sides, this Court issued an order denying BlueEarth's motion.  (Doc. # 188.)  Subsequently, this Court certified questions regarding the scope of Hawaii Uniform Trade Secrets Act ("HUTSA") to the Supreme Court of Hawai`i.  (Doc. # 191.)  An Opinion of the Supreme Court answering the Certified Questions was returned on July 21, 2010.  (Doc. # 301.)  In response, Blue Earth requested permission to file its Third Amended Complaint, which was granted on October 27, 2010.  (Doc. # 349.)

On May 18, 2010, BlueEarth filed a Motion for Partial Summary Judgment as to Counts 1–3 of the SAC against HECO and MECO ("MPSJ"). (Doc. # 268.)  On May 19, 2010, Blue Earth filed a concise statement in support of its MPSJ.  (Doc. # 269.)  Also on May 19, 2010, BlueEarth filed additional exhibits to its concise statement in support.  (Docs. ## 271-274.)  On August 2, 2010, HECO/MECO Defendants filed a Counter Motion for Partial Summary Judgment ("CMPSJ").  (Docs. ## 315 (redacted), 322 (sealed).)  The same day, HECO/MECO Defendants filed a concise statement in support of their CMPSJ. (Docs. ## 316 (redacted), 323 (sealed).  On August 9, 2010, Aloha filed a Joinder in HECO/MECO Defendants' CMPSJ.  (Doc. # 328.)  On November 15, 2010, the

Court issued an Order Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant HECO'S Counter-Motion for Partial Summary Judgment ("November Order"). ("Nov. Order," Doc. # 389.)

On November 1, 2010, BlueEarth filed its Third Amended Complaint. (Doc. # 387.) On November 15, 2010, Aloha and the HECO/MECO Defendants answered. (Doc. ## 390, 391.) On November 15, 2010, the HECO/MECO Defendants also filed their instant Amended Motion to Dismiss the Fourth, Sixth, Seventh, Ninth, Tenth and Eleventh Causes of Action of Plaintiff's Third Amended Complaint ("Motion to Dismiss"). ("Mot. Dismiss," Doc. # 392.) Plaintiff filed its Opposition to the Motion to Dismiss on December 6, 2010. ("MD Opp'n," Doc. # 404.) On December 9, 2010, Aloha filed its instant Motion for Judgment on the Pleadings on Counts Six through Ten of the Third Amended Complaint ("Motion for Judgment"). ("Mot. J.," Doc. # 406.) On December 13, 2010, the HECO/MECO Defendants filed a Reply. ("MD Reply," Doc. # 409.) On January 4, 2011, Plaintiff filed its Opposition to the Motion for Judgment. ("MJ Opp'n," Doc. # 426.) On January 24, 2011, Aloha filed its reply. ("MJ Reply," Doc. # 462.)

## STANDARD OF REVIEW

I.      <u>Motion to Dismiss</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule") "tests the legal sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged to support a cognizable theory. <u>Id.</u> (citing <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.1990)). Because a Rule 12(b)(6) motion to dismiss focuses on the sufficiency of a claim statement, review is generally limited to the face of the complaint. <u>Lee v. City of Los Angeles</u>, 250 F .3d 668, 688 (9th Cir. 2001) (citation omitted); <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994) (citations omitted). The Court must accept all allegations of material fact as true and construe them in a light most favorable to the nonmoving party. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). The Court, however, need not accept as true conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences. <u>Id.</u>

As to a plaintiff's pleading burden, the Supreme Court has held that while a complaint "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555. Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" (quotations and citations omitted)).

II.    Motion for Judgment on the Pleadings

Rule 12(c) states, "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings  is properly granted when the court, accepting all the allegations in the pleadings as true and construing them in the light most favorable to the nonmoving party, concludes that the moving party is entitled to

judgment as a matter of law.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  No issue of material fact may be in dispute.  Id.

When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003).  As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'"  McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also  Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th

Cir. 1996)). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." McGlinchy, 845 F.2d at 810.

As noted, to withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940. Although the court must accept all well-pleaded factual allegations as true, "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor must the court "accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555).

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The pleadings are closed once a complaint and an answer have been filed, assuming that there is no counterclaim or cross-claim. Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005).

The HECO/MECO Defendants in their Motion to Dismiss argue that the Fourth, Sixth, Seventh, Ninth, Tenth and Eleventh Counts of the TAC are flawed.[3] (Mot. Dismiss at 4–5.) Specifically, they argue that Plaintiff's non-contract claims (the Fourth, Sixth, Seventh, Tenth and Eleventh Causes of Action) are preempted by HUTSA. (Id. at 9.) In addition, they allege that the Seventh, Tenth and Eleventh Causes of Action are barred by the economic loss rule, (id. at 16), and that the Sixth, Seventh and Ninth Causes of Action are insufficiently pled (id. at 17–28).

Aloha argues it is entitled to Judgment as to Counts Six, Seven, Eight, Nine, and Ten.[4] Like the HECO/MECO Defendants, Aloha argues that the Sixth, Seventh, Eighth and Tenth Causes of Action are preempted by HUTSA. (Mot. J. at 2.) Additionally, according to Aloha, Counts Six, Nine and Ten are insufficiently

---

[3] These are the claims for quantum meruit/unjust enrichment, unfair competition under Haw. Rev. Stat. § 480-2, tortious interference with existing contracts, misappropriation of trade secrets in violation of Haw. Rev. Stat. § 482B-2, conversion, and breach of fiduciary duty respectively. (See TAC ¶¶ 44–101.)

[4] Count Eight, the only additional Cause of Action that the HECO/MECO Defendants do not address is an allegation of tortious interference with the MOU against Aloha. (TAC ¶ 85–89.)

pled.  (Id.)  Finally, Aloha argues that Count Eight cannot provide a basis for a

tortious interference claim.

I.       HUTSA and the Hawaii Supreme Court

                As noted, Defendants argue that the vast majority of Plaintiff's claims

are preempted by HUTSA.[5]  The HUTSA preemption provision provides:

> (a) Except as provided in subsection (b) this chapter displaces
> conflicting tort, restitutionary, and other law of this State providing
> civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:
>
>> (1) Contractual remedies, whether or not based upon
>> misappropriation of a trade secret;
>>
>> (2) Other civil remedies that are not based upon
>> misappropriation of a trade secret; or
>>
>> (3) Criminal remedies, whether or not based upon
>> misappropriation of a trade secret.

