```
 1                    UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF HAWAII
 2
     BLUEEARTH BIOFUELS, LLC,      )   Case No.  CV09-00181DAE-KSC
 3                                 )
                    Plaintiff,     )   Honolulu, Hawaii
 4                                 )   February 4, 2011
            v.                     )   2:40 p.m.
 5                                 )
     HAWAIIAN ELECTRIC COMPANY,    )
 6   INC., ET AL.,                 )
                                   )
 7                  Defendants.    )
                                   )
 8

 9     TRANSCRIPT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING
                       BEFORE THE KEVIN S.C. CHANG
10                   UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19   Transcriber:            Jessica B. Cahill
                             P.O. Box 1652
20                           Wailuku, Maui, Hawaii 96793
                             Telephone: (808)244-0776
21

22

23   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
24
```

```
 1  APPEARANCES:

 2
    For Plaintiff:              EDMUNDS & VERGA
 3                              By:  JOY OMONAKA, ESQ.
                                841 Bishop Street, #2104
 4                              Honolulu, Hawaii 96813

 5  VIA TELEPHONE               GRUBER HURST JOHANSEN & HAIL
                                By:  MICHAEL HURST, ESQ.
 6                                   DENA STROH, ESQ.
                                     STEVEN HOPKINS, ESQ.
 7                              1445 Ross Avenue, #2500
                                Dallas, Texas 15202
 8
    For Defendant HAWAIIAN
 9  ELECTRIC COMPANY, INC.:     ALSTON HUNT FLOYD & ING
                                By:  PAUL ALSTON, ESQ.
10                              1001 Bishop Street, #1800
                                Honolulu, Hawaii 96813
11

12  For Defendant ALOHA
    PETROLEUM, INC.:            CADES SCHUTTE
13                              By:  C. MICHAEL HEIHRE, ESQ.
                                     TERI-ANN NAGATA, ESQ.
14                              1000 Bishop Street, 12th Floor
                                Honolulu, Hawaii 96813
15

16

17

18

19

20

21

22

23

24

25
```

```
 1  FEBRUARY 4, 2011                                      2:40 P.M.

 2           THE CLERK:  United States District Court, for the

 3  District of Hawaii with the Honorable Kevin S.C. Chang presiding

 4  is now in session.

 5           Civil 09-181DAE-KSC, BlueEarth Biofuels versus

 6  Hawaiian Electric.  This case has been called for a hearing on

 7  plaintiff's motion for leave to file supplemental pleading.  May

 8  I have your appearances?

 9           MS. OMONAKA:  Good afternoon, Your Honor, Joy Omonaka,

10  and we have Michael Hurst participating by telephone, along with

11  two, I guess, attorneys who have applied pro hac vice.

12           THE COURT:  Yes, good afternoon.

13           MR. ALSTON:  Good afternoon, Your Honor, Paul Alston

14  for Hawaiian Electric, Maui Electric, and Dr. Karl Stahlkopf.

15           THE COURT:  Yes, good afternoon.

16           MR. HEIHRE:  Good afternoon and Happy New Year, Your

17  Honor, Michael Heihre and Teri-Ann Nagata on behalf of Aloha

18  Petroleum.

19           THE COURT:  Yes, good afternoon.  Ms. Omonaka or Mr.

20  Hurst?

21           MR. OMONAKA:  Mr. Hurst.

22           THE COURT:  Mr. Hurst.

23           MR. HURST:  Hello, Judge Chang, and Happy New Year.

24  This is Michael Hurst.  Can you hear me okay?

25           THE COURT:  Yes, we're fine.
```

1        MR. HURST:  Thank you for allowing me to appear by
2   telephone.  This -- this motion concerns newly discovered
3   evidence, that is the -- the announcement of the -- of the HECO
4   Aina Koa Pono Project, AKP for short, which was -- which was
5   announced in -- in January, just last month.  A project that's
6   not only fairly similar to the BlueEarth Project, in scope and
7   format, but many of the same cast of characters that received
8   confidential information in the BlueEarth Project either as
9   potential investors of BlueEarth or as -- as counsel in this
10  litigation.
11       And our reply brief, Your Honor, has -- has set out
12  some of the similarities, starting with the idea that they are
13  both biofuel plants being constructed in Hawaii, the eventual
14  use of locally-grown feedstocks.
15       And the structure is -- is remarkably similar -- the
16  same as -- as the BlueEarth Project, that is a subsidiary buying
17  the majority of the plant offtake; cost plus payment scenarios
18  for the fuel by HECO; and the use of private capital based on a
19  long-term tolling agreement with HECO.
20       And some of the same investment prospects, including
21  Karl Stahlkopf's old company, and still related company Sennet
22  Capital; same structure for upsizing to deliver biofuels to
23  other islands.
24       And -- and most importantly, this -- this is the
25  project -- this is essentially replacing, or apparently will be

