IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BLUEEARTH BIOFUELS, LLC,    )     CIV. NO. 09-00181 DAE-KSC
                       )
         Plaintiff,      )
                       )
    vs.              )
                       )
HAWAIIAN ELECTRIC      )
COMPANY, INC.; MAUI      )
ELECTRIC COMPANY, LTD.;   )
ALOHA PETROLEUM, LTD.; AND )
KARL E. STAHLKOPF,     )
Individually,          )
                       )
        Defendants.    )
_____ )


ORDER DENYING PLAINTIFF BLUE EARTH BIOFUELS, LLC'S MOTION
FOR RELIEF FROM THE COURT'S NOVEMBER 15, 2010 SUMMARY
<u>JUDGMENT ORDER</u>

        Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing. After reviewing the motion as well as the

supporting and opposing memoranda, the Court **DENIES** Plaintiff BlueEarth

Biofuels, LLC's Motion for Relief From the Court's November 15, 2010 Summary

Judgment Order (Doc. # 479).

<u>BACKGROUND</u>

This case involves failed plans to create and construct a biodiesel production facility on Maui. (Third Amended Complaint ("TAC"), Doc. # 65.)

In 2006, BlueEarth Biofuels, LLC's ("BlueEarth"), Hawaiian Electric Company, Inc. ("HECO") and Maui Electric Company, Ltd. ("MECO") began talks to jointly and exclusively develop a local biodiesel production facility to replace their use of petroleum diesel for power production. (<u>Id.</u> ¶ 12; Doc. # 325, Ex. 166.) The new facility would produce biodiesel, which is derived from vegetable feedstock. (<u>Id.</u>)

On September 27, 2006, BlueEarth executed Mutual Non-Circumvention and Non-Disclosure Agreements ("NDAs") with both HECO and MECO. (TAC ¶¶ 14, 15.) These NDAs established, among other things, that: (1) confidential information given by one party to another would remain property of the originating party; (2) such confidential information would not be disclosed or used for any purpose by the receiving party, other than for evaluation of the Project; (3) any contacts would be exclusive and valuable contacts of the disclosing party; (4) the party receiving contacts would not enter into direct negotiations or transactions with contacts; and (5) neither party would solicit or accept any

business from sources made available by one party to the other without the express written permission of the disclosing party. (Doc. # 269, Ex. A; id., Ex. B.)

After several months of negotiations, BlueEarth, HECO, and MECO signed a confidential Memorandum of Understanding (the "MOU") detailing the plan for the "evaluation, funding and development" of the large-scale biodiesel production facility to be developed by a newly formed limited liability company, originally termed "Newco," owned by the parties and located on MECO-owned land on Maui (the "Project"). (TAC ¶ 19; Doc. # 269, Ex. C.) Although the MOU was entered into between BlueEarth, HECO, and MECO, HECO's responsibilities in the MOU were expressly contemplated to be superceded by an unregulated subsidiary identified as "HUS" and were so designated by the MOU's terms. (Doc. # 269, Ex. C.) HUS was defined as "[b]oth HECO and the Unregulated Subsidiary[.]" (Id.)

The MOU specified how the parties would proceed with the Project's planning, developing, permitting, funding, construction, and operation. (Id.) The MOU also contained a provision in which the parties agreed to "work exclusively and in good faith with each other to develop" the Project. (Doc. # 269, Ex. C at 4.) The MOU explicitly contemplated future formal agreements in furtherance of the parties' business relationship, including a "Tolling Agreement" for the

long-term sale of biodiesel produced by the Project.  (TAC ¶ 21, n.1; Doc. # 269, Ex. C at 2.)  The Project was anticipated to be owned 51% by BlueEarth and 49% by HUS.  (Doc. # 269, Ex. C at 1-3.)  Specific formalities were left to an "Investment Agreement" to be entered into the parties at a later date.  (Doc. # 269, Ex. C at 1–5.)

Subsequent to the signing of the MOU, two companies were formed: (1) the parties created the entity identified in the MOU as "Newco" and named the company BlueEarth Maui Biodiesel LLC ("BEMB") (Doc. # 316, Ex. 111 at H091481); and (2) HECO created the unregulated subsidiary contemplated in the MOU as HUS and named it Uluwehiokama Biofuels Corp ("UBC").  (Doc. # 316, Ex. 117).  The parties negotiated, and on February 4, 2008 signed, an Operating Agreement and an Investment Agreement (collectively, the "BEMB Agreements") to govern the operation and ownership of BEMB as contemplated in the MOU. The BEMB agreements were entered into between BlueEarth, UBC and BEMB and were signed on February 4, 2008.  (Doc. # 326, Exs. 102, 103.)

Sometime in 2007, BlueEarth began searching for potential fuel subcontractors who would manage and run logistics for a fuel terminal.  (TAC ¶ 27.)  The fuel terminal would be used to store and transfer the raw materials, such as palm oil, and fuel in connection with the Project.  (Id. 27–28.)  One of the

4

subcontractors approached by BlueEarth was Aloha.[1]  (Id.)  BlueEarth also

subsequently considered Aloha as a candidate for providing an equity investment

in the Project.  (See Doc. # 300 Exs. 14 at BE022996, 93.)  According to

BlueEarth, over the course of the next two years BlueEarth spent over $1.2 million

working to develop the Project.  (TAC ¶ 25.)