Haw. Rev. Stat. § 482B-8.  Faced with a split in state authority as to the scope of

this preemption, and with no state court decision on point, this Court certified the

following questions to the Supreme Court of Hawai'i on November 2, 2009:

---

[5] HUTSA provides a party may recover damages for misappropriation of
trade secrets.  Haw. Rev. Stat. § 482B-4.  Misappropriation is defined as an
'[a]cquisition of a trade secret of another by a person who knows or has reason to
know that the trade secret was acquired by improper means" or "[d]isclosure or use
of a trade secret of another without express or implied consent . . . ."  Id. § 482B-2.

1. When are "tort, restitutionary, and other law[s] of this state" displaced because they "conflict" with HUTSA, Hawaii Revised Statutes ("HRS") §482B?

2. When a claim is found to "conflict" with HUTSA, what is the scope of the preemption, or displacement, of that claim under HRS § 482B-8?

3. May a claim that is found not to "conflict" with HUTSA still be preempted, or displaced, under HRS § 482B-8?

4. Does HUSTA also preempt, or displace, claims based upon the alleged misuse of "confidential information," which is determined, before or during trial, not to meet the definition of "trade secret" under HRS § 482B-2?

(Doc. # 191, 12–13.)  The Supreme Court responded on July 21, 2010.  (Doc. # 301.)

In its decision, <u>BlueEarth Biofuels v. Hawaiian Elec. Co.</u>, 235 P.3d 310 (Haw. 2010), the Hawaii Supreme Court began with a review of the background behind the Uniform Trade Secrets Act ("UTSA") and HUTSA.  <u>Id.</u> at 313.  The court noted that the authors of the UTSA intended it to be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it."  <u>Id.</u> at 314 (quotations and citations omitted).  The court then considered the parties arguments.  Plaintiff argued that the "elements test" which states that the UTSA preempts a claim only if they have the "same elements or same underlying duty as a misappropriation of a

trade secrets claim" should apply.  Id. at 315.  The HECO/MECO Defendants and

Aloha argued that the "same proof" test applies.  Id.  This test states:

> [A] claim will be preempted when it necessarily rises or falls based on
> whether the defendant is found to have "misappropriated" a "trade
> secret" as those two terms are defined in the UTSA.  Stated another
> way, if proof of a non-UTSA claim would also simultaneously
> establish a claim for misappropriation of trade secrets, it is preempted
> irrespective of whatever surplus elements or proof were necessary to
> establish it.

Id. (quoting and citing Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649,

658 (E.D. Tenn. 2004)).

The court began its analysis by noting it agreed with the court in

Hauck that the phrase "based upon" implies that the UTSA's preemptive force

reaches more than simply claims of or for appropriation of a trade secret.  Id. at

315 (citing Hauck, 375 F. Supp. 2d at 658).  The court continued:

> Otherwise, a plaintiff could state multiple different claims, all
> stemming from the same misappropriation of trade secret injury.  This
> would undermine the purpose of the UTSA, which was to resolve the
> uncertainty concerning the parameters of trade secret protection.

Id.  This logic, the court held, rendered Plaintiff's argument untenable; the

elements test "would allow a party to raise multiple different claims based on the

same trade secret misappropriation injury."  Id.  Instead, the court decided that "an

analysis of the plaintiff's allegations is necessary to determine whether a claim is

based upon a misappropriation of a trade secret," but noted that "courts have

differed on how the presence of facts relating to improper acquisition . . . of trade

secrets within non-UTSA claims affects preemption." <u>Id.</u> at 317–18. Ultimately

the court decided that "the best approach to preemption, consistent with the goals

of the UTSA and HUTSA is the 'same proof' standard articulated in <u>Hauck</u>." <u>Id.</u> at

318. The court qualified its holding, however, by stating that "[t]o the

extent . . . that the claim is 'based upon wrongful conduct[,] independent of the

misappropriation of trade secrets[,]' it will not be preempted by the HUTSA." <u>Id.</u>

(quoting <u>Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.</u>, 270 F. Supp. 2d

943, 950 (W.D. Mich. 2003)).

   The court next concluded that a non-contract civil claim that is based

upon "confidential" information which does not rise to the level of a statutorily-

defined trade secret was preempted. <u>Id.</u> at 319. The court reached this conclusion

relying on Haw. Rev. Stat. § 1–24, which states that "[a]ll provisions of uniform

acts adopted by the State shall be so interpreted and construed as to effectuate their

general purpose to make uniform the laws of the states and territories which enact

them." Haw. Rev. Stat § 1–24. The court found the rule articulating that "non-

contract claims based on information which does not rise to the level of a

statutorily-defined trade secret are preempted under the UTSA . . . comports with

the HUTSA's goal of uniformity in the area of trade secret misappropriation."

BlueEarth, 235 P.3d at 323. Finally, the court held that a preemption analysis is appropriate at the motion to dismiss stage of the proceedings. Id. at 324.

The court, in concluding, turned back to the questions this Court certified and answered them succinctly:

1. **When are "tort, restitutionary, and other law[s] of this state" displaced because they "conflict" with HUTSA, [HRS] § 482B-8?**

"Tort, restitutionary, and other law[s] of this state" conflict with the HUTSA, are therefore displaced, to the extent that they are based upon misappropriation of a trade secret. That is, "if proof of a [non-HUTSA] claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." Hauck, 375 F. Supp. 2d at 658.

2. **When a claim is found to "conflict" with HUTSA, what is the scope of preemption, or displacement, of that claim under HRS § 482B-8?**

For those claims found to conflict with the HUTSA, the scope of displacement is complete. However, a claim may survive to the extent it alleges wrongful conduct independent of the misappropriation of trade secrets.

3. **May a claim that is found not to "conflict" with HUTSA still be preempted, or displaced, under HRS § 482B**-8?

Only claims that are found to conflict with the HUTSA are preempted.

4. **Does HUTSA also preempt, or displace, claims based upon the alleged misuse of "confidential information," which is determined,**

**before or during trial, not to meet the definition of "trade secret" under HRS § 482B-8?**

The HUTSA displaces non-contract civil claims based upon the alleged acquisition, disclosure, or use of confidential information that does not rise to the level of a statutorily-defined trade secret. Accordingly, it is unnecessary to determine whether or not the information at issue meets the definition of a trade secret before addressing displacement under the HUTSA.

Id. at 324–25.