1   replacing BlueEarth as the main platform to launch HECO's goal
2   or requirement to reduce Hawaii's dependence on non-renewable
3   energy.
4              You know, the main distinction that -- that I would
5   say that HECO is saying to make is that -- that HECO's
6   subsidiary would have owned part of the BlueEarth plant.  And
7   here, it would not -- HECO would not be involved in the
8   ownership or at least directing the ownership of the plant
9   that's being built on -- on the Big Island instead of on Maui,
10  but it is going to be owned, in part, interestingly enough, by
11  former HECO executives including entities related to Karl
12  Stahlkopf, the person at HECO running the project before his
13  departure.
14             The evidence that we've -- we've -- we've offered to
15  submit as far as the amendment to the pleading is -- is not
16  particularly -- is not particularly expansive, it's highly
17  relevant of both BlueEarth's trades secret claim and its unfair
18  competition claims.
19             The trade secret claim is -- is -- is -- basically
20  shows the incestuous nature of the principals, and -- and you
21  could -- you could chart it out, but if you have -- if have you
22  -- in similarity you have HECO, then you have Karl Stahlkopf,
23  who was the -- who was also a defendant and the former HECO's
24  head of the BlueEarth project, then he -- then he -- after he
25  left HECO he went to work with Sennet and now Kairos, which

1  appears to be a Sennet affiliate in some way, shape, or form.

2  AKP is somehow affiliated with Sennet and has the same

3  -- Mr. Kenton Eldridge and some of the same board members,

4  including -- including Mr. Alston himself.

5  Sennet received BlueEarth's confidential information

6  as a potential investor of BlueEarth and, again, without --

7  without belaboring the issue opposing counsel, Mr. Alston,

8  besides being an advisory board member of both AKP and Sennet,

9  is also the general counsel for AKP.

10  Now, the unfair competition issue necessitates our

11  seeking supplementation under Rule 15(d) because AKP and HECO

12  will both control the Hawaii biofuels market by virtue of -- of

13  this project.  It's not just a project for the Big Island of

14  Hawaii.  It is also for -- the intent is to -- to spread to --

15  to more -- all of the islands in Hawaii.  And because the

16  biofuels will be imported to -- to all the islands eventually

17  there is no room for another player to come in.  This, Your

18  Honor, is -- is one of the textbook examples of unfair

19  competition under Hawaii law.

20  Now, we didn't wait to file the -- the motion to

21  supplement.  In fact, we've learned about within two weeks.  We

22  have -- you know, after we did all of our due diligence and our

23  research to try to figure out who the players were, we filed our

24  -- our motion for supplementation and this with -- with haste.

25  THE COURT:  Well, Mr. Hurst, you know --

1            MR. HURST:  Now, of, course, HECO knew, at all times,
2   that -- that -- about what was going on and HECO's counsel knew,
3   at all times, about what was going on and that was specifically
4   set forth in the -- in the briefing, because of course they were
5   involved in -- in this project.
6            THE COURT:  Mr. Hurst.
7            MR. HURST:  Yes.
8            THE COURT:  Having read all of the submissions --
9            MR. HURST:  Yes, Your Honor.
10           THE COURT:  -- you know, it's my -- it's my
11  recollection that, you know, plaintiffs have expressed concern
12  about further delay and maintaining the trial date in this case.
13           MR. HURST:  Right.
14           THE COURT:  You've done that in the past, and -- and
15  it occurs to the Court that if this supplementation is allowed
16  it will necessitate some adjustment or continuance of the trial
17  date.
18           MR. HURST:  We -- we recognize that, Your Honor.  I
19  would say if that's -- if that does necessitate, you know, some
20  sort of adjustment in the trial date, then -- then so be it.  We
21  -- we would like to work diligently to still try to get all of
22  the discovery done by the late April discovery cutoff and
23  proceed to trial in June.
24           However, if that does necessitate some adjustment, as
25  you say, to the trial date, we've got to do what we have to do.