As the Project progressed, BlueEarth and HECO worked jointly to

develop the Tolling Agreement and originally engaged in negotiations with Energy

Capital Partners ("ECP") for this purpose.[2]  (Doc. # 316, Ex. 104.)  After the

negotiations with ECP fell through, BlueEarth alleges that HECO, MECO, Karl

Stahlkopf—HECO's then-Vice President of Energy Solutions and Chief

Technology Officer—and Aloha began engaging in private negotiations

concerning the development, investment, and ownership of the Project.  (TAC

¶¶ 32–36.)  BlueEarth further contends that HECO, MECO, and Aloha worked to

---

[1] Aloha's later role in the Project and HECO/MECO's alleged unilateral attempt to replace BlueEarth with Aloha is a matter of great contention between the parties.

[2] The Court notes that although the responsibility for negotiations regarding the Tolling Agreement was a UBC obligation (Doc. # 326, Ex. 102, Schedule C), HECO and BlueEarth appear to have engaged in the negotiations as representatives of BEMB.  (Id.)

circumvent the MOU and their respective NDAs in order to cut BlueEarth out of the Project altogether.  (Id.)

Eventually, negotiations for the Project fell through and plans ceased.  (Id. ¶ 39.)  In early October 2008, BlueEarth filed the instant lawsuit in the Northern District of Texas, claiming that Defendants had violated the various NDAs and the Confidentiality Agreement and engaged in a scheme to circumvent BlueEarth's role in the Project.  (Id. ¶ 10.)  On April 21, 2009, the case was transferred to this District.  (Id.)

On November 1, 2010, BlueEarth filed its Third Amended Complaint ("Complaint").  (Doc. # 387.)  The Complaint alleges the following eleven causes of action:

- First: breach of contract (HECO NDA) against HECO (TAC ¶¶ 44–48);

- Second: breach of contract (MECO NDA) against MECO (Id. ¶¶ 49–53);

- Third: breach of contract (MOU) against HECO and MECO (Id. ¶¶ 54–59);

- Fourth: quantum meruit/unjust enrichment against HECO and MECO (Id. ¶¶ 60–63);

- <u>Fifth</u>: breach of contract (Aloha NDA and Confidentiality Agreement) against Aloha (<u>Id.</u> ¶¶ 64-68);

- <u>Sixth</u>: unfair competition under Haw. Rev. Stat. § 480-2 against HECO, MECO, Stahlkopf, and Aloha (<u>Id.</u> ¶¶ 69–76);

- <u>Seventh</u>: tortious interference with existing contracts (all NDAs and the Confidentiality Agreement) as to all Defendants (<u>Id.</u> ¶¶ 77–84);

- <u>Eighth</u>: tortious interference with existing contract (MOU) against Aloha (<u>Id.</u> ¶¶ 85–89);

- <u>Ninth</u>: misappropriation of trade secrets against all Defendants in violation of Haw. Rev. Stat. § 482B-2 (<u>Id.</u> ¶¶ 90–93);

- <u>Tenth</u>: conversion against all Defendants (<u>Id.</u> ¶¶ 94–95);

- <u>Eleventh</u>: breach of fiduciary duty against HECO and MECO (<u>Id.</u> ¶¶ 96–101).

On June 29, 2009, Defendant Aloha filed a Motion to Dismiss (Doc. # 74) and HECO/MECO Defendants and Karl Stahlkopf filed a joint Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 75). On October 7, 2009, this Court issued an order denying without prejudice Defendant Aloha's Motion to Dismiss and HECO/MECO Defendants and Karl Stahlkopf's joint Motion to

Dismiss and directed the parties to submit proposed questions to be certified to the Supreme Court of Hawai`i. (Doc. # 168.)

On September 14, 2009, BlueEarth filed a motion for a Temporary Restraining Order. (Doc. # 143.) On October 26, 2009, after significant briefing from both sides, this Court issued an order denying BlueEarth's motion. (Doc. # 188.) Subsequently, this Court certified questions regarding the scope of Hawaii Uniform Trade Secrets Act ("HUTSA") to the Supreme Court of Hawai`i. (Doc. # 191.) An Opinion of the Supreme Court answering the Certified Questions was returned on July 21, 2010. (Doc. # 301.) In response, Blue Earth requested permission to file its Third Amended Complaint, which was granted on October 27, 2010. (Doc. # 349.)

On May 18, 2010, BlueEarth filed a Motion for Partial Summary Judgment as to Counts 1–3 of the SAC against HECO and MECO ("MPSJ"). (Doc. # 268.) On May 19, 2010, Blue Earth filed a concise statement in support of its MPSJ. (Doc. # 269.) Also on May 19, 2010, BlueEarth filed additional exhibits to its concise statement in support. (Docs. ## 271–74.) On August 2, 2010, HECO/MECO Defendants filed a Counter-Motion for Partial Summary Judgment ("CMPSJ"). ("CMPSJ," Docs. ## 315 (redacted), 322 (sealed).) The same day, HECO/MECO Defendants filed a concise statement in support of their

CMPSJ. (Docs. ## 316 (redacted), 323 (sealed)). On August 9, 2010, Aloha filed a Joinder in HECO/MECO Defendants' CMPSJ. (Doc. # 328.) On November 15, 2010, the Court issued an Order Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant HECO'S Counter-Motion for Partial Summary Judgment ("November Order"). ("Nov. Order," Doc. # 389.) This is the order from which BlueEarth seeks relief in the instant Motion.