II.    Count IV: Quantum Meruit/Unjust Enrichment against HECO and MECO

As noted, Count IV of the Complaint alleges a claim for Quantum Meruit/Unjust Enrichment against the HECO/MECO Defendants.[6]  (TAC

¶¶ 60–63.)  After incorporating paragraphs one through fifty-nine into this Count,

the Complaint alleges:

62. HECO and MECO knowingly used and benefitted from the services without paying BlueEarth, even though an expectation of payment was apparent.  HECO and MECO have been bestowed a benefit they would not have otherwise had, and have wrongfully failed and refused to pay amounts due and owing to BlueEarth.

---

[6] In Hawaii, "'[t]he basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefore." Hawaii Ventures, LLC v. Otaka, Inc., 164 P.3d 696, 742 (Haw. 2007) (quoting Maui Aggregates, Inc. v. Reeder, 446 P.2d 174, 176 (Haw. 1968)). Similarly, to prevail on an unjust enrichment claim, a plaintiff must show that: 1) it has conferred a benefit upon the defendant, and 2) that the retention of that benefit was unjust.  Wadsworth v. KSL Grant Wailea Resort, Inc., __ F. Supp. 2d __, No. 08-00527, 2010 WL 5146521, at *11 (D. Haw. December 10, 2010).

> 63. By receiving and benefitting from BlueEarth's services, yet wrongfully refusing and failing to pay for them, HECO and MECO have been unjustly enriched at BlueEarth's expense.

(Id. ¶¶ 62–63.)

The HECO/MECO Defendants argue that this is nothing more than an alternative equitable remedy for their alleged use and retention confidential information. (Mot. Dismiss at 12.) In support of their position, the HECO/MECO Defendants use Plaintiff's discussion of its quantum meruit claim in its TRO/Preliminary Injunction Motion, where Plaintiff represented:

> BlueEarth conferred immeasurable benefits upon HECO and MECO by sharing its confidential and proprietary information . . . . HECO and MECO wrongfully retained the trade secrets after unceremoniously cutting BlueEarth out of the Project. Because the information is being retained despite the contrary provisions of the NDAs, BlueEarth is likely to prevail on its quantum meruit/unjust enrichment claim.

(Id. 12–13; Doc. # 143, at 31.)

Plaintiff, as it must in light of the Hawaii Supreme Court's decision in BlueEarth, distances itself from this earlier representation.[7] It argues that

---

[7] Indeed, if Plaintiff were to argue as it did earlier that by retaining confidential information or trade secrets the HECO/MECO Defendants unlawfully gained a benefit, it would find its claim squarely in the heartland of what the court forbid in BlueEarth. See 235 P.3d at 318 ("'[I]f proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements of proof were necessary to

(continued...)

> the quantum meruit/unjust enrichment claim is predicated solely upon the HECO Defendants' acceptance of services from BlueEarth . . . . As is readily apparent this claim makes <u>no</u> mention of, nor is it dependant on the [HECO/MECO Defendants'] misuse of any trade secret or confidential information.

(MD Opp'n MD at 7.)  In so distancing, however, Plaintiff has run afoul of <u>Twombly</u>-<u>Iqbal</u>.  The Court has scoured the Complaint and, aside from the allegedly misappropriated confidential information, Plaintiffs have not pled with sufficient specificity what other benefit or benefits it conferred to the HECO/MECO Defendants.

The United States Supreme Court has been clear, to withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1940.  If this cause of action does not relate to the unlawful retention of trade secrets or confidential information, as Plaintiff represents, there are simply insufficient facts to state a claim for relief that is plausible on its face—Plaintiffs have not stated what precisely it conferred upon the HECO/MECO Defendants

---

[7](...continued)
establish it.'" (quoting <u>Hauck</u>, 375 F. Supp. 2d at 658)).

which they unlawfully retained.  <u>Twombly</u>, 550 U.S. at 570.  Accordingly, the

HECO/MECO Defendants' Motion to Dismiss with respect to this Count of the

Complaint is **GRANTED** and Count Four is **DISMISSED**.

III.    <u>Count VI: Unfair Competition per Haw. Rev. Stat. §§ 480-2, *et seq.* against
the HECO/MECO Defendants and Aloha</u>

Count VI of the Complaint alleges an Unfair Method of Competition

("UMC") claim against the HECO/MECO Defendants as well as Aloha in violation

of Hawaii Revised Statutes §§ 420-2, <u>et seq</u>.  (TAC ¶¶ 69–76.)  The HECO/MECO

Defendants argue first that this Count, despite Plaintiff's revisions to its complaint,

still incorporates "the same allegations of unauthorized use of confidential and

proprietary information" and is therefore pre-empted per the Hawai'i Supreme

Court's decision in <u>BlueEarth</u>.  (Mot. Dismiss at 13.)  The HECO/MECO

Defendants also argue that the claim is insufficiently pled.  (<u>Id.</u> at 17–18.)  In

arguing that it is entitled to judgment on the pleadings, Aloha alleges that to the

extent Plaintiff bases its UMC claim on the misappropriation of trade secrets it is

preempted, (Mot. J. at 16), and whatever is remaining is insufficiently pled (<u>id.</u> at

20–24.)

Plaintiff, as above, argues that its UMC claim is "rooted in the

[Defendants'] unfair methods of competition, not misappropriation of trade

secrets." (MD Opp'n at 7; MJ Opp'n at 7.) By way of example, Plaintiff points to paragraph 71 of the Complaint, which states:

> HECO and MECO represented that they would work exclusively and in good faith with BlueEarth, yet engaged in unilateral negotiations with Aloha concerning the development, investment, and ownership of the project without BlueEarth's knowledge or consent, and to its exclusion.

(TAC ¶ 71.) The Court agrees with Plaintiff that it has sufficiently removed its reliance upon the misappropriation of confidential information to avoid preemption per the court's decision in <u>BlueEarth</u>, but also finds Plaintiff has failed to state a claim upon which relief can be granted.