1   Again, we've just now learned about the project and -- and went
2   -- and went to -- immediately to the task in trying to
3   supplement the pleadings.
4         I think Your Honor can see from the proposed
5   amendments, we're not talking about adding claims, we're not
6   talking about adding parties, but the facts that are -- that
7   have been set forth in our -- in our briefing as well as our
8   proposed supplementation necessitates that this become a part of
9   the case.
10        THE COURT:  Mr. Heihre or Mr. Alston.
11        MR. ALSTON:  Thank you, Your Honor.  This motion
12  should be denied for three reasons.
13        First, it is untimely.  They cannot satisfy the Rule
14  16 requirements for amending the pretrial orders and the
15  schedule contained therein nor can they satisfy the Rule 15
16  requirements in light of the heightened demands that are placed
17  on -- on an amendment or a supplement, at this late date, in
18  light of the pending summary judgment motion as we've -- as
19  we've outlined.
20        Secondly, the -- the -- what they're offering is
21  facially inadequate under Iqbal and Twombly, and is contrary to
22  the prior decision by Judge Ezra with respect to the signed
23  Darby contract where he indicated you can't conflate two
24  biofuels contracts and say that just by the fact that there are
25  two contracts there has been a violation of any agreement.

1          And, third, and perhaps most importantly, they are
2  barred by the fact that the NDAs, non-disclosure agreements,
3  that they rely on expired by their terms in September of 2009.
4  This contract is pursuant to a publicly issued request for
5  proposals that came out in early 2010, after the -- any rights
6  under the NDA had -- had long lapsed.  And so, for them to make
7  a complaint now, based on the NDA, is facially untenable in
8  light of the -- the language of the NDA that says that it ends
9  in September 2009.
10         Thirdly, Your Honor, it would be prejudicial to allow
11 this without a very substantial modification to the trial
12 schedule.  And I would suggest that the better course is to deny
13 this.  If they go to trial on the claims that are presently
14 presented, if they can establish, in the face of our pending
15 summary judgment motion that they have any protected
16 intellectual property, if they can establish that it was somehow
17 misused in any fashion by HECO before this at the first trial,
18 if they want to bring a second trial based on this new or second
19 complaint based on this "new information" they have plenty of
20 time to do it.  There is no reason to try to jam these new
21 allegations into the current case.  Let's go to trial, let's
22 have the summary judgment motions pending without all the
23 confusion and additional work that will be required by allowing
24 a supplement at this point.
25         THE COURT:  Mr. Heihre.

1      MR. HEIHRE:  Yes, Your Honor.  In addition to joining
2  in the arguments just made by Mr. Alston, at Page 13 of the
3  reply memorandum, BlueEarth states:  "The newly discovered facts
4  do not implicate Aloha in any way and thus Aloha will suffer no
5  prejudice by BlueEarth being permitted to file the supplement."
6      That -- that contention, I would respectfully submit,
7  doesn't square up with the supplemental pleading.  If one looks
8  at the supplemental pleading and takes a look at the argument
9  made by Mr. Hurst just a few minutes ago, he states that he
10 needs this supplement in order to assist him in his proof of the
11 misappropriation claim.  I believe that's cause of action nine
12 and his unfair competition claim.  And that's the sixth cause of
13 action.
14     If one then looks at both of those causes of action,
15 the supplementation, on its face, seeks to be incorporated into
16 all causes of action not just the causes of action related to
17 HECO or the HECO defendants.
18     So with respect to Aloha, Aloha is confronted with
19 this request for supplementation under the argument that it is a
20 no impact proposition for Aloha, while at the same time being
21 presented with a supplemental pleading which incorporates these
22 new supplemental allegations into each and every cause of action
23 and into the 480 claim which is jointly made against Aloha and
24 the HECO defendants, and the example cited that they wish to
25 supplement would apply equally to the claims being made against

1   Aloha, apparently, as well as in the ninth on the

2   misappropriation which is made against all defendants.

3        So if the proposition is this doesn't apply to Aloha,

4   then the supplemental pleading simply misconstrues the arguments

5   being made and is contradictory to those arguments.

6        So we believe that in fact this will be a supplemented

7   pleading that will attempt to be used against Aloha and will,

8   for example, be used to establish a pattern of conduct, vis á

9   vis, HECO defendants, which then will be -- be brought to bear

10  as to that is the same thing happening with Aloha.

11       So the possibility of confusion between Aloha and AKP,

12  the possibility of entangling Aloha into a project that's not

13  the Dead Maui Project, with the attendant prejudice and,

14  moreover, the attendant diseconomies of bringing in essence a

15  second project into this litigation, provide, I think,

16  formidable arguments to permitting the supplementation.