On November 1, 2010, BlueEarth filed its Third Amended Complaint. (Doc. # 387.) On November 15, 2010, Aloha and the HECO/MECO Defendants answered. (Doc. ## 390, 391.) On November 15, 2010, the HECO/MECO Defendants filed their Amended Motion to Dismiss the Fourth, Sixth, Seventh, Ninth, Tenth and Eleventh Causes of Action of Plaintiff's Third Amended Complaint ("Motion to Dismiss"). ("Mot. Dismiss," Doc. # 392.) On December 9, 2010, Aloha filed a Motion for Judgment on the Pleadings on Counts Six through Ten of the Third Amended Complaint ("Motion for Judgment"). ("Mot. J.," Doc. # 406.) On February 8, 2011, the Court granted in part and denied in part the Motion to Dismiss and the Motion for Judgment ("February Order"). ("Feb. Order," Doc. # 484.)

On February 1, 2011, Blue Earth filed the instant Motion for Relief from the Court's November 15, 2010 Summary Judgment Order ("Motion").

9

("Mot.," Doc. # 479.)  On February 18, 2011, the HECO/MECO Defendants filed

their Opposition to the Motion.  ("HECO Opp'n," Doc. # 493.)  The same day

Aloha filed its Opposition.  ("Aloha Opp'n," Doc. # 495.)  On February 25, 2011,

BlueEarth filed its Replies.  ("HECO Reply," Doc. # 507; "Aloha Reply," Doc.

# 508.)

BlueEarth requests its relief pursuant to Federal Rule of Civil

Procedure ("Rule") 60(b)(4).  It argues that the Court, in its November Order,

could not have found a novation took place with respect to the BEMB Agreements

and the MOU in granting the HECO/MECO Defendants' CMPSJ.  (Mot. at 1.)

Specifically, BlueEarth argues that because the HECO/MECO Defendants did not

plead novation as an affirmative defense and did not allegedly argue a novation

occurred until its Reply, the Court should not have considered the novation

argument.  (Id.)  BlueEarth also argues that there was a genuine issue of material

fact with respect to the novation issue.  (Id. at 4–5.)

## STANDARD OF REVIEW

Rule  60(b) provides:

On motion and just terms, the court may relieve a party
or its legal representative from a final judgment, order, or
proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

"Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1377 (2010); see also United States v. Berke, 170 F.3d 882, 883 (9th Cir. 1999) (finding for the purposes of Rule 60(b)(4) that "[a] final judgment is 'void' . . . only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law" (citing In re Ctr. Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir. 1985))); Ministry of Defense and Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Sys., 385 F.3d 1206, 1226 (9th Cir. 2004) ("A judgment is void only if the

issuing court lacked subject-matter jurisdiction over the action or if the judgment was otherwise entered in violation of due process.").  "A judgment is not void . . . simply because it is or may have been erroneous."  United Student, 130 S. Ct. at 1377; see also Berke, 170 F.3d at 883 (same).  Instead, "'[w]hen deciding whether an order is 'void' under . . . Rule 60(b)(4) for lack of subject matter jurisdiction, courts must look for the rare instance of clear usurpation of power.'" Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1199 (9th Cir. 2008) (quoting United States v. Hartwell, 448 F.3d 707, 722 (4th Cir. 2006)).  "There is no time limit on a Rule 60(b)(4) motion to set aside a judgment as void." Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987); see also In re Ctr. Wholesale, Inc., 759 F.2d at 1488 ("[I]f a judgment is void, a motion to set it aside may be brought at any time.").

DISCUSSION

I.      Applicability of Rule 60(b)(4)

        A.      November Order's Finality

        As a preliminary matter, the Court has grave concerns regarding the applicability of Rule 60(b) to its November Order.  By its own terms, Rule 60(b) allows a court to "relieve a party or its legal representative from a **final** judgment, order, or proceeding . . . ."  Fed. R. Civ. P. 60(b) (emphasis added).  "The addition

of the qualifying word 'final' emphasizes the character of the judgment, orders or proceedings from which Rule 60(b) affords relief; . . . interlocutory judgments are not brought within the restrictions of the rule . . . ."  Advisory Comm. Note to Fed. R. Civ. P. 60(b); see also 12 James Wm. Moore et al., Moore's Federal Practice § 60.23 ("The standard test for whether a judgment is 'final' is usually stated to be whether the judgment is sufficiently 'final' to be appealed."); Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 571 (7th Cir. 2006) ("[Rule 60(b),] by its terms limited to 'final' judgments or orders, is inapplicable to interlocutory orders.").  In Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867 (9th Cir. 2000), for instance, the Ninth Circuit specifically found that "a preliminary injunction is not a final judgment, order, or proceeding that may be addressed by motion under Rule 60(b)" because it was an "interlocutory order."  Id. at 880 (citing Fed R. Civ. P. 60(b)).  The Ninth Circuit has also determined that "an order that adjudicates less than all claims" is not a final judgment.  California ex rel. Ca. Dep't of Toxic Substances v. Campbell, 138 F.3d 772, 776–77 (9th Cir. 1998).  Further, "[o]rders granting partial summary judgment are, absent special circumstances, not appealable final orders . . . because partial summary judgment orders do not dispose of all claims and do not end the litigation on the merits." Williamson v. UNUM Life Ins. Co. of Am., 160 F.3d 1247, 1250 (9th Cir. 1998).