Hawaii Revised Statute § 480-2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Haw. Rev. Stat. § 480-2(a). Because § 480-2(d) provides that "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices," <u>id.</u> § 480-2(d), Plaintiff must allege that Defendants engaged in an unfair method of competition, <u>id.</u> § 480-2(e) ("Any person may

bring an action based on unfair methods of competition declared unlawful by this section.").[8]

To state a claim for unfair competition a plaintiff must allege facts showing "(1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." <u>Davis v. Four Seasons Hotel Ltd.</u>, 228 P.3d 303, 315 (2010) (citing <u>Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n, Inc.</u> (hereinafter "<u>HMA</u>"), 148 P.3d 1179, 1215 (2006). Of particular import to the <u>Davis</u> court was the second element. Pursuant to that element, a plaintiff "may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practice," provided the "nature of the competition" is sufficiently alleged in the complaint. <u>Id.</u> at 1215. "[T]he existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition." <u>Davis</u>, 228 P.3d at 317 n.26 (quoting <u>HMA</u>, 148 P.3d at 1214). Accordingly, a plaintiff pursuing a UMC claim is required to allege how a defendant's "conduct will negatively affect competition in order to recover on an unfair methods of competition claim." <u>Id.</u> at 317–18.

---

[8] Per the statute, "consumer" means a natural person, while "person" includes individuals, corporations, firms, trusts, partnerships, etc. Haw. Rev. Stat. § 480-1.

Despite Plaintiff's protestations to the contrary, it has not sufficiently

alleged the nature of the competition. In <u>HMA</u>, for instance, the Plaintiff

successfully alleged the nature of the competition by asserting the following:

> 11. . . . [HMSA's] conduct has adversely impacted, and continues to
> adversely impact, members of [HMSA's] plans by, among other
> things: (a) imposing financial hardships on, and in some cases
> threatening the continued viability of, the medical practices run by
> [the plaintiffs]; (b) threatening the continuity of care provided to
> patients by [the plaintiffs], as required by sound medical judgment; (c)
> requiring [the plaintiffs] to expend considerable resources seeking
> reimbursement that could otherwise be available to provide enhanced
> healthcare services to [HMSA's] plan members; (d) making it more
> costly and difficult for [the plaintiffs] to maintain and enhance the
> availability and quality of care that all patients receive; and (e)
> increasing the costs of rendering healthcare services in Hawaii as a
> result of the additional costs incurred and considerable effort
> expended by HMA members in seeking reimbursement from HMSA
> for services rendered . . . .
>
> . . .
>
> 26. HMSA dominates the enrollee market in Hawaii with over 65% of
> Hawaii's population enrolled in one of HMSA's plans. In this regard,
> HMSA is the largest provider of fee-for-service insurance in the State
> with more than 90% of the market and is the second largest HMO
> provider in the State. Similarly, HMSA dominates the physician
> market, with approximately 90% of Hawaii's physicians participating
> in HMSA's networks.
>
> 27. It is through such market dominance that HMSA is able to dictate
> the terms and amount of reimbursement HMA physicians will receive.

Davis, 228 P.3d at 436 n.24 (citing and quoting HMA, 148 P.3d at 1214) (brackets in original) (emphasis omitted).

A review of Plaintiff's complaint reveals no similar allegation here. BlueEarth's complaint alleges:

a.  HECO and MECO represented that they would work exclusively and in good faith with BlueEarth, yet engage in unilateral negotiations with Aloha concerning the development, investment, and ownership of the Project without BlueEarth's knowledge or consent, and to its exclusion.

b.  HECO and MECO represented that they would work exclusively and in  good faith with BlueEarth, yet willfully interfered with the HECO NDA, the MECO NDA, and the Confidentiality Agreement.

(TAC ¶ 71.)

Assuming, for the moment, that these paragraphs suffice to show injury caused by the HECO/MECO Defendants and Aloha,[9] there is simply no corresponding nature of the competition allegation nor an allegation of how the

_____

[9] There is a real question as to whether this suffices to demonstrate injury caused by Aloha.  (See Mot. J. at 21.)  Because the Court finds that Plaintiff has not sufficiently alleged the nature of the competition, the Court need not resolve this issue here.

Defendants' "conduct . . . negatively affect[ed] competition" such that Plaintiff may recover.[10]  Davis, 228 P.3d at 317–18.

Plaintiff points to paragraph thirty-eight of the complaint to argue that "[A]ll the Defendants, taking full advantage of their dominant positions in the Hawai'i energy market, engaged in significant and anti-competitive tactics, coupled with continual disparagement of BlueEarth within the community of biodiesel professionals."  (MD Opp'n at 17; MJ Opp'n at 17.)  All paragraph thirty-eight states, however, is that the Defendants "disparaged BlueEarth" by telling third parties that "Aloha had replaced BlueEarth on the Project, thereby undermining BlueEarth's professionals standing . . . ."  (TAC ¶ 38.)  The Complaint alleges nothing about the nature of the competition.  Without more, the Court cannot conclude that Plaintiff has sufficiently pled a claim for Unfair Methods of Competition per Hawaii Revised Statute § 482-2, et seq.

---

[10] Perhaps recognizing this shortcoming, Plaintiff grasps at a quote from this Court's November Order where the Court stated "HECO/MECO . . . are responsible for 95% of Hawai'i's energy and Aloha [is] an extremely notable figure in petroleum supply in the state."  (Nov. Order at 50.)  Of course, the Court's statement with respect to defendants cannot be incorporated into a complaint via an opposition.  See Zimmerman v. PepsiCo., Inc., 836 F.2d 173 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotations and modifications omitted)).

Accordingly, both Aloha's Motion for Judgment and the HECO/MECO Defendants' Motion to Dismiss are **GRANTED**. The Court notes, however, that on January 20, 2011, Plaintiff filed a Motion for Leave to File Supplemental Pleadings that affected this Count of the Complaint.[11] (Doc. # 450.) Magistrate Judge Kevin S. C. Chang orally granted this motion on February 7, 2011. (Doc. # 487.) Accordingly, Plaintiff's Claim as to Count VI is **DISMISSED WITHOUT PREJUDICE**.

IV.    Count VII: Tortious Interference with Existing Contracts as to all Defendants

The Seventh Cause of Action in the Complaint relates to tortious interference with existing contracts as to all Defendants. (TAC ¶¶ 77–84.) In its Motion to Dismiss, the HECO/MECO Defendants argue that this Count is preempted, barred by the Economic Loss Rule, and is inadequately pled. (Mot. D. at 13, 16–17, 20–24.) Aloha, in its Motion for Judgment, argues that this Count is preempted and fails to state a claim for relief. (Mot. J. at 2.)

To prevail on a claim for tortious interference with contractual relations, a Plaintiff must demonstrate:

---

[11] The Motion also related to Count Nine of the Complaint. (See Doc. # 450-7.)

> 1) a contract between the plaintiff and a third party; 2) the defendant's
> knowledge of the contract; 3) the defendant's intentional inducement
> of the third party to breach the contract; 4) the absence of justification
> on the defendant's part; 5) the subsequent breach of the contract by
> the third party; and 6) damages to the plaintiff . . . .