17       So the position that we'd urge the Court to take is to

18  deny this motion, for the present at least, on the basis of

19  what's before the Court, and maintain the trial date, and that

20  should serve the interest of justice by permitting this thing to

21  be expeditiously resolved, Your Honor.

22            THE COURT:  Mr. Hurst.

23            MR. HURST:  Yes, thank you, Your Honor.  I would first

24  like to address Mr. Alston's arguments starting with the Rule 16

25  requirement which is -- is not applicable here.  Rule 15(d)

1  governs supplements.  The standards are very liberal.  The cases
2  that have been cited in the -- in the briefing and which Your
3  Honor is -- is -- we're happy to provide copies, but I suspect
4  you've already read, fly in the face of what Mr. Alston was
5  trying to argue as does Rule 15(d) itself.
6          In fact, Rule 15(d) itself says, among other things,
7  that the courts may permit supplementation even though the
8  original pleading is defective in stating a claim or defense.
9  These cases are very clear throughout the Ninth Circuit that --
10 that there's a very liberal standard for supplementation under
11 15(d).  And when new facts, claims of the parties, and again
12 we're only talking about facts here, become available the law
13 favors such supplementation.  I'm referring, in this particular
14 instance, to the Ninth Circuit case of Keith, which is 858 2d
15 467, in which they quote another judge in there that says so
16 useful are these 15(d) supplementation and of such service to
17 the efficient administration of justice that they ought to be
18 allowed as of course.
19         And, again, it's like numerous other case -- courts in
20 both the Ninth Circuit and elsewhere across the country about
21 the importance of using 15(d) for supplementation.  And, again,
22 you know, Mr. Alston can -- can complain all he wants about the
23 timing of us -- of us seeking the leave for the supplementation
24 we had nothing to do about it.
25         Presumably only one party in the case or one group of

1  parties knew about what was going on, and it wasn't us.  Mr.
2  Alston knew.  His clients knew.  And in fact in the depositions
3  where we specifically asked about this information, at best, we
4  were stonewalled.  One particular witness, when asked
5  specifically about Aina Koa Pono denied that they were even
6  going to be doing any projects with them.
7          I would refer Your Honor to the -- another case, if I
8  could, in the briefing of the La Salvia case.  It's a Ninth
9  Circuit case at 804 F 2d 1113, where the court said we conclude
10 the district court abused its discretion in denying the motion
11 for leave to amend under 15(d) because motions to amend under
12 15(d) should be granted unless undue prejudice to the opposing
13 party will result.
14         Interestingly, this Court said we see no prejudice to
15 defendants in allowing the amendment because most of the
16 information on the added claim would be available in the other
17 defending parties own files and no discovery would be needed.
18         And then, of course, there are other cases, for
19 instance the Arroyo case, it was decided that absence of a clear
20 showing of prejudice to opposing parties, at least to supplement
21 a complaint pursuant to 15(d) to allege facts occurring after
22 the original pleading was filed is favored by the Court.  And
23 that was citing the case.
24         And finally, Your Honor, just to point out one other
25 case on the -- on this particular issue, and that is the

1  Dominguez case which is -- which was actually out of the Western
2  District of Washington, and it's a 2009 case that stands for the
3  proposition that just because summary judgment is pending
4  there's no reason to deny amendment.  And, again, that the --
5  that the supplementation is favored.
6          Mr. Alston is -- is trying to lead the Court to
7  believe that a denial -- Judge Ezra's denial early on in the
8  case about BlueEarth's attempt to obtain an injunction, as it
9  relates to the purchase of fuel based upon the fact that the --
10 that the -- that the Court said that we have not shown that the
11 fuel purchase contract necessarily implicated the trade secrets
12 was an evidentiary issue that -- an evidentiary burden of that
13 particular contract necessarily implicated trade secrets.
14         This is not an evidentiary situation.  This is a
15 pleading situation, and -- and that the signed Darby Purchase --
16 Fuel Purchase Contract has absolutely nothing to do with this
17 remarkably similar project with the same -- with many of the
18 same players that -- that HECO is now trying to go forward and -
19 - and do right now.
20         The NDA agreements and whether -- whether or not that
21 they -- that they've expired is -- is, again, another red
22 herring that Mr. Alston is using.  First of all, even if they
23 waited until the NDAs expired, until they decided to use these
24 things, that does not impact our unfair competition claims nor
25 does it impact our -- our statutory misappropriation trade

1    secret claims.  So for those reasons those are all red herrings.