The Court's November Order was an order that granted partial summary judgment. (See Nov. Order at 1.) The Court cannot find, nor does BlueEarth point to any "special circumstances that would render the November Order an "appealable final order[.]" Id. Instead, the November Order is an interlocutory order. BlueEarth cannot therefore use Rule 60(b) as a means of challenging the November Order.[3] See Prudential Real Estate Affiliates, 204 F.3d at 880 (finding that "a preliminary injunction is not a final judgment, order, or

---

[3] In its Reply, BlueEarth relies on a solitary Ninth Circuit case for support of the proposition that a party may seek relief from a partial summary judgment order per Rule 60(b). (HECO Reply at 4–5.) The case, Sanchez v. Pac. Powder Co., 147 F.3d 1097 (9th Cir. 1998), says, in its entirety, the following about Rule 60(b):

> The district court granted partial summary judgment to defendants on the ground that plaintiffs had filed their charges with the EEOC too late. Plaintiffs moved for relief from the partial summary judgment under [Rule 60(b)]. The district court granted the motion for relief, concluding that it had erred as a matter of law and that plaintiffs' charges were timely.

Id. at 1098–99. The Court is not persuaded that Sanchez has precedential value. The Ninth Circuit did not opine on the district court's decision to grant relief per Rule 60(b)—it was not an issue on appeal. The court was simply reviewing the procedural history at the district court level. Even assuming that Sanchez could be read as a tacit endorsement of the district court's conduct, the Ninth Circuit has since been clear that a court may not grant Rule 60(b) relief from interlocutory orders. See Prudential Real Estate Affiliates, 204 F.3d at 880 (finding that "a preliminary injunction is not a final judgment, order, or proceeding that may be addressed by motion under Rule 60(b)" because it was an "interlocutory order"). BlueEarth has no response to this argument.

14

proceeding that may be addressed by motion under Rule 60(b)" because it was an "interlocutory order"); <u>see also</u> <u>St. Mary's Health Ctr. v. Bowen</u>, 821 F.2d 493, 498 (8th Cir. 1987) (refusing to grant Rule 60(b) relief because a partial summary judgment order is not a final judgment).

     B.    <u>Rule 60(b)(4) Grounds</u>

     Even assuming Rule 60(b)(4) is an appropriate avenue for relief from an interlocutory order, the limited grounds upon which relief can be granted per this rule also defeats BlueEarth's Motion. As noted, relief from an order per this subsection can only be granted "if the issuing court lacked subject-matter jurisdiction over the action or if the judgment was otherwise entered in violation of due process." <u>Cubic Defense Sys.</u>, 385 F.3d at 1226. It is beyond dispute that the Court had and continues to have subject matter jurisdiction over the proceedings. The only issue is whether the November Order was "entered in violation of due process." <u>Id.</u>

     The Supreme Court recently addressed this precise issue in <u>United Students</u>. There, a debtor, Espinosa, in chapter 13 bankruptcy proposed to discharge a portion of his student loan debt but failed to initiate the adversary proceeding required for such a discharge. 130 S. Ct. at 1373. The creditor, United, received notice of the plan but did not object. <u>Id.</u> Years later, the creditor filed a

motion per Rule 60(b)(4) seeking relief from the plan. <u>See id.</u> United argued that the judgment was void because it "did not receive adequate notice of Espinosa's proposed discharge of his student loan interest." <u>Id.</u> at 1378. The Court disagreed.

While Espinosa's failure to serve "a summons and complaint deprived United of a right granted by a procedural rule," the Court determined that "this deprivation did not amount to a violation of United's constitutional right to due process. Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Id.</u> (quotations omitted). Indeed, the creditor "could have timely objected to this deprivation and appealed from an adverse ruling on its objection." <u>Id.</u> In sum, the creditor had "<u>actual</u> notice of the filing and contents of Espinosa's plan [which] more than satisfied United's due process rights." <u>Id.</u>

Assuming for the moment the veracity of BlueEarth's argument that the HECO/MECO Defendants did not plead novation as an affirmative defense and did not, in name, raise novation until its summary judgment reply brief, at worst BlueEarth was deprived of rights "granted by [] procedural rules"— specifically

Rule 8(c) and Local Rule 7.4 respectively.[4]  Id.  BlueEarth, however, was well aware of the thrust of the HECO/MECO Defendants' arguments at the time of the CMPSJ's filing where the HECO/MECO Defendants argued that "[t]he MOU was superseded in all material respects by two later integrated agreements . . . ." (CMPSJ at 2; see also id. at 21–26.)  The Court finds this sufficed to put BlueEarth on actual notice of the HECO/MECO Defendants' novation defense thereby "more than satisf[ying] [BlueEarth's] due process rights."  United Student, 130 S. Ct. at 1378.

Even assuming BlueEarth was not on actual notice, it has never been the case that due process requires actual notice.  See id.; Jones v. Flowers, 547 U.S. 220, 225 (2006) ("Due process does not require . . . actual notice . . . .").  The test is instead whether there was "notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  United Student, 130 S. Ct. at 1378 (quoting Jones, 547 U.S. at 225).  Despite BlueEarth's protestations to the contrary, the Court finds that they were provided more than an ample opportunity

---

[4] Rule 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance of affirmative defense."  Fed. R. Civ. P 8(c). Local Rule 7.4 provides that "[a] reply must respond only to arguments raised in the opposition.  Any argument raised for the first time in the reply shall be disregarded."