Meridian Mortgage, Inc. v. First Hawaiian Bank, 122 P.3d 1133, 1142 (Haw. Ct.

App. 2005) (modification and emphasis omitted) (quoting Weinberg v. Mauch, 890

P.2d 277, 287 (1995)).  To determine whether this claim is preempted the Court

must determine whether the facts in the Complaint which establish tortious

interference with existing contracts "also simultaneously establish a claim for

misappropriation of trade secrets."  BlueEarth 235 P.3d at 318.

      The Complaint alleges:

> HECO willfully and intentionally interfered with the MECO NDA,
> the Aloha NDA and the Confidentiality Agreement. Among other
> things, HECO intentionally induced or caused MECO and Aloha to
> breach the MECO NDA, the Aloha NDA and the Confidentiality
> agreement, respectively.

(TAC ¶ 80.)  The Complaint makes the same allegations with respect to MECO,

arguing it induced HECO and Aloha to violate their NDAs and Confidentiality

Agreement, and Aloha, arguing it induced HECO and MECO to violate their

NDAs and Confidentiality Agreement.  (TAC ¶¶ 81–82.) For its part, Plaintiff

argues that these allegations are "wholly unrelated to any trade secret

misappropriation claim" but still "contains the required elements of a tortious interference claim." (MD Opp'n at 9). The Court disagrees.

This Count of the Complaint is grounded firmly in facts, which, if true, would "also simultaneously establish a claim for misappropriation of trade secrets." BlueEarth 235 P.3d at 318. Per the HUTSA, "[i]mproper means" is defined, in part, as "inducement of a breach of a duty to maintain secrecy." Haw. Rev. Stat. § 482B-2. "Misappropriation" means, in part:

> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> > (A) Used improper means to acquire knowledge of the trade secret; or

Haw. Rev. Stat. § 482B-2 (emphasis added). To prevail on an intentional interference claim, Plaintiff would have to demonstrate that the Defendants induced the others to breach their Confidentiality Agreement or NDAs with the Plaintiff. Mauch, 890 P.2d at 287. Plaintiff has more than sufficiently alleged facts supporting this assertion. (See, e.g., TAC ¶ 79.) It is axiomatic, however, that a breach of these agreements necessarily involves the disclosure of confidential information. Thus, merely by alleging an induced breach of a Confidentiality Agreement or an NDA, Plaintiff has also alleged that each Defendant improperly acquired trade secret information from the others.

32

Accordingly, and despite Plaintiff's claim to the contrary, these claims are

sufficiently related to its allegation of trade secret misappropriation to warrant

preemption.  BlueEarth 235 P.3d at 318 ("[A] claim will be preempted when it

necessarily rises or falls based on whether the defendant is found to have

'misappropriated' a 'trade secret' as those two terms are defined in the UTSA.");

see also Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 974 (N.D.

Ill. 2000) (finding a tortious interference with a confidentiality agreement

preempted by the Illinois Trade Secrets Act in applying the "same evidence" rule).

Aloha's Motion for Judgment and the HECO/MECO Defendants' Motion to

Dismiss are therefore **GRANTED**.  Further, Count Seven of the Complaint is

hereby **DISMISSED**.[12]

---

[12] In their briefing and at the hearing, the parties discussed at length whether
the stranger doctrine was applicable in the instant case.  Succinctly put, the
stranger doctrine  provides that the "'tort duty not to interfere with [a] contract falls
only on strangers-interlopers who have no legitimate interest in the scope or course
of the contract's performance[.]'" Spring Patents, Inc. v. Avon Rubber & Plastics,
Inc., 183 F. Supp. 2d 1198, 1210 n.11 (D. Haw. 2001) (quoting Webber v. Inland
Empire Invs., Inc., 88 Cal. Rptr. 2d 594, 602 (Cal. Ct. App. 1999)).  The crux of
the disagreement between the parties is whether each of the Defendants were
strangers to the others' contracts or whether the Defendants were a part of an
"interwoven set" of agreements such that the stranger doctrine would bar this
claim.  Atlanta Market Ctr. Mgmt. v. McLane, 503 S.E.2d 278, 284 (Ga. 1998).
Because the Court finds this claim preempted by HUTSA it need not resolve this
issue.

V.    Count VIII: Tortious Interference with the MOU against Aloha

Count Eight alleges that Aloha tortuously interfered with the MOU. (TAC ¶¶ 85–89.)  Aloha argues that the MOU cannot support a tortious interference claim.  (MJ Reply at 13.)  The Court agrees that this claim is not viable.

In its November Order, the Court determined that the BEMB agreements had "supersede[d] and rescind[ed] the MOU by operation of law" when the parties signed it on February 4, 2008.  (Nov. Order at 5, 23.)  The Complaint, however, alleges that Plaintiff did not introduce Aloha to MECO until on or about March 14, 2008, after the MOU was no longer operable.  (TAC ¶ 30.)  The Complaint further alleges that "based on several private meetings that had occurred between HECO, MECO, and Aloha in June of 2008," the Defendants attempted to cut BlueEarth out of the project.  (TAC ¶ 35.)  Accordingly, it seems from the Complaint that Aloha did not "induce a breach" until June 2008 and, in any event, could not have done so before March 14, 2008.  By this time the MOU was no longer an operable contract.  Therefore, the Plaintiff has failed to establish a viable claim for tortious interference with the MOU.  Given the time line and factual circumstances surrounding this Count of the Complaint, the Court does not believe that Plaintiff will be able remedy this defect by amending its pleadings.  Cf. Lopez,

203 F.3d at 1130 (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" (quotations and citations omitted)).  Accordingly, Aloha's Motion for Judgment on the Pleadings with respect to Count VIII of the Complaint is **GRANTED** and Count VIII of the Complaint is **DISMISSED**.[13]

VI.    Count IX: Misappropriation of Trade Secrets against all Defendants in Violation of Hawaii Revised Statute § 482B-2

Count IX of the Complaint alleges a Misappropriation of Trade Secrets against all Defendants in violation of the HUTSA.  (TAC ¶¶ 90–93.)  To prevail on a HUTSA claim, a plaintiff must establish that there exists a trade secret and a misappropriation of that trade secret.  See Haw. Rev. Stat. § 482B-2; see also Dealertrack, Inc. v. Huber, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006); AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003).  Both the HECO/MECO Defendants and Aloha here argue that Plaintiff has not plead with sufficient particularity what trade secrets or confidential

---

[13] Since the instant Motion was filed, Plaintiff has filed a Motion for Relief from the Court's November 15, 2010 Summary Judgment Order ("Relief Motion"), arguing that the Court, as a matter of law, could not have found a novation because the Defendants did not raise novation as an affirmative defense.  (See Doc. # 479.) The Court is aware that should Plaintiff prevail on the Relief Motion, the Court's rational for dismissing this Count of the Complaint will no longer be applicable. Under those circumstances, the Court will revisit this Count of the Complaint.

information the Defendants have misappropriated. (Mot. Dismiss at 24–27; Mot. J.

at 28–31.) The Court disagrees.