2            Mr. Heihre says in his argument that -- that assisting

3    -- that somehow this is going to assist on our claims for unfair

4    competition or misappropriation of trade secrets.  It is

5    additional information that would fall into the purview and

6    needs to fall into the purview of the -- of the existing claims.

7    The fact that we could theoretically bring a second trial, which

8    would be questionable, is exactly what 15(d) does not want us to

9    do.  15(d) and the courts that have interpreted it are saying

10   they're looking for judicial economy.  They're not looking for

11   additional lawsuits or additional claims to be brought in

12   separate cases.

13           You know, to the extent that -- that -- that Aloha

14   does -- it really does distinguish this -- this project,

15   assuming Aloha's not involved, but we don't know that to be a

16   fact or not, that subject is easily addressed by the Court

17   either through motions in limine, through arguments that -- that

18   Aloha had nothing to do with the Aina Koa Pono Project or

19   otherwise.  If we need to further delineate whether Aloha was

20   involved in this -- the current AKP Project in our pleadings we

21   are happy to do so.

22           Again, at this juncture, we don't have any -- any

23   knowledge of Aloha's involvement and the supplemental pleading

24   never was intended to -- to -- to point out that Aloha was

25   involved in that particular wrongdoing.

1        So, Your Honor, the -- the prejudice -- you know, the
2   prejudice on the timing, again, the timing was -- was -- was
3   known by HECO, and it was at their own choosing.  You know, any
4   other prejudice, you know, they don't need discovery on what the
5   claims are they have the information on -- on their -- with the
6   additional discovery, and -- and we would again diligently try
7   to get that discovery completed prior to the -- to the late
8   April deadline and -- and would commence as if we had, you know,
9   the cooperation of our -- of our -- the other parties in this
10  litigation.  We will work hard so that we do not move the trial
11  setting that seems to be what everybody wants to do at this
12  point in time.
13       THE COURT:  The Court having reviewed the written
14  submissions and having considered the arguments this afternoon,
15  pursuant to Rule 15(d) of the Federal Rules of Civil Procedure,
16  grants this motion.
17       The Court further finds that in this case allowing
18  supplementation would promote as complete an adjudication of the
19  dispute between the parties or amongst the parties as possible
20  in this case.
21       While the defendants raise arguments of futility in
22  part, the Court declines to make any dispositive determinations
23  at this time deferring to Judge Ezra to make rulings on the
24  merits of the claims and the facts presented to him.
25       In order to minimize any prejudice to the defendants,

1   which may result from the supplementation, the Court will vacate
2   the June 21, 2011 trial date and all the related trial deadlines
3   in this case.  There will be a scheduling or status conference
4   in one week, Shari.
5              THE CLERK:  That will be February 11, at 9:00 a.m.
6              THE COURT:  At that time we'll address the new trial
7   date.  Counsel, given the complex nature of this case and Judge
8   Ezra's trial calendar I suggest you look -- look at your
9   calendars for 2012 sometime.  Ms. Omonaka, you prepare the order
10  granting this motion consistent with the Court's ruling this
11  afternoon.  Anything else?
12             MR. HURST: Your Honor, with respect to that February
13  11 conference, we will discuss whether or not the -- any of the
14  other existing deadlines would still be in force and effect or
15  is that -- will those also be vacated?
16             THE COURT:  Well, I think -- I think we need to have
17  some further discussion about that, Mr. Hurst.  Yeah, it will be
18  discussed.
19             MR. HURST:   That's fine.  In particular, I was -- I
20  was thinking about the -- the March 3rd settlement conference to
21  determine whether or not we need to continue to make
22  arrangements for -- for attendance.
23             MR. ALSTON:  I would suggest that you put the March
24  3rd settlement conference off.  Judge, we've got dispositive
25  motions set with respect to the claims that were in the original

1   complaint set for April 11th.  It makes no sense, frankly, to
2   talk about settlement at that time until after those motions are
3   decided.
4           THE COURT:  We'll have a conversation on February the
5   11th.  Thank you very much, counsel.  Have a good weekend.
6   We'll be in recess.
7           MR. HEIHRE:  Thank you, Your Honor.
8           MS. OMONAKA:  Thank you, Your Honor.
9           (At which time the above-entitled proceedings were
10  concluded at 3:04 p.m.)

1
2
3 <u>CERTIFICATE</u>
4     I, court approved transcriber, certify that the
5 foregoing is a correct transcript from the official electronic
6 sound recording of the proceedings in the above-entitled matter.
7     Dated this 2nd day of March, 2011.
8
9                           /s/ Jessica B. Cahill
10                           Jessica B. Cahill
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25