to respond to the HECO/MECO Defendants novation arguments such that they were not deprived of due process under the circumstances. The CMPSJ stated clearly the HECO/MECO Defendants' belief that the BEMB Agreements replaced the MOU. Indeed, BlueEarth responded to these arguments in its Opposition and at the Hearing. Further, if BlueEarth felt it had been unduly prejudiced it could have filed a motion for reconsideration within the applicable time period.[5] It could also have requested permission to file supplemental briefing per Local Rule 7.4 before the Hearing once it saw novation was argued in the Reply.[6] Given the complexity of this litigation the Court has been generous in granting leave to file supplemental exhibits, facts, and oversized briefings. The Court has also changed filing deadlines and continued hearings at the request of the parties. (See, e.g., Docs. ## 84, 147, 311, 335, 340, 504, 505.) BlueEarth did not, however, avail itself of these myriad options. Instead, it waited more than two months to file the instant Motion arguing that the November Order was void. Simply put, Blue Earth was on "notice 'reasonably calculated, under all the circumstances, . . . of [the

---

[5] Local Rule 60.1 provides that motions for reconsideration of interlocutory orders may be brought for a manifest error of law or fact "not more than fourteen (14) days after the court's written order is filed."

[6] Local Rule 7.4 provides that "[n]o further supplemental briefing shall be submitted without leave of court." (emphasis added).

novation defense.]'" <u>United Student</u>, 130 S. Ct. at 1378 (quoting <u>Jones</u>, 547 U.S. at 225). Further, BlueEarth was "'afford[ed] . . . an opportunity to present [its ]objections'" in a timely fashion. <u>Id.</u> (quoting <u>Jones</u>, 547 U.S. at 225).

In its Reply to Aloha's Opposition, BlueEarth relies on <u>In re Ctr. Wholesale, Inc.</u> to argue that the November Order was entered in violation due process. (Aloha Reply at 6–7.) There the Ninth Circuit determined that notice of a Hearing given one day in advance deprived a party of due process. 759 F.2d at 1449. The facts of <u>In re Ctr. Wholesale, Inc</u>. are readily distinguishable. There the parties had no reason to believe that the collateral cash order at issue would affect the movants' security interest. <u>See id.</u> at 1449. Indeed the collateral cash order explicitly stated that "[t]he parties believe that this Stipulation <u>does not affect the rights of any other lienholders</u> [including the movants'.]" <u>Id.</u> at 1450. The movant had absolutely no reason to believe that its security interest was threatened until it received notice one day before the hearing. By that time the notice had come too late and provided insufficient information to permit the movant to adequately prepare and present objections. <u>Id.</u> at 1448.

19

By contrast here, BlueEarth had ample opportunity to contest the novation defense.[7]  The heart of the HECO/MECO's argument in the CMPSJ was that the BEMB agreements operated to replace and supercede the MOU. BlueEarth recognized this and argued against it in its Opposition.  Further, BlueEarth, as discussed, had the opportunity to request permission to file supplemental briefing, continue the hearing date, or file a timely motion for reconsideration.  In light of these facts, it is disingenuous to now claim that the November Order denied BlueEarth due process.  Under these circumstances the Court cannot conclude that BlueEarth was deprived of due process.

In sum, given that the Court's November Order is not final as contemplated by Rule 60(b), and given that BlueEarth has not demonstrated that the November Order deprived BlueEarth of due process, the Court will not grant relief from its November Order per Rule 60(b)(4).  This alone is sufficient grounds to dismiss the Motion.

II.     Local Rule 60.1 and Rule 54(b)

For the first time in its Reply briefing, BlueEarth argues that even if relief cannot be granted per Rule 60(b) it could be granted per Local Rule 60.1 and

---

[7] Evidence enough of this point is the fact that even after two months, BlueEarth makes the same arguments now as it did before the Court issued its November Order.  This is discussed infra.

Rule 54(b).[8]  (HECO Reply at 5–9; Aloha Reply at 7.)  The irony of this argument

is not lost on the Court.  The very conduct of which BlueEarth complains in the

instant Motion is that the HECO/MECO Defendants argued novation for the first

time in their Reply and therefore unduly prejudiced BlueEarth.  (Mot. at 15–20.)

Now BlueEarth requests relief per Local Rule 60.1 and Rule 54(b) for the first time

in its Reply briefing with respect to the instant Motion.[9]  As BlueEarth argues in its

Motion:

> Local Rule 7.4 states "[a] reply must respond only to
> arguments raised in the opposition.  Any argument raised for the first
> time in the reply <u>shall</u> be disregarded" (emphasis added).  <u>See also</u>
> <u>Dannenfelser v. DimlerChrysler Corp.</u>, 370 F. Supp. 2d 11091,
> 1097–98 (D. Haw. 2005) (striking portions of summary judgment

---

[8] Local Rule 60.1 states that "Motions for reconsideration of interlocutory orders may be brought [due to a] [m]anifest error of law or fact."  Per Rule 54(b) "a district Court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments."  <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514–15 (9th Cir. 2003).

[9] Indeed, BlueEarth has come precariously close to running afoul of the doctrine of judicial estoppel.  "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  <u>Samson v. NAMA Holdings, LLC</u>, --- F.3d ---, Nos. 09-55835, 09-56394, 2011 WL 652519, at *17 (9th Cir. Feb. 11, 2011) (quotations omitted).  One factor in considering whether to apply the doctrine is "whether the party has successfully advanced the earlier position, such that judicial acceptance of an inconsistent position in the later proceeding would create a perception that either the first or second court had been misled."  <u>Id.</u> Here, BlueEarth has not earlier prevailed so the Court need not consider this doctrine's applicability in the instant Motion.

reply brief for raising new arguments not brought in the opening brief); <u>Kowalski v. Mommy Gina Tun Res.</u>, 574 F. Supp. 2d 1160, 1164 (D. Haw. 2008) (disregarding arguments made for the first time in summary judgment reply brief).