A "[t]rade secret" is defined as

information, including a formula, pattern, compilation, program device, method, technique, or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Haw. Rev. Stat. § 482B-2. Courts generally require sufficient pleading such that

the other party is on notice of what it is alleged to have misappropriated. See MAI

Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 522 (9th Cir. 1993) ("[A]

plaintiff who seeks relief for misappropriation of trade secrets must identify the

trade secrets and carry the burden of showing that they exist.") It is, however,

generally agreed that "'trade secrets need not be disclosed in detail in a complaint

alleging misappropriation . . . .'" AutoMed Technologies, Inc. v. Eller, 160 F.

Supp. 2d 915, 921 (N.D. Ill. 2001) (quoting Leucadia, Inc. v. Applied Extrusion

Technologies, Inc., 755 F. Supp. 635, 636 (D. Del. 1991).

Here the Complaint alleges:

> BlueEarth has, at considerable expense and effort, developed valuable
> contact lists, know-how, and information for conducting its business,
> and these lists and information give BlueEarth a distinct advantage
> over its competitors who do not know or use them. The lists and
> information were not generally known to and would not have been
> readily ascertainable by proper means by, other persons who could
> have obtained economic value from disclosure or use.

(TAC ¶¶ 91–92.) Although not a model of specificity, the Court believes by
alleging a contact list, the complaint suffices to put Defendants on notice of the
subject matter of Plaintiff's claims.[14]

As Plaintiff discusses, the Complaint illustrates that BlueEarth has a
particularized knowledge of the biodiesel community, coupled with its list of
relevant contacts within that community. (See Id.; MJ Opp'n at 20.) Indeed, the
Court finds that the contact list here alleged is similar to a customer list, which
courts generally find to be protected as a trade secret. See, e.g., MAI Systems
Corp, 991 F.2d at 521 ("We agree that the [customer list] qualifies as a trade
secret."); Radiator Exp. Warehouse, Inc. v. Shie, 708 F. Supp. 2d 762, 767 (E.D.
Wis. 2010) (finding that a misappropriation of a customer list, among other
allegations, sufficed to survive a motion to dismiss); Thermodyn Corp v. 3M Co.,

---

[14] This is especially so in light of the ongoing years of discovery in this case
relating to the allegedly misappropriated trade secrets.

593 F. Supp. 2d 972, 986 ("Customer lists and pricing information can constitute trade secrets.").  A customer list "has potential economic value because it allows a competitor . . . to direct its sales efforts to those potential customers."  MAI Systems Corp, 991 F.2d at 521.  Similarly, the Court believes that the contact list as alleged  has significant economic value because it allows a company or business that would otherwise not have this information gain a distinct advantage through familiarity with the business community.[15]

Aloha argues that "BlueEarth does not explain how Aloha misappropriated the contact lists and know-how or distinguish Aloha's acts from the alleged misappropriation by the other Defendants."  (Mot. J. at 30.)  Further, according to Aloha, "BlueEarth [does not] explain how the alleged misappropriation is ongoing and will continue in the future."  (Id.)  Paragraph 42 of the Complaint, however, alleges that "Aloha solicited business from BlueEarth's clients, used BlueEarth's proprietary information to solicit proposed funding, interfered with its contracts, breached its nondisclosure with BlueEarth, and disparaged BlueEarth."  (TAC ¶ 42.)  This is certainly more than sufficient to

---

[15] In its briefing, Aloha and the HECO/MECO Defendants cite to a series of unpublished opinions arguing that these pleadings are insufficient.  (Mot. D. at 24–25, Mot. J. at 28–29.)  These unpublished opinions are non-precedential in nature and are largely distinguishable on the facts.

demonstrate how Aloha "misappropriated the contact lists." (Mot. J. at 30.) Further, Aloha's reliance on <u>Knights Armament Co. v. Optical Systems Tech., Inc.</u>, 568 F. Supp. 2d 1369 (M.D. Fl. 2008), for support of this proposition is misplaced. There the plaintiff alleged that the defendant had access to trade secrets, but did not allege how they were used. That is not so here.

Accordingly, the Court **DENIES** both Aloha's Motion for Judgment on the Pleadings and the HECO/MECO Defendants' Motion to Dismiss with respect to Count IX of the Complaint.

VII. <u>Count X: Conversion Against all Defendants</u>

Count Ten of the complaint alleges conversion against all of the Defendants. (TAC ¶¶ 94–95.) Common law conversion "'is any distinct act of dominion wrongfully exerted over another's personal property.'" <u>Pourney v. Maui Police Dept.</u>, 127 F. Supp. 2d 1129, 1146 (D. Haw. 2000) (quoting <u>Tsuru v. Bayer</u>, 25 Haw. 693, 696 (Haw. Terr. 1920)); <u>Sung v. Hamilton</u>, 510 F. Supp. 2d 1036, 1043 (D. Haw. 2010) (same). In Hawaii, Conversion has four distinct elements: "(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." <u>Tsuru v. Bayer</u>, 25 Haw. at 696; <u>see also</u> <u>Pourney</u>, 127 F. Supp. 2d at 1146 (same).

Both Aloha and the HECO/MECO Defendants argue that this claim is preempted.  (Mot. J at 2; Mot. Dismiss at 13.)  Additionally Aloha argues that Plaintiff has alleged insufficient facts to sustain the claim.  (Mot. J. at 26–28.)  The HECO/MECO Defendants argue that the claim is also barred by the Economic Loss Rule.  (Mot. Dismiss at 16–17.)  Plaintiff argues that the Complaint makes clear that the allegations are not based upon the misappropriation of trade secrets or other confidential information but instead the conversion of substantial monetary and non-monetary investments in the project.  (MD Opp'n at 10.)  Further, according to Plaintiff, it has sufficiently pled facts in support of conversion.  (MJ Opp'n at 23.)