Here, the HECO Defendants never mentioned novation — in any way, shape, or form — until they filed their Reply . . . . The Court should thus have disregarded the HECO Defendants' eleventh-hour novation argument . . . . [B]y raising it in their Reply, the HECO Defendants . . . prevented BlueEarth from having the opportunity to brief the Court properly. For the Court to consider the novation issue under such unusual circumstances not only violated the rules discussed above, but was highly prejudicial to BlueEarth. . . .

Allowing the HECO Defendants to maintain an argument for the first time on a summary judgment reply brief is contrary to the mandate in this Court's Local Rules and prior decisions, as well as highly prejudicial to BlueEarth. The Court's Summary Judgment Order, to the extent that it was based on novation, is void.

(Mot. at 16–20.) BlueEarth raises similar arguments in its Reply briefing:

The Court's own Local Rules further illustrate the untenable nature of the HECO Defendants' assertion. Local Rule 7.4 states that "<u>any</u> argument raised for the first time in the reply shall be disregarded." (emphasis added). This rule prevents the unfair surprise and prejudice that can result from an untimely filed argument.

(HECO Reply at 10.)

In applying BlueEarth's own argument to its first-time request for

relief per Local Rule 60.1 and Rule 54(b) in its Reply, the Court can only conclude

that the request should be disregarded. BlueEarth correctly asserts that Local Rule

7.4 states that "any argument raised for the first time in the reply shall be

disregarded." BlueEarth is also correct that a fundamental purpose behind this rule

is to prevent "the unfair surprise and prejudice that can result from an untimely filed argument." (HECO Reply at 10.) Indeed this rational applies a fortiori here because, unlike the CMPSJ, the Court is resolving this matter without a Hearing. The HECO/MECO Defendants have had no opportunity to Reply at all to BlueEarth's alternative request for relief raised for the first time in its Reply. Comparatively, BlueEarth had at least seventy-two hours to prepare a response to the HECO/MECO's Reply before the hearing. (Aloha Reply at 6–7.) Further, as BlueEarth correctly points out, in Kowalski this Court did indeed disregard arguments made for the first time in a reply brief. 574 F. Supp. 2d at 1164. The Court therefore finds that Local Rule 7.4 provides sufficient grounds to defeat BlueEarths' request for relief per Local Rule 60.1 and Rule 54(b). The Court wants to be clear, however, that in the alternative it still would not grant BlueEarth's request for relief under either Local Rule 60.1 or Rule 54(b).

A.      Local Rule 60.1

Local Rule 60.1 allows a party to file a motion for reconsideration of an interlocutory order. Reconsideration is permitted only on the following grounds:

(a) discovery of new material facts previously not available;
(b) intervening change in law;
(c) manifest error of law or fact.

See Local Rule 60.1; see also Sierra Club, Haw. Chapter v. City & Cnty. of Honolulu, 486 F. Supp. 2d 1185, 1188 (D. Haw. 2007) ("Local Rule 60.1 explicitly mandates that reconsideration only be granted upon discovery of new material facts not previously available, the occurrence of an intervening change in law, or proof of manifest error of law or fact."). According to the Local Rule, "Motions asserted under Subsection (c) of this rule must be filed and served not more than fourteen (14) days after the court's written order is filed." Local Rule 60.1.

A "motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 430 (D. Haw. 1996); Na Mamo O `Aha `Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999). Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. See Haw. Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw.

2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).

Construing BlueEarth's Rule 60(b)(4) motion for relief as a motion for reconsideration, the Court first notes that it is not timely. BlueEarth argues there was a manifest error of law in the November Order. (See HECO Reply at 5.) The Local Rule is clear: "Motions [asserting a manifest error of law or fact] must be filed and served not more than fourteen (14) days after the court's written order is filed." Local Rule 60.1. The instant Motion was not filed until two months after the November Order. Relief per Local Rule 60.1(c) is therefore time-barred.

BlueEarth concedes this point but nonetheless asks the Court to use its "inherent procedural power" to reconsider its November Order. (HECO Reply at 5–6.) The Ninth Circuit has recognized that "as long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind or modify any interlocutory order for cause seen by it to be sufficient." City of Los Angeles, Harbor Division v. Santa Monica Baykeeper, 254 F.3d 882, 889 (9th Cir. 2001). This is primarily because the power to revise an interlocutory order "was recognized at common law and is not derived solely from

25

the Federal Rules of Civil Procedure." Id. at 886. BlueEarth relies primarily on

White v. Sabatino, Civ. Nos. 04-00500 ACK/LEK, 05-00025 ACK/LEK, 2007 WL

2462634 (D. Haw. August 24, 2007), an unpublished opinion which states:

> Even if a motion for reconsideration of an interlocutory order would
> be time-barred in this case, nothing in Local Rule 60.1 prevents the
> Court from exercising its inherent power to modify, rescind, or revise
> an interlocutory order prior to the entry of final judgment.

Id. at *3.