The Complaint itself states:

> Defendants' conduct constitutes conversion of BlueEarth's personal and intellectual property, including but not limited to BlueEarth's substantial monetary and non-monetary investments in the Project. BlueEarth is entitled to be compensated for this conversion by the return of the investment and disgorgement of all profits and revenues generated through the wrongful use of BlueEarth's investment. Further, each Defendant committed the aforementioned acts with the kind of willfulness, wantonness, fraud, and/or malice for which the law allows the imposition of exemplary damages, for which BlueEarth sues.

(TAC ¶ 95.)  In it's Opposition to Aloha's Motion for Judgment, Plaintiff also points to other parts of its complaint which further identifies its investment.  (MJ Opp'n at 22–23.)  Specifically:

> BlueEarth Expended over $1,200,000 in developing the Project. . . . BlueEarth's members Landis Maez and Robert Wellington each dedicated over two years to developing the Project.
>
> Stahlkopf, with full knowledge of the NDAs, the Project Agreement, and the Confidentiality Agreement, informed BlueEarth that HECO and MECO do not intend to complete the Project with BlueEarth, that BlueEarth will not receive the annual income expected from the Project or any return of its substantial investment in the Project. . . .
>
> Aloha solicited business from BlueEarth's clients, used BlueEarth's proprietary information to solicit proposed funding . . . .

(TAC ¶¶ 25, 39, 42.)

First, to the extent that Plaintiff relies on Aloha's solicitation of business from BlueEarth's clients by using its confidential proprietary information to establish conversion, it is preempted by the HUTSA.  (Id. ¶ 42.)  As with the tortious interference Counts of the Complaint, the Court finds that alleging Aloha's converted BlueEarth's proprietary information obtained in violation of the Confidentiality Agreement and NDA "also simultaneously establish[es] a claim for misappropriation of trade secrets."  BlueEarth 235 P.3d at 318.  Specifically, Hawaii Revised Statute § 482B-2 prohibits "[d]isclosure or use of a trade secret of

another without express or implied consent by a person who . . . [u]sed improper means to acquire knowledge of the trade secret." Haw. Rev. Stat. § 482B-2. Improper retention and use of confidential information to solicit proposed funding certainly qualifies as misappropriation of a trade secret as contemplated by HUTSA.

The Court finds the remaining allegations insufficient to sustain the tort of conversion. Plaintiff cites to no caselaw, nor can the court find any, in support of the proposition that person's time can be considered chattel. Indeed, at least one court in Illinois has found to the contrary. See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc., 633 F. Supp. 2d 610, 613 n.1 (N.D. Illl. 2009) ("[U]nder the theory of conversion . . . a person's time is not a chattel over which plaintiff had the immediate and unconditional right to possess.") In any event the Plaintiff has not sufficiently demonstrated that any of its "chattel" was taken without its consent. See Tsuru, 25 Haw. at 696 (finding one element of conversion is "[a] taking from the owner without his consent"); Hamilton, 510 F. Supp. 2d at 1043 (same); Pourney, 127 F. Supp. 2d at 1146 (granting summary judgment where a Plaintiff did not show that Defendant "took chattel from Plaintiff without his consent"). Instead, it seems that the Complaint specifically

alleges that Plaintiff consented to invest both time and money into the Project

Agreement.  (See TAC ¶ 25 ("In consideration of the promises and representations

in the NDAs and the Project Agreement, BlueEarth expended over $1,200,000.00

in developing the Project." (emphasis added)).  Accordingly the HECO/MECO

Defendants' Motion to Dismiss and Aloha's Motion for Judgment are **GRANTED**

and Count X of the Complaint is **DISMISSED**.

VIII.   Count XI: Breach of Fiduciary Duty against the HECO/MECO Defendants

The final Count of the Complaint alleges a breach of fiduciary duty

against the HECO/MECO Defendants.  (TAC ¶¶ 96–101.)  Specifically the

Complaint states:

> 97.     BlueEarth, HECO, and MECO were engaged in a joint
> venture to develop the Project and therefore had a fiduciary
> relationship.  Among other duties, HECO and MECO owed BlueEarth
> a duty of loyalty and utmost good faith, a duty to refrain from self-
> dealing, a duty of full disclosure and a duty not to prefer their own
> interests ahead of the interests of BlueEarth.
>
> 98.     HECO and MECO have breached their fiduciary duties
> owed to BlueEarth, injuring BlueEarth by depriving BlueEarth of
> participation in the Project as well as monies to which BlueEarth is
> rightfully owed, and benefitting HECO and MECO by wrongfully
> retaining monies that belong to BlueEarth.

(TAC ¶¶ 97–98.)

The HECO/MECO Defendants do not dispute they owed Plaintiff a fiduciary duty.  Instead, they here contend that this claim is preempted by HUTSA, (Mot. Dismiss at 14), and that it is barred by the economic loss rule (id. at 16.)  The Court is not persuaded.

The HECO/MECO Defendants makes much of the fact that each Count of the Complaint incorporates its earlier paragraphs and argues that each Count, including this one, "incorporat[es] and rel[ies] on allegations that HECO and MECO disclosed BlueEarth's Confidential Information to third parties" (MD Reply at 1–2.)  The Court disagrees.  To the extent this claim relies on the use and disclosure of the confidential information, it is preempted.  The court in BlueEarth, however, also stated that "[t]o the extent . . . that the claim is 'based upon wrongful conduct[,] independent of the misappropriation of trade secrets[,]' it will not be preempted by the HUTSA."  235 P.3d at 318 (quoting Bliss Clearing, 270 F. Supp. 2d at 950).  Thus, incorporating facts that also give rise to a claim under HUTSA is immaterial, provided that there sufficient independent grounds for finding a violation of the non-HUTSA claim.