Although the Court might may well have the power to disregard the

Local Rules, it is not convinced it should in the instant case. First, BlueEarth only

points to two instances of the Court overlooking Local Rule 60.1 and both are

unpublished opinions.[10] Comparatively, instances where the Court has refused to

hear a motion to reconsider because it was untimely are legion. See, e.g., Brenner

v. IndyMac Bank, F.S.B., Cv. No. 10-00113 SOM-BMK, 2010 WL 5387566, at *2

(D. Haw. Dec. 17, 2010); United States v. Flaherty, Cv. No. 08-000493 SOM-

KSC, 2010 WL 4273001, at *6 (D. Haw. Oct. 22, 2010); Hawaii v. U.S. Dep't of

Educ., Cv. No. 08-00044 DAE-BMK, 2010 WL 346445, at *4 (D. Haw. Jan. 29,

2010).

---

[10] The other case is United States v. Torres, Cr. No. 06-00477 SOM-LEK, 2007 U.S. Dist. LEXIS 56923, at *10–11 (D. Haw. Aug 3, 2007).

The Court would not, in any event, grant BlueEarth the relief it seeks even if the motion had been timely filed. As noted, a motion for reconsideration must set forth facts or law of a "strongly convincing nature to induce the court to reverse its prior decision." Donaldson, 947 F. Supp. at 430; Galiher, 60 F. Supp. 2d at 1059. BlueEarth has not done so.

BlueEarth's primary argument is that the HECO/MECO Defendants failed to affirmatively plead novation in its answer per Rule 8(c)(1). See Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."); Nw. Acceptance Corp. v. Lynnwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir. 1988) (finding that a novation defense was waived when it was not pled or raised before trial); see also Able Int'; Corp. v. B. P. Chems. Am., 145 F.3d 67, 68 (1st Cir. 1998) ("[N]ovation is an affirmative defense within scope of Fed R. Civ. P. 8(c)." (quotations omitted)). It is undisputed that at the time the CMPSJ was filed, the HECO/MECO Defendants had not included novation as an affirmative defense in its Answer.

Compliance with Rule 8(c) is not, however, absolute. "In the absence of a showing of prejudice, . . . an affirmative defense may be raised for the first time at summary judgment." Camarillo v. MacCarthy, 998 F.2d 638, 639 (9th Cir. 1993); Magana v. Northern Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997);

Healy Tibbits Const. Co. v. Ins. Co. of North America, 679 F.2d 803, 804 (9th Cir. 1982). The Court cannot here conclude the BlueEarth has suffered prejudice.

As a preliminary matter, BlueEarth makes much of the time period between the HECO/MECO Defendants Answer and the CMPSJ. (Mot. at 17 n.7.) Mere delay, however, is insufficient to demonstrate prejudice—a plaintiff much show tangible prejudice. See Ledo Fin Corp. v. Summers, 122 F.3d 825, 827 (9th Cir. 1997) ("Although [the plaintiff] suggests that the five month delay in asserting the . . . defense amounted to an 'ambush,' it points to no tangible way in which it was prejudice by the delay.").

BlueEarth is here elevating form over substance. The HECO/MECO Defendants argued from the inception of the litigation that the MOU was not enforceable and that it merely memorialized preliminary understandings between the parties. This argument was fully fleshed out in the CMPSJ. (CMPSJ at 2; see also id. at 21–26.) BlueEarth was certainly aware the facts supporting a novation defense at the time of the CMPSJ. Indeed the majority of BlueEarth's Opposition to the CMPSJ specifically addressed whether the BEMB agreements superceded the MOU. This scenario is similar to the Ninth Circuit's decision Healy. There an insurance company listed seven affirmative defenses but failed to mention the policy's control exclusion clause. 679 F.2d at 804. Because both parties "were

aware of the policy exclusion [as] it was discussed . . . in [the] opposition to the motion for summary judgment," the court concluded the plaintiff was not prejudiced.  Id.  Similarly here, BlueEarth knew that the HECO/MECO Defendants' argument was that the BEMB agreements superseded the MOU—the HECO/MECO Defendants argued novation in the CMPSJ in all but name.  Under these circumstances the Court cannot conclude that BlueEarth has demonstrated it suffered prejudice by the HECO/MECO Defendants' failure to list novation as an affirmative defense in its Answer.  The HECO/MECO Defendants raised novation in the CMPSJ and BlueEarth had ample opportunity to respond to the HECO/MECO Defendants' arguments.[11]

BlueEarth also argues that the November Order contains clear errors of law.  (Mot. at 21.)  Specifically, it contends that the Court used an incorrect standard to analyze novation.  (Id.)  In support of its position it asserts that "Hawai'i courts have never directly addressed the question of whether a creditor's assent is required for a novation to occur" and argues that the Court erred because

---

[11] This rational is also sufficient to defeat BlueEarth's argument that Local Rule 7.4 prevented the HECO/MECO Defendants from arguing novation for the first time in its Reply.  (Mot. at 10.)  Given that the HECO/MECO Defendants raised novation in substance in the CMPSJ, the Court finds BlueEarth's contention that the HECO/MECO Defendants raised it for the first time in their reply briefing without merit.

"novation is never to be presumed." (Id. at 21, 23.) BlueEarth has

mischaracterized the Court's November Order. Nowhere did the Court state or

hold that BlueEarth's assent was presumed. Instead, the Court relied on Hawaii

Builders Supply Co. v. Kaneta, 42 Haw. 111 (1957), which states that "[t]he

consent of parties to a novation may be established by circumstances showing such

assent." Id. at 114. The Court subsequently found that the circumstances

warranted a finding of assent. (Id. at 43–47.) BlueEarth's assent was never

presumed.