Here, Plaintiff has sufficiently alleged a breach of fiduciary duty independent of any claim that the HECO/MECO Defendants misappropriated a

trade secret.  Plaintiff alleges that they were engaged in a "joint venture to develop

the project and therefore had a fiduciary relationship." (TAC ¶ 97)  Further,

according to Plaintiff, the HECO/MECO Defendants "breached their fiduciary

duties owed to BlueEarth . . . by depriving BlueEarth of participation in the

Project."  (Id. ¶ 98.)  This allegation is entirely distinct from Plaintiff's claim that

the HECO/MECO Defendants misappropriated their trade secrets.  In other words,

this claim is not dependent upon the proof necessary to establish Plaintiff's

misappropriation claim.  Cf. BlueEarth 210 P.3d at 318 ("[I]f proof of a non-UTSA

claim would also simultaneously establish a claim for misappropriation of trade

secrets, it is preempted irrespective of whatever surplus elements or proof were

necessary to establish it.")  Indeed, assuming the HECO/MECO Defendants did

not disclose any confidential information, they could still be liable for breach of

fiduciary duty merely by cooperating and working with Aloha to the exclusivity of

Plaintiff.  Thus, this claim is based upon alleged wrongful conduct independent of

the misappropriation of trade secrets and is not preempted.[16]  See id. at 318.

_____

        [16] The HECO/MECO Defendants' reliance on Mortgage Specialists, Inc. v.
Davey, 904 A.2d 62 (N.H. 2006) is misplaced.  There the only basis for the breach
of fiduciary duty was the misuse of confidential customer information.  Id. at 667.
Here, the independent basis is for this count is the HECO/MECO Defendants'
alleged cooperation with Aloha to the exclusivity Plaintiff.  (TAC ¶¶ 97–98.)  This,
as discussed, is distinct from any claim that Plaintiff's confidential information was
(continued...)

The Court is also not persuaded by the HECO/MECO Defendants' reliance on the economic loss rule. The economic loss rule in Hawaii is codified at Hawaii Revised Statute § 663-1.2, which provides that "[n]o person may recover damages, including punitive damages, in tort for a breach of contract in the absence of conduct that . . . [v]iolated a duty that is independently recognized by principles of tort law." Haw. Rev. Stat. § 663-1.2. Broadly speaking, the economic loss rule is designed to maintain a distinction between damage remedies for breach of contract and for tort. <u>Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc.</u>, 167 P.3d 225, 284 (2007).

Here, there is no question that a breach of fiduciary duty claim sounds in tort. <u>See</u> <u>TASA Intern. Ltd. v. Shimizu Corp.</u>, 990 P.2d 713, 734 (Haw. 1999). The parties primarily debate whether the economic loss rule should apply outside the context of negligence and strict liability.[17] (Mot. Dismiss at 46–17; MD Opp'n

---

[16](...continued)
misappropriated.

[17] Indeed, at the hearing and in its briefing, Plaintiff represented that it had conducted an exhaustive search and found no instances of the economic loss rule applying outside of the negligence and strict liability context. (MD Opp'n at 11–14.) The HECO/MECO Defendants argued the plain language of § 663-1.2 does not contemplate such a limited reading. Further, the HECO/MECO Defendants pointed the Court to an earlier decision in this district, <u>Timpe v. WATG Holdings Inc.</u>, No. 07-00306 JMS/KSC, 2008 WL 2355611 (D. Haw. June
(continued...)

at 11–14; MD Reply at 9–12).  The Court, however, believes the parties have overlooked a crucial element of the economic loss rule, specifically whether the HECO/MECO Defendants "[v]iolated a duty that is independently recognized by principles of tort law."

According to the Complaint, Plaintiff and the HECO/MECO Defendants were engaged in a joint venture to develop the project.  (TAC ¶ 97.) "A joint venture is a mutual undertaking by two or more persons to carry out a single business enterprise for profit."  Shinn v. Edwin Yee, Ltd., 553 P.2d 733, 737 (Haw. 1976).  Companies can also form a joint venture.  See Fujimoto v. Au, 19 F.3d 699, 728 (finding that two corporations were engaged in a joint venture with one another when (1) it was recited in their agreement and (3) they shared a common goal).  While a joint venture is a contractual relationship, Shinn, 553 P.2d at 737, it is also closely akin to a partnership.  Dang v. F and S Land Development

---

[17](...continued)
10, 2008), where Judge Seabright contemplated the applicability of the economic loss rule in a fraud claim.  Although Judge Seabright ultimately determined the rule was inapplicable in Timpe, id. at *6, the HECO/MECO Defendants argue that implicit in the holding was a finding that it could have applied to bar a fraud claim under different facts and—therefore—the economic loss rule can apply outside of the negligence and products liability arena.  Although inclined to agree with the Defendants, the Court need not here reach this issue because, even assuming the rule's applicability outside of the negligence and products liability context, the Court would not apply the rule here for the reasons stated infra.

Corp., 618 P.2d 276, 280 (Haw. 1980).  Accordingly, "the rules governing the creation and existence of partnerships are generally applicable to joint ventures." Id. (quotations and citations omitted).  Partners in a joint venture therefore have a statutory duty of loyalty and good faith to refrain from self-dealing.  See Haw. Rev. Stat. § 425-123.  Thus, the Court believes that the breach of a fiduciary duty in this context is not barred by the economic loss rule because the duty arises not only from the contract but also from partnership principles codified by Hawai'i statute.  The Court therefore **DENIES** Defendants' Motion to Dismiss with respect to Count XI of the complaint.

## CONCLUSION

For the reasons stated above, the Court: **GRANTS IN PART** and **DENIES IN PART** the HECO/MECO Defendants' Motion to Dismiss (Doc. # 392) and **GRANTS IN PART** and **DENIES IN PART** Aloha's Motion for Judgment (Doc. # 406).  Specifically, the Court **DENIES** Aloha's Motion for Judgment and the HECO/MECO Defendants' Motion to Dismiss with respect to Count Nine and **DENIES** the HECO/MECO Defendants' Motion to Dismiss with

respect to Count Eleven.  Counts Four, Seven, Eight, and Ten of the Complaint are

**DISMISSED**.  Count Six is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, February 8, 2011.

_____
David Alan Ezra
United States District Judge

BlueEarth Biofuels, LLC v. Hawaiian Electric Company, Inc., et al., Civ. No. 09-00181 DAE-KSC; ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS HAWAIIAN ELECTRIC COMPANY, INC., MAUI ELECTRIC COMPANY, LTD. AND KARL E. STAHLKOPF'S AMENDED MOTION TO DISMISS THE FOURTH, SIXTH, SEVENTH, NINTH, TENTH AND ELEVENTH CAUSES OF ACTION OF PLAINTIFF BLUEEARTH BIOFUELS, LLC'S THIRD AMENDED COMPLAINT AND; (2) GRANTING IN PART AND DENYING IN PART ALOHA PETROLEUM, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTS SIX THROUGH TEN OF THE THIRD AMENDED COMPLAINT