BlueEarth also alleges that a factual question remains as to whether

BlueEarth intended a novation. (Mot. at 29.) BlueEarth, however, offers no new

argument or data in support if its contention. Instead, it recycles the same

arguments this Court considered in its November Order. For instance, BlueEarth

Argues that there was no "meeting of the minds." (Id. at 30.) The Court, however,

considered this very argument and concluded that the facts and circumstances

demonstrated there was mutuality of assent. (Nov. Order at 44–47.) Specifically

the Court found:

> BlueEarth states that it never understood that UBC took
> HECO's place at any time with regard to its obligations under the
> MOU. (See Opp'n to CMPSJ at 6; Doc. # 331, Maez Decl. ¶ 26.)
> However, as stated above, the standard for assent is objective, not
> subjective. The MOU expressly anticipated the BEMB Agreements

would formalize the MOU's obligations and that HECO would create an unregulated subsidiary—UBC—to take over all HUS/HECO's obligations. BlueEarth's objective assent to the novation is evidenced through its demonstrated knowledge that UBC, once formed, would carry the HUS's obligations under the MOU and that the MOU would be superseded by the BEMB Agreements, which BlueEarth drafted and signed. Further, UBC, not HECO, satisfied the amended funding obligation without objection by BlueEarth when it delivered $380,000 to BEMB on the effective date of the Operating

(Id. at 45.) BlueEarth also alleges that the MOU contains several ambiguous terms that raise genuine issues of material fact. (Mot. at 32.) BlueEarth focuses specifically on the word "may" in the MOU where the parties stated that "[t]his [MOU] is entered between [HECO], until a Project Specific HECO Unregulated Subsidy is formed (at which time the rights an obligations of HECO may be transferred in whole or in part to the HECO unregulated subsidy)." (Id. at 32–34.) The Court, however, considered this language in its November Order, finding that the language of the MOU, the parties' actions in preliminary negotiations, and the BEMB agreements illustrated the parties intent to cancel the MOU's parallel provisions. (Id. at 27, 39, 42.)

The only new piece of evidence that BlueEarth points to is a "tacit admission of the MOU's on-going efficacy." (Mot. at 34.) Defendant Karl Stahlkopf wrote in a letter eight months after the formation of UBC that he had "informed Aloha of BlueEarth's rights under the [MOU] among BlueEarth, HECO

and MECO , and made it clear that BlueEarth would be part of any deal." (Mot. at 34.)   Even assuming this language casts some doubt upon the parties intentions with respect to novation, it alone is not a fact of a "strongly convincing nature to induce the court to reverse its prior decision."  <u>Donaldson,</u> 947 F. Supp. at 430; <u>Galiher</u>, 60 F. Supp. 2d at 1059.   For these reasons, the Court denies BlueEarth's request for relief per Local Rule 60.1.

A.    <u>Rule 54(b)</u>

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment."  Fed. R. Civ. P. 54(b).  The Ninth Circuit has held that this rule grants "a district court . . . the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."  <u>Am. Canoe Ass'n</u>, 326 F.3d at 514–15 (citing <u>Moses H. Cone Me. Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.")).  Indeed, "[a] district court may reconsider and revise a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling

law."  Hydranautics v. FilmTec Corp., 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003);

see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) ("A

court has the power to revisit prior decisions of its own or of a coordinate court in

any circumstance.").  As a general rule though "a court should generally leave a

previous decision undisturbed absent a showing that it either represented clear

error or would work a manifest injustice.  Id. (citing Christianson, 486 U.S. at 817

(1988)).

  For the reasons discussed supra, the Court cannot conclude that its

November Order represented clear error or has worked a manifest injustice on

BlueEarth.  Further, since the November Order, BlueEarth has filed another

Amended Complaint and the HECO/MECO Defendants have filed an Answer that

includes novation.  To revisit this issue solely on the grounds that the

HECO/MECO Defendants failed to include novation in a since superceded answer

would not be an efficient use of the Court's time or resources.  See Landis v. North

American Co, 299 U.S. 248, 255 (1936) (noting a district court has control

"efficiently and economically control its docket" as it sees fit); Leyva v. Certified

Grocers of California, Ltd., 59. F.2d 857, 863–64 (9th Cir. 1979) (finding a court

may proceed in a manner that is "efficient for its own docket and the fairest course

for the parties . . .").  Absent a showing of prejudice, there is simply no reason for the Court to vacate its November Order.

In sum, the Court **DENIES** BlueEarth's motion for relief under Rule 60(b)(4) because the November Order is neither final nor was it issued in violation of due process.  The Court further refuses to consider BlueEarth's request for relief per Local Rule 60.1 or Rule 54(b) as it was raised for the first time in BlueEarth's Reply briefing.  The Court finds, however, that even if it were to consider BlueEarth's request for relief raised for the first time in its Reply briefing, it still would not grant BlueEarth the relief it requests.

<u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Plaintiff BlueEarth Biofuels, LLC's Motion for Relief From the Court's November 15, 2010 Summary Judgment Order (Doc. # 479).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 28, 2011.



_____
David Alan Ezra
United States District Judge

<u>BlueEarth Biofuels, LLC v. Hawaiian Electric Company, Inc., et al.</u>, Civ. No. 09-00181 DAE-KSC; ORDER DENYING BLUE EARTH BIOFUELS, LLC'S MOTION FOR RELIEF FROM THE COURT'S NOVEMBER 15, 2010 SUMMARY JUDGMENT ORDER