IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BLUEEARTH BIOFUELS, LLC, | ) CIVIL NO. 09-00181 LEK-KSC |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION TO (1) |
| vs. | ) GRANT IN PART AND DENY IN |
| | ) PART DEFENDANTS HAWAIIAN |
| HAWAIIAN ELECTRIC COMPANY, | ) ELECTRIC COMPANY, INC., |
| INC.; MAUI ELECTRIC | ) MAUI ELECTRIC COMPANY, |
| COMPANY, LTD.; ALOHA | ) LTD., AND KARL STAHLKOPF'S |
| PETROLEUM, LTD.; and KARL | ) MOTION FOR ATTORNEYS' FEES |
| E. STAHLKOPF, Individually, | ) AND NON-TAXABLE COSTS; (2) |
| | ) GRANT IN PART AND DENY IN |
| Defendants. | ) PART DEFENDANT ALOHA |
| | ) PETROLEUM, LTD.'S MOTION |
| | ) FOR ATTORNEYS' FEES AND |
| | ) RELATED NON-TAXABLE COSTS; |
| | ) AND (3) DENY PLAINTIFF'S |
| | ) MOTION FOR AWARD OF |
| _____ | ) ATTORNEYS' FEES |

FINDINGS AND RECOMMENDATION TO (1) GRANT IN PART AND
DENY IN PART DEFENDANTS HAWAIIAN ELECTRIC COMPANY,
INC., MAUI ELECTRIC COMPANY, LTD., AND KARL STAHLKOPF'S
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS;
(2) GRANT IN PART AND DENY IN PART DEFENDANT ALOHA
PETROLEUM, LTD.'S MOTION FOR ATTORNEYS' FEES AND
RELATED NON-TAXABLE COSTS; AND (3) DENY PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEYS' FEES

Before the Court are (1) Defendant Hawaiian

Electric Company, Inc., Maui Electric Company, Ltd.,

and Karl Stahlkopf's (collectively "HECO Defendants")

Motion for Attorneys' Fees and Non-Taxable Costs (Doc.

No. 639); (2) Defendant Aloha Petroleum, Ltd.'s

("Aloha") Motion for Attorneys' Fees and Related Non-Taxable Costs (Doc. No. 678); and (3) Plaintiff BlueEarth Biofuels, LLC's ("Plaintiff") Motion for Award of Attorneys' Fees (Doc. No. 643).

The Court finds these matters suitable for disposition without a hearing pursuant to Rule 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). After reviewing the parties' submissions, the Court FINDS and RECOMMENDS that Defendants' Motions be GRANT IN PART AND DENIED IN PART and that Plaintiff's Motion be DENIED for the reasons set forth below.

<u>BACKGROUND</u>

As the parties and the Court are familiar with the extensive history of this case, the Court will limit the background to those facts relevant to the instant motions.

On November 15, 2010, United States District Judge David Alan Ezra issued an Order Denying Plaintiff's Motion for Partial Summary Judgment; Granting Defendant HECO's Counter-Motion for Partial

2

Summary Judgment.  Doc. No. 389.

On February 8, 2011, Judge Ezra issued an Order: (1) Granting in Part and Denying in Part Defendants Hawaiian Electric Company, Inc., Maui Electric Company, Ltd. and Karl E. Stahlkopf's Amended Motion to Dismiss the Fourth, Sixth, Seventh, Ninth, Tenth and Eleventh Causes of Action of Plaintiff BlueEarth Biofuels, LLC's Third Amended Complaint and; (2) Granting in Part and Denying in Part Aloha Petroleum, Ltd.'s Motion for Judgment on the Pleadings on Counts Six Through Ten of the Third Amended Complaint.  Doc. No. 484.

On May 25, 2011, Judge Ezra issued an Order: (1) Granting Plaintiff and Counterclaim-Defendant BlueEarth Biofuels, LLC and Counterclaim-Defendant Landis Maez's Motion to Dismiss First Amended Counterclaim of Hawaiian Electric Company, Inc. and Maui Electric Company, Ltd.; (2) Granting in Part and Denying in Part Defendants Hawaiian Electric Company, Inc., Maui Electric Company Ltd. and Karl E. Stahlkopf's Motion for Summary Judgment on the First,

Second, Fourth, Sixth, Seventh, Ninth, Tenth, and
Eleventh Causes of Action of the Third Amended
Complaint; (3) Granting in Part and Denying in Part
Defendant Aloha Petroleum Ltd.'s Motion for Summary
Judgment on the Claim for Lost Profits and on the Fifth
Through Tenth Causes of Action of the Third Amended
Complaint; (4) Granting Defendants Hawaiian Electric
Company, Inc., Maui Electric Company, Ltd. and Karl E.
Stahlkopf's Joinder in Defendant Aloha Petroleum,
Ltd.'s Motion for Summary Judgment and; (5) Dismissing
Count Six of the Third Amended Complaint.  Doc. No.
617.

On July 18, 2011, the Court granted the HECO
Defendants' Motion to Dismiss First Amended
Counterclaim Without Prejudice and Rule 54(b) Motion
for Entry of Final Judgment and granted Aloha's Simple
Joinder in and Statement of Position on the aforesaid
Motion.  Doc. No. 628.

On July 22, 2011, the Clerk entered judgment in
the HECO Defendants' favor pursuant to Document Nos.
389, 484, 617, and 628.  Doc. No. 629.

On July 26, 2011, Plaintiff filed a Notice of Appeal to the Ninth Circuit.

On August 18, 2011, the Court entered judgment in favor of Aloha. Doc. No. 656.

On June 21, 2013, the Ninth Circuit affirmed. Doc. No. 714.

On September 3, 2014, the Ninth Circuit issued an order awarding the HECO Defendants $98,877.03 in attorneys' fees and tax for the fees incurred in connection with the appeal. Doc. No. 732.

## DISCUSSION

The HECO Defendants request $2,171,340.26 in attorneys' fees[1] and $68,062.74 in non-taxable costs. Aloha requests $1,972,884.70 in attorneys' fees, or alternatively, $1,876,204.17 if its fees are reduced by 5% for clerical and excessive work, and $39,274.06 in non-taxable costs.

Plaintiff also requests $59,123.50 in

---

[1] Initially, the HECO Defendants requested $3,015,750.35 in attorneys' fees.

attorneys' fees for obtaining a dismissal of the HECO
Defendants' First Amended Counterclaim ("FACC").

I.    Attorneys' Fees

    A.    Entitlement to Attorneys' Fees

        Defendants argue that as the prevailing parties
in this action in the nature of assumpsit, they are
entitled to recover attorneys' fees pursuant to Hawaii
Revised Statutes ("HRS") § 607-14.  Plaintiff contends
that certain claims are not in the nature of assumpsit
and that Defendants have failed to apportion between
assumpsit and non-assumpsit claims.

        A federal court sitting in diversity must apply
state law in determining whether the prevailing party
is entitled to attorneys' fees.  See Farmers Ins. Exch.
v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d
1234, 1236 (9th Cir. 2001).  Under Hawai'i law,
"[o]rdinarily, attorneys' fees cannot be awarded as
damages or costs unless so provided by statute,
stipulation, or agreement."  Stanford Carr Dev. Corp.
v. Unity House, Inc., 111 Hawai'i 286, 305, 141 P.3d

6

459, 478 (2006) (citation and quotation marks omitted);

<u>DFS Group, L.P. v. Paiea Props.</u>, 110 Hawai'i 217, 219,

131 P.3d 500, 502 (2006) (quoting <u>TSA Int'l, Ltd. v.</u>

<u>Shimizu Corp.</u>, 92 Hawai'i 243, 263, 990 P.2d 713, 733

(1999) ("Generally, under the 'American Rule,' each

party is responsible for paying his or her own

litigation expenses.  A notable exception to the

'American Rule,' however, is the rule that attorneys'

fees may be awarded to the prevailing party where such

an award is provided for by statute, stipulation, or

agreement.")).

        HRS § 607-14 is a statutory exception to the

American Rule.  <u>DFS Group</u>, 110 Hawai'i at 219, 131 P.3d

at 502.  It mandates the recovery of fees when a

promissory note or contract provides for the same, in

writing, or when an action is in the nature of

assumpsit, and states, in pertinent part:

                In all the courts, in all actions in the
                nature of assumpsit and in all actions on
                a promissory note or other contract in
                writing that provides for an attorney's
                fee, there shall be taxed as attorneys'
                fees, to be paid by the losing party and

7

to be included in the sum for which
execution may issue, a fee that the court
determines to be reasonable; provided that
the attorney representing the prevailing
party shall submit to the court an
affidavit stating the amount of time the
attorney spent on the action and the
amount of time the attorney is likely to
spend to obtain a final written judgment,
or, if the fee is not based on an hourly
rate, the amount of the agreed upon fee.
The court shall then tax attorneys' fees,
which the court determines to be
reasonable, to be paid by the losing
party; provided that this amount shall not
exceed twenty-five per cent of the
judgment.

Where the note or other contract in
writing provides for a fee of twenty-five
per cent or more, or provides for a
reasonable attorney's fee, not more than
twenty-five per cent shall be allowed . .
.

The above fees provided for by this
section shall be assessed on the amount of
the judgment exclusive of costs and all
attorneys' fees obtained by the plaintiff,
and upon the amount sued for if the
defendant obtains judgment.

Haw. Rev. Stat. § 607-14 (emphasis added). Attorneys'

fees may therefore be awarded under HRS § 607-14 "in

three types of cases: (1) all actions in the nature of

assumpsit; (2) all actions on a promissory note; and

(3) contracts in writing that provides for an attorney's fee." <u>Eastman v. McGowan</u>, 86 Hawai'i 21, 31, 946 P.2d 1317, 1327 (1997). A court awarding attorneys' fees pursuant to § 607-14 must apportion the fees claimed between assumpsit and non-assumpsit claims, if practicable. <u>See</u> <u>Blair v. Ing</u>, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001).

     1.  <u>Prevailing Party</u>

     Section 607-14 states that reasonable attorneys' fees shall be taxed in favor of the prevailing party and against the losing party. The Hawaii courts have noted that "'[i]n general, a party in whose favor judgment is rendered by the district court is the prevailing party in that court, plaintiff or defendant, as the case may be. . . .'" <u>MFD Partners v. Murphy</u>, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992) (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.70[4], at 54-323-54-324, (2d ed. 1992)) (some alterations in original); <u>see also Village Park Cmty. Ass'n v. Nishimura</u>, 108 Hawai'i 487,

503, 122 P.3d 267, 283 (Haw. Ct. App. 2005) (citation omitted). Thus, under Hawaii law, in order to be deemed the prevailing party for purposes of § 607-14, Defendants must have obtained final judgment in their favor. Insofar as the Court entered final judgment in Defendants' favor, there can be no dispute that Defendants are the prevailing parties.

Contrastingly, Plaintiff is not a prevailing party, as it has not obtained judgment in its favor. Plaintiff cites Judge Ezra's 5/25/11 Order and the 7/22/11 judgment in support of a finding of prevailing party status. However, the 5/25/11 Order dismissed the HECO Defendants' FACC with leave to amend; the 7/18/11 Order granted the HECO Defendants' motion for voluntarily dismissal without prejudice of the FACC pursuant to Federal Rule of Civil Procedure 41(a)(2); and the 7/22/11 judgment was in the HECO Defendants' favor, and against Plaintiff. Plaintiff accordingly cannot be deemed the prevailing party, and its request for fees must be denied. Cf. Cadkin v. Loose, 569 F.3d

1142, 1149 (9th Cir. 2009) (holding that a voluntary
dismissal does not alter the legal relationship of the
parties because there is a risk of refiling following a
dismissal without prejudice; thus, the party against
whom a claim is dismissed is not a prevailing party).

    2.  Assumpsit

        The Court must now determine whether this
action is in the nature of assumpsit.  Defendants
initially asserted that all of Plaintiff's claims
sounded in assumpsit.  Plaintiff countered that the
requested fees should be reduced to account for the
claims that are not in the nature of assumpsit.
Defendants now encourage the Court to adopt the Ninth
Circuit's 80-20% apportionment between assumpsit and
non-assumpsit claims.  Defendants submit that
Plaintiff's labeling of claims as assumpsit or non-
assumpsit claims was erroneous.  The Court disagrees.
The Ninth Circuit in fact requires an evaluation of the
nature of each claim when determining whether an action
is in the nature of assumpsit.

"Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." 808 Dev., LLC v. Murakami, 111 Hawaiʻi 349, 366, 141 P.3d 996, 1013 (2006) (citation, emphases, and quotation marks omitted); Helfand v. Gerson, 105 F.3d 530, 537 (9th Cir. 1997) ("Under Hawaii case law, an action in the nature of assumpsit includes 'all possible contract claims.'").

However, the mere fact that a claim "relate[s] to a contract between the parties does not render a dispute between the parties an assumpsit action." TSA, 92 Hawaiʻi at 264, 990 P.2d at 734. "'[T]he nature of a claim' is 'determined from the substance of the entire pleading, the nature of the grievance, and the relief sought, rather than from the formal language employed or the form of the pleadings.'" S. Utsunomiya Enters, Inc. v. Moomuku Country Club, 76 Hawaiʻi 396, 400, 879 P.2d 501, 505 (1994). It is well-established

that "[w]hen there is a doubt as to whether the action is in assumpsit or tort, there is a presumption that the suit is in assumpsit." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (quoting Leslie v. Estate of Tavares, 93 Hawai'i 1, 6, 994 P.2d 1047, 1052 (2000) (citing Healy-Tibbitts Constr. Co. v. Hawaiian Indep. Refinery, Inc., 673 F.2d 284, 286 (9th Cir. 1982))); see also Helfand, 105 F.3d at 537. "Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit." Helfand, 105 F.3d at 537 (citing Healy-Tibbitts, 673 F.2d at 286).

Although the Court looks to the substance of the entire pleading, it must also "determine whether each individual claim alleged in a complaint sounds in assumpsit or tort." Kona Enters. v. Estate of Bernice Pauahi Bishop, 229 F.3d 877, 885 (9th Cir. 2000). The Court addresses each claim in turn.[2]

---

[2] Counts I-IV and V-XI pertain to the HECO Defendants. Counts V-X pertain to Aloha.

13

a.　breach of the memorandum of agreement
　　　　　　　　　and nondisclosure agreement ("MOU" and
　　　　　　　　　"NDAs"), and confidentiality agreement
　　　　　　　　　(Counts I, II, III, and V)

The breach of contract claims are in the nature of assumpsit. Murakami, 111 Hawai'i at 366, 141 P.3d at 1013; Helfand, 105 F.3d at 537.

　　　　　　　b.　quantum meruit/unjust enrichment
　　　　　　　　　(Count IV)

Plaintiff's unjust enrichment claim is likewise in the nature of assumpsit. See Hong v. Kong, 5 Haw. App. 174, 182, 683 P.2d 833, 841 (1984) (citations omitted) ("From its inception as a form of action for breach of simple contract, assumpsit also evolved as 'a vehicle for recovery in quasi contract,' basically 'to deprive the defendant of an unjust enrichment.' Indeed, 'assumpsit will lie upon a promise implied by law, which arises to prevent one man from being inequitably enriched at another's expense.'"); Pung v. TrustStreet Props., Inc., CV. No. 05-00618 DAE-KSC, 2007 WL 1310094, at *3 (D. Haw. May 03, 2007).

c.   <u>unfair competition (Count VI)</u>

By contrast, Plaintiff's HRS Chapter 480 unfair competition cause of action is statutory and is not in the nature of assumpsit.  Although § 480-13 provides for the recovery of attorneys' fees, this section applies to plaintiffs, not defendants.  Thus, Defendants could not recover fees with respect to this claim alone.  <u>TSA</u>, 92 Hawai'i at 264 n.9, 990 P.2d at 734 n.9 (the parties do not dispute that the "statutory causes of action (i.e., securities violation under HRS ch. 485, fraud on creditors under HRS ch. 651C, unfair competition under HRS ch. 480, and RICO under 18 U.S.C. § 1962) do not authorize an award of fees to a successful defendant under these circumstances.").

d.   <u>tortious interference with existing contracts (Counts VII and VIII)</u>

Claims of tortious interference with existing contracts sound in tort, not assumpsit.  <u>Burgess v. Arita</u>, 5 Haw. App. 581, 594, 704 P.2d 930, 939 (1985) (characterizing tortious interference with contractual relations as tort claim).

15

### e. misappropriation of trade secrets (Count IX)

Plaintiff's misappropriation of trade secrets claim, pursuant to HRS § 482B-1, et seq., is a statutory claim and is therefore not in the nature of assumpsit.

### f. conversion (Count X)

Conversion sounds in tort. _Hough v. Pac. Ins. Co._, 83 Hawai'i 457, 468, 927 P.2d 858, 869 (1996) (identifying conversion as a tort).

### g. breach of fiduciary duty (Count XI)

Although a breach of fiduciary duty claim can be in the nature of assumpsit, Judge Ezra already determined that Plaintiff's breach of fiduciary duty claim sounds in tort. Doc. No. 484 at 46. A "breach of fiduciary duty claim sounds in tort where the duties allegedly arise as a matter of law from the fiduciary relationship between partners and not from a contractual agreement." _Kona Enters._, 229 F.3d at 886 (citing _TSA_, 92 Hawai'i at 263-64, 990 P.2d at 733-34). Where, as here, Plaintiff's allegations are predicated

16

on agreements between the parties, but do not involve monetary damages based upon the non-performance of a contractual or quasi-contractual obligation (i.e., breach of contract), the claims are not in the nature of assumpsit.[3] TSA, 92 Hawai'i at 734, 990 P.2d at 734. Indeed, the "mere fact that [a plaintiff's] claims relate to a contract between the parties does not render the dispute between the parties an assumpsit action." Id.

### 3. Apportionment of Fees Between Assumpsit and Non-assumpsit Claims

Having concluded that Counts I-V are in the nature of assumpsit and Counts VI-XI are not in the nature of assumpsit, the Court must now determine whether it is practicable to apportion the award of

---

[3] Instead, the requested damages relate to the HECO Defendants' conduct. Plaintiff in fact seeks punitive damages, alleging that the HECO Defendants' acted willfully, wantonly, fraudulently, and/or with malice. Doc. No. 387 at ¶ 100. Such damages are more closely akin to tort damages. The Hawaii Supreme Court has held that "punitive damages will *never* be recoverable, absent conduct that violates a duty that is independently recognized by principles of tort law." Francis v. Lee Enters., Inc., 89 Hawai'i 234, 242, 971 P.2d 707, 715 (1999).

attorneys' fees between the assumpsit and non-assumpsit claims.  <u>TSA</u>, 92 Hawaiʻi at 264, 990 P.2d at 734 (citation omitted); <u>Kona Enters.</u>, 229 F.3d at 885.  In some cases it may be impracticable or impossible to apportion fees.  <u>See</u>, <u>e.g.</u>, <u>Blair</u>, 96 Hawaiʻi at 333, 31 P.3d at 190 ("Because the negligence claim in this case was derived from the alleged implied contract and was inextricably linked to the implied contract claim by virtue of the malpractice suit, we hold that it is impracticable, if not impossible, to apportion the fees between the assumpsit and non-assumpsit claims.").  Thus, under <u>Blair v. Ing</u>, a court may award reasonable attorneys' fees pursuant to HRS § 607-14 to a party who succeeds on a contract claim that is "inextricably linked" to a tort claim, and decline to apportion fees.  <u>Id.</u>

        As noted above, Defendants ask the Court to find that 80% of their time was expended in defense of assumpsit claims.  In its 9/3/14 Order, the Ninth Circuit considered the apportionment issue and

18

determined that the assumpsit and non-assumpsit claims were not so inextricably intertwined that apportionment was impracticable. Doc. No. 732 at 14-15. The Ninth Circuit concluded that Plaintiffs' breach of the parties' MOU "predominated on appeal and occupied approximately 80 percent of the time necessary to represent HECO." Id. at 15. As a result, after reductions for excessive/clerical work, a 20% reduction was made to the fees requested by the HECO Defendants to account for the hours expended on Plaintiff's non-assumpsit breach of fiduciary duty and unfair competition claims. Id.

The Court agrees with the Ninth Circuit that the claims were not so inextricably intertwined so as to preclude apportionment. Notwithstanding the fact that Plaintiff only appealed the breach of MOU, breach of fiduciary duty, and unfair competition claims, this Court additionally agrees that an 80-20% apportionment is reasonable and appropriate for the trial court litigation. The Court reaches this conclusion after

reviewing the pleadings, motions and related submissions, orders, and timesheets.  The crux of this litigation was Defendants' alleged disclosure of confidential information and/or trade secrets in violation of multiple agreements between the parties.  Thus, although Plaintiff asserted a number of non-assumpsit claims, the apportionment should not be evenly divided by the number of assumpsit and non-assumpsit claims.  Defendants expended a significant amount of time defending against the assumpsit claims.  Accordingly, this Court shall reduce Defendants' lodestar by 20% after making other necessary reductions.

B.  Calculation of Fees

The Court shall now assess the reasonableness of the fees requested by Defendants.  Hawaii courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  DFS Group, 110

Hawaiʻi at 222, 131 P.3d at 505.  The court must

determine a reasonable fee by multiplying the number of

hours reasonably expended by a reasonable hourly rate.

See id. at 222-23, 131 P.3d at 505-06.  In addition,

Hawaii courts may consider the following factors:

> (1) the time and labor required, the
> novelty and difficulty of the questions
> involved and the skill requisite properly
> to conduct the cause; (2) whether the
> acceptance of employment in the particular
> case will preclude the lawyer's appearance
> for others in cases likely to arise out of
> the transaction, and in which there is a
> reasonable expectation that otherwise he
> would be employed, or will involve the
> loss of other employment while employed in
> the particular case or antagonisms with
> other clients; (3) the customary charges
> of the Bar for similar services; (4) the
> amount involved in the controversy and the
> benefits resulting to the client from the
> services; (5) the contingency or the
> certainty of the compensation; and (6) the
> character of the employment, whether
> casual or for an established and constant
> client.

Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawaiʻi,

106 Hawaiʻi 416, 435, 106 P.3d 339, 358 (2005)

(citations omitted).  These factors, however, are

merely guides; courts need not consider them in every

case.  See id.  In certain types of cases, some of
these factors may justify applying a multiplier to the
"lodestar" amount.  See Chun v. Bd. of Trs. of
Employees' Ret. Sys. of Hawai'i, 92 Hawai'i 432, 442,
992 P.2d 127, 137 (2000).

    1.  Reasonable Hourly Rate

Defendants request the following hourly rates:

    a.  HECO Defendants

| Name | Hourly Rate |
|---|---|
| **Alston Hunt Floyd & Ing** | |
| Allison Kirk Griffiths | $180 |
| Britten McClain | $125 |
| Clyde Wadsworth | $325 |
| David Abidir | $250 |
| David Higgins | $250 |
| Daniel Povich | $175 |
| David Austin | $150 |
| Diane Brookins | $300 |
| Erica Chee (as law clerk) | $125 |
| Erica Chee (as associate) | $150 |
| Gail Pang (document analyst) | $50 |
| Glenn Melchinger | $200 |

| | |
|---|---|
| Herbert Chun (IT support) | $100 |
| Iris Takane (paralegal) | $145 |
| Jya-Ming Bunch (document analyst) | $50 |
| John Ferry | $150 |
| Jael Makagon | $150 |
| Jabin Vinoya (document analyst) | $50 |
| Jennifer Stringfellow | $125 |
| Kathryn Brockett (document analyst) | $50 |
| Kyoko Patoc (paralegal) | $125 |
| Kevin Worthington (IT support) | $100 |
| Louise Ing | $340 |
| Lexi McKay (paralegal) | $140 |
| Malia Kakos | $225 |
| Maren Calvert | $225 |
| Noreen Kanada (paralegal) | $145 |
| Orlesia Tucker | $280 |
| Paul Alston | $540 |
| Quentin Weld (law clerk) | $125 |
| Shellie Park Hoapili | $170 |
| Samson Lee (document analyst) | $50 |
| Thomas Bush | $295 |
| Thomas Moriarty (law clerk) | $125 |
| Tyler McNish | $150 |
| Zion Kawahakui (IT support) | $100 |
| Document Analyst | $50 |

| Sonnenschein Nath & Rosenthal | |
|---|---|
| C. Michael Moore (2008) | $522 |
| C. Michael Moore (2009) | $585 |
| Gene Bensen (2008) | $324 |
| Gene Bensen (2009) | $364.50 |
| Robert Needham (2008) | $229.50 |
| Robert Needham (2009) | $243 |
| C. Taylor (paralegal) (2008) | $180 |
| C. Taylor (paralegal) (2009) | $189 |

b. <u>Aloha</u>

| Name | Hourly Rate |
|---|---|
| Cades Schutte | |
| Amy Parker (paralegal) | $140 |
| Calvert Chipchase (2009) | $230 |
| Calvert Chipchase (2010) | $240 |
| Calvert Chipchase (2011) | $260 |
| C. Michael Heihre (2008) | $330 |
| C. Michael Heihre (2009) | $340 |
| C. Michael Heihre (2010) | $350 |
| C. Michael Heihre (2011) | $360 |
| Cheryl Yasunaga (paralegal) (2009) | $140 |
| Cheryl Yasunaga (paralegal) (2010) | $150 |
| Christopher Goodin (2010) | $175 |

| | |
|---|---|
| Christopher Goodin (2011) | $185 |
| Douglas Frederick (2009) | $135 |
| Douglas Frederick (2010) | $165 |
| Douglas Frederick (2011) | $175 |
| Diane Kon (paralegal) (2009) | $140 |
| Diane Kon (paralegal) (2010) | $150 |
| Dennis Chong Kee | $280 |
| E. Gunner Schull (2008) | $330 |
| E. Gunner Schull (2009) | $340 |
| E. Gunner Schull (2010) | $295 |
| Eaton O'Neil (2009) | $140 |
| Eaton O'Neil (2010) | $150 |
| Michael Schwartz (2009) | $220 |
| Michael Schwartz (2010) | $230 |
| Martin Hsia | $325 |
| Megan Johnson | $210 |
| Mitsuko Takahashi (2009) | $135 |
| Mitsuko Takahashi (2010) | $165 |
| Mitsuko Takahashi (2011) | $175 |
| Nathan Okubo (2009) | $175 |
| Nathan Okubo (2010) | $185 |
| Renee Mariano (paralegal) | $150 |
| Teri-Ann Nagata (2008) | $195 |
| Teri-Ann Nagata (2009) | $205 |
| Teri-Ann Nagata (2010) | $215 |

| | |
|---|---|
| Teri-Ann Nagata (2011) | $225 |
| Winnie Pham (paralegal) (2010) | $150 |
| Winnie Pham (paralegal) (2011) | $160 |
| **Munsch Hardt Kopf & Harr** | |
| D. Ronald Reneker | $400 |
| John Thompson | $275 |
| Michael Lee | $250 |

The Hawaii courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation and some courts have considered federal law in determining a reasonable hourly rate. See, e.g., Reiche v. Ferrera, No. 24449, 2003 WL 139608, at *8 (Hawai'i Ct. App. Jan. 16, 2003) ("The reasonable hourly rate is that prevailing in the community for similar work." (citing United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)). But see DFS Group, 110 Hawai'i at 223, 131 P.3d at 506 (determining a reasonable hourly rate by calculating the average of the four requested rates). This Court therefore finds that federal case law on the determination of a reasonable hourly rate is

instructive in the instant case.

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010) (internal quotation marks omitted)) (quotations omitted); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"); see also Chun, 106 Hawai'i at 435, 106 P.3d at 358 (listing "the customary charges of the Bar for similar services" as a factor that may be considered). In the foregoing community, the district court should "tak[e] into consideration the experience, skill, and reputation of the attorney [or paralegal]." Gonzalez, 729 F.3d at 1205-06 (citation omitted) (alterations in original). It is the burden of the fee applicant "to produce satisfactory evidence–in addition to the

attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)) (quotations omitted).

Defendants assert that the Ninth Circuit's hourly rate determinations should apply here as the law of the case.  The Court is not persuaded.  Reasonableness in the Ninth Circuit does not translate to reasonableness in this district.  The prevailing hourly market rates of attorneys practicing at the appellate level within the Ninth Circuit are significantly higher than the rates within this community.  That the Ninth Circuit deemed reasonable certain hourly rates for Mr. Alston ($540), Mr. Wadsworth ($325), Ms. Tucker ($280), and Ms. Takane (paralegal $145) for 2011-13 court of appeals work does not compel a finding that these same rates are applicable to the litigation in this district.

Defendants' request is akin to measuring the
reasonableness of the hourly rates in this community
against prevailing mainland rates, which contravenes
applicable law.

        To support their counsel/paralegals' rates,
Aloha argues that said rates are comparable to, and in
many instances lower than, those charged by Plaintiff's
attorneys and paralegals.  However, the rates charged
by opposing counsel have no bearing on the
reasonableness of the hourly rates requested by
Defendants, particularly where, as here, the rates
cited by Aloha pertain to Plaintiff's mainland counsel.
Even if the rates cited by Aloha pertained to
Plaintiff's local counsel, they would not support a
finding of reasonableness with respect to all of
Aloha's counsel.  The hourly rate willingly paid by a
client is not necessarily commensurate with "prevailing
rates" in this district.  The fact that certain clients
may be willing to pay specified rates does not mean
that counsel "command this rate as to all their clients

and/or are entitled to such rate as a reasonable hourly rate." <u>Haw. Defense Found. v. City and Cnty. of Honolulu</u>, Civil No. 12-00469 JMS-RLP, 2014 WL 2804448, at *5 n.7 (D. Haw. June 19, 2014).  If the hourly rates awarded by the Court always had to comport with the rates paid by clients, it would dispense of the requirement that a court take into account an attorney's skill and experience.

This Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation.  Based on this Court's knowledge of the community's prevailing rates, the Court's familiarity with this case, and defense counsel's submissions, this Court finds that some of the requested rates are reasonable, some are excessive, and others are inapplicable.

In particular, the Court declines to designate an hourly rate for "IT support" because the Court does

not compensate for hours expended by such staff.[4]

<u>Crawford v. Japan Airlines</u>, Civil No. 03–00451 LEK–KSC, 2014 WL 1326576, at *3 (D. Haw. Jan. 22, 2014), <u>adopted in pertinent part by</u> 2014 WL 1326580 (D. Haw. Mar. 28, 2014) ("[O]nly the reasonable hours incurred by attorneys and paralegals [are] compensable.  This Court does not compensate for the time expended by other professionals such as librarians, litigation specialists, litigation coordinators, or legal assistants." (quoting <u>HRPT Props. Trust v. Lingle</u>, 775 F. Supp. 2d 1225, 1239-40 (D. Haw. 2011)).  The Court also declines to assign an hourly rate to the "Document Analyst" identified by the HECO Defendants.  The HECO Defendants claim that the initials "DA" refer to any of a specified list of individuals.  Many of these individuals are also identified in the timesheets by their own initials.  The Court finds that the generic "DA" designation is insufficient and any hours expended with respect to "DA" will not be compensated.

--------

[4]  Curiously, the HECO Defendants originally referred to IT support as document analysts.

The Court deems the following rates to be

reasonable:


a.  <u>HECO Defendants</u>

| Name | Requested Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| **Alston Hunt Floyd & Ing** | | |
| Allison Kirk Griffiths | $180 | $180 |
| Britten McClain (paralegal) | $125 | $85 |
| Clyde J. Wadsworth | $325 | $290 |
| David Abidir | $250 | $150 |
| David Higgins | $250 | $180 |
| Daniel Povich | $175 | $160 |
| David Austin | $150 | $150 |
| Diane Brookins | $300 | $275 |
| Erica Chee (as law clerk) | $125 | $100 |
| Erica Chee (as associate) | $150 | $145 |
| Gail Pang (document analyst) | $50 | $50 |
| Glenn Melchinger | $200 | $200 |
| Herbert Chun (IT support) | $100 | $0 |
| Iris Takane (paralegal) | $145 | $90 |
| Jya-Ming Bunch (document analyst) | $50 | $50 |
| John Ferry | $150 | $145 |

| | | |
|---|---|---|
| Jael Makagon | $150 | $150 |
| Jabin Vinoya (document analyst) | $50 | $50 |
| Jennifer Stringfellow | $125 | $100 |
| Kathryn Brockett (document analyst) | $50 | $50 |
| Kyoko Patoc (paralegal) | $125 | $85 |
| Kevin Worthington (IT support) | $100 | $0 |
| Louise Ing | $340 | $325 |
| Lexi McKay (paralegal) | $140 | $85 |
| Malia Kakos | $225 | $225 |
| Maren Calvert | $225 | $195 |
| Noreen Kanada (paralegal) | $145 | $85 |
| Orlesia Tucker | $280 | $225 |
| Paul Alston | $540 | $425 |
| Quentin Weld (law clerk) | $125 | $100 |
| Shellie Park Hoapili | $170 | $170 |
| Samson Lee (document analyst) | $50 | $50 |
| Thomas Bush | $295 | $260 |
| Thomas Moriarty (law clerk) | $125 | $100 |
| Tyler McNish | $150 | $140 |
| Zion Kawahakui (IT support) | $100 | $0 |
| Document Analyst | $50 | $0 |
| **Sonnenschein Nath & Rosenthal** | | |
| C. Michael Moore (2008) | $522 | $522 |
| C. Michael Moore (2009) | $585 | $585 |

| | | |
|---|---|---|
| Gene Bensen (2008) | $324 | $324 |
| Gene Bensen (2009) | $364.50 | $364.50 |
| Robert Needham (2008) | $229.50 | $229.50 |
| Robert Needham (2009) | $243 | $243 |
| C. Taylor (paralegal) (2008) | $180 | $180 |
| C. Taylor (paralegal) (2009) | $189 | $189 |

b.  <u>Aloha</u>

| Name | Requested Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| **Cades Schutte** | | |
| Amy Parker (paralegal) | $140 | $90 |
| Calvert Chipchase (2009) | $230 | $190 |
| Calvert Chipchase (2010) | $240 | $190 |
| Calvert Chipchase (2011) | $260 | $190 |
| C. Michael Heihre (2008) | $330 | $330 |
| C. Michael Heihre (2009) | $340 | $340 |
| C. Michael Heihre (2010) | $350 | $350 |
| C. Michael Heihre (2011) | $360 | $360 |
| Cheryl Yasunaga (paralegal) (2009) | $140 | $85 |
| Cheryl Yasunaga (paralegal) (2010) | $150 | $85 |
| Christopher Goodin (2010) | $175 | $165 |
| Christopher Goodin (2011) | $185 | $165 |

| | | |
|---|---|---|
| Douglas Frederick (2009) | $135 | $135 |
| Douglas Frederick (2010) | $165 | $150 |
| Douglas Frederick (2011) | $175 | $150 |
| Diane Kon (paralegal) (2009) | $140 | $90 |
| Diane Kon (paralegal) (2010) | $150 | $90 |
| Dennis Chong Kee | $280 | $250 |
| E. Gunner Schull (2008) | $330 | $330 |
| E. Gunner Schull (2009) | $340 | $340 |
| E. Gunner Schull (2010) | $295 | $295 |
| Eaton O'Neil (2009) | $140 | $140 |
| Eaton O'Neil (2010) | $150 | $150 |
| Michael Schwartz (2009) | $220 | $190 |
| Michael Schwartz (2010) | $230 | $190 |
| Martin Hsia | $325 | $300 |
| Megan Johnson | $210 | $170 |
| Mitsuko Takahashi (2009) | $135 | $135 |
| Mitsuko Takahashi (2010) | $165 | $145 |
| Mitsuko Takahashi (2011) | $175 | $145 |
| Nathan Okubo (2009) | $175 | $165 |
| Nathan Okubo (2010) | $185 | $165 |
| Renee Mariano (paralegal) | $150 | $85 |
| Teri-Ann Nagata (2008) | $195 | $180 |
| Teri-Ann Nagata (2009) | $205 | $180 |
| Teri-Ann Nagata (2010) | $215 | $180 |
| Teri-Ann Nagata (2011) | $225 | $180 |

| | | |
|---|---|---|
| Winnie Pham (paralegal) (2010) | $150 | $85 |
| Winnie Pham (paralegal) (2011) | $160 | $85 |
| **Munsch Hardt Kopf & Harr** | | |
| D. Ronald Reneker | $400 | $400 |
| John Thompson | $275 | $275 |
| Michael Lee | $250 | $250 |

The Court declines to make adjustments to the hourly rates for Texas counsel. Although Texas counsel's rates are purportedly in line with the prevailing rates in Texas, not Hawaii,[5] they are reasonable under the circumstances, and based on the submissions of counsel. Texas counsel completed work while the case was being litigated in Texas, prior to its transfer to this district on April 22, 2009. As a result, their hourly rates should be consistent with the prevailing rates in Texas.

### 2. Reasonable Hours Expended

For the reasoning stated in Section B.1, this Court finds federal case instructive on the issue of

---

[5] Some of the Texas-based rates are actually consistent with the prevailing rates in this district given the attorney's experience.

the reasonable number hours expended on the instant

case.  Beyond establishing a reasonable hourly rate, a

prevailing party seeking attorneys' fees bears the

burden of proving that the fees and costs taxed are

associated with the relief requested and are reasonably

necessary to achieve the results obtained.  See Tirona

v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632,

636 (D. Haw. 1993) (citations omitted); see also Sharp

v. Hui Wahine, 49 Haw. 241, 247, 413 P.2d 242, 246

(1966) (the party requesting fees has the burden to

prove that the requested fees were reasonably and

necessarily incurred).  The court must guard against

awarding fees and costs which are excessive, and must

determine which fees and costs were self-imposed and

avoidable.  Tirona, 821 F. Supp. at 637 (citing INVST

Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th

Cir. 1987), cert. denied, 484 U.S. 927 (1987)).

District courts have "a great deal of discretion in

determining the reasonableness" of a fee request.

Gates, 987 F.2d at 1398.  Time expended on work deemed

37

"excessive, redundant, or otherwise unnecessary" shall not be compensated.  Id. at 1399 (quoting Hensley, 461 U.S. at 433-34).

The HECO Defendants propose a 10% across-the-board reduction in the requested hours to account for any inefficiencies, including clerical work.  Aloha requests that no reductions be made to the hours expended in the defense of this action, but if any reductions are made for clerical or excessive work, that they not exceed 5%.

Plaintiff emphasizes that inasmuch as the Ninth Circuit reduced the HECO Defendants' hours by 32%, a reduction of 10% would be insufficient.  Plaintiff asks that the Court conduct a review of the requested hours and make appropriate reductions.

There are two methods by which the Court may exclude non-compensable hours:  1) an "hour-by-hour analysis of the fee request" and 2) "when faced with a massive fee application . . . make across-the-board percentage cuts either in the number of hours claimed

or in the final lodestar figure as a practical means of
[excluding non-compensable hours] from a fee
application." Gonzalez, 729 F.3d at 1203 (quoting
Gates, 987 F.2d 1392, 1399 (9th Cir. 1992)) (quotations
omitted) (alteration in original).

> However, when a district court decides
> that a percentage cut (to either the
> lodestar or the number of hours) is
> warranted, it must "set forth a concise
> but clear explanation of its reasons for
> choosing a given percentage reduction."
> We have recognized one exception to this
> rule: "[T]he district court can impose a
> small reduction, no greater than 10
> percent—a 'haircut'—based on its exercise
> of discretion and without a more specific
> explanation." In all other cases,
> however, the district court must explain
> why it chose to cut the number of hours or
> the lodestar by the specific percentage it
> did.

Id. While the Court ordinarily conducts a thorough
review of every time entry submitted by the party
requesting fees, it would be unduly burdensome and
impractical to do so here. Defendants' fee requests
are massive and there are approximately 600 pages of

time entries,[6] wherein the HECO Defendants and Aloha claim that 14,143 hours and 9,536.7 hours, respectively, were expended in the defense of this action.

To ascertain the most equitable and accurate percentage reduction, the Court reviewed a sampling of time entries and conducted a traditional entry-by-entry review of the sampling.  The Court believes that by doing this, along with reviewing the remaining time entries to confirm the presence of prohibited billing practices throughout the course of the litigation, a reasonable reduction can be made.

a.   Aloha

i.   Cades Schutte

After carefully reviewing the timesheets submitted by Aloha, the Court finds that counsel's hours should be reduced by 35%.  The Court deems this percentage to be reasonable based on its detailed analysis of the first two pages of timesheets and

_____

[6]   For Aloha alone, there are more than 2,898 time entries.

40

review of the other timesheets, where many of the same deficiencies can be found.  Aloha's Mot., Ex. 6.

The first page of the time entries includes 26.25 hours expended by four attorneys.  Of those hours, 15.59 hours are compensable, 7.75 hours are insufficiently described, 4.5 hours are block billed,[7] 0.5 hours are duplicative, and all entries are billed by the quarter hour.

The second page includes 148.75 hours expended by two attorneys.  Of those hours, 98.712 hours are compensable, 2.5 hours are insufficiently described, 6.75 hours are block billed, 107.75 are excessive,[8] and all entries are billed by the quarter hour.  The identified deficiencies resulted in a reduction of 41% to page one and 34% to page two.  A 37.5% average

---

[7]  As will be discussed in greater detail below, the block billed hours were reduced by 15%, so 3.825 hours of the 4.5 were compensable, and 0.675 hours were not.

[8]  The entries identified as excessive were not eliminated in full.  Rather, the Court reduced the hours by 33% because 1/3 of the of the work was excessive.

results.  The Court finds that notwithstanding the 37.5% average, a 35% reduction should apply with respect to Aloha.  A number of deficient entries can be found throughout the timesheets but there are also a number of entries that are compensable in full.  It is the Court's position then that 35% will fairly account for non-compensable hours without giving Plaintiff a windfall.

The Court shall now explain the reductions made.  Mr. Schull's 10/13/08, 10/14/08, 10/23/08, 11/6/08, 11/10/08, and 11/12/08 entries contained insufficient descriptions.  The same is true of Mr. Heihre's 11/24/08 and 11/25/08 entries.  Local Rule 54.3(d)(2) requires that the "party seeking an award of fees . . . describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated."  Local Rule 54.3(d)(2).  The rule further provides:

> [C]ounsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine, but must nevertheless furnish an adequate

42

> non-privileged description of the services
> in question.  If the time descriptions are
> incomplete, or if such descriptions fail
> to describe adequately the services
> rendered, the court may reduce the award
> accordingly.  For example, the time
> entries for telephone conferences must
> include an identification of all
> participants and the reason for the call.

Local Rule 54.3(d)(2).  The descriptions from the above

mentioned dates are insufficient because they do not

identify the subject matter of the telephone calls and

conferences billed by Mr. Schull.

Counsel also utilized block billing.  <u>See</u>

10/13/08, 10/14/08, 10/17/08, 10/23/08, 11/6/08,

11/10/08, 11/11/08, 11/12/08 (both Mr. Schull and Ms.

Nagata), 11/13/08, 11/19/08, 11/21/08, 11/24/08,

11/29/08, 11/30/08, 12/1/08, 12/2/08, 12/3/08, and

12/4/08 entries.[9]  "The term 'block billing' refers to

---

[9]  This list is not exclusive.  Block billing
occurred throughout the course of litigation, though it
appears to be slightly less prevalent as the litigation
progressed.  It is for this reason that the Court
imposed a 15% reduction, as opposed to a higher
reduction that would otherwise be authorized by law.
Other block billed entries include, but are not limited
to:  9/21/09, 9/22/09, 9/23/09, 9/24/09, 9/25/09,
9/26/09, 9/28/09, 9/29/09, 10/1/09, 10/2/09, 10/8/09,

the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted). Block billed entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). See also id. (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple

_____

10/17/09, 10/21/09, 10/22/09, 11/3/09, 12/10/09, 4/26/10, 4/27/10, 5/6/10, 5/7/10, 5/13/10, 5/16/10, 5/18/10, 5/19/10, 6/1/10, 6/4/10, 6/16/10, 6/18/10, 7/2/10, 7/7/10, 7/16/10, 7/19/10, 7/21/10, 1/4/11, etc.

tasks, making it impossible to evaluate their reasonableness")); see also Hensley, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")). Indeed, it is challenging to assess the reasonableness of a time entry when it includes several tasks.

Counsel's extensive use of block billing makes it difficult, if not impossible, for the Court to assess the reasonableness of the hours expended as to those entries. Hence, in connection with its detailed sampling and computation, the Court imposed an across-the-board reduction of 15% as to the entries that are in the "block billing" format.[10] Gonzales, 729 F.3d at 1203 (citing Welch, 480 F.3d at 948 (affirming 20% cut to hours where fee applicant block billed, because

---

[10] A number of entries contained an insufficient description or descriptions (or were non-compensable for another reason), but were also block billed. In such cases, the Court excluded the entry altogether because, as is the challenge with block billed entries, the Court could not determine how much time to attribute to the non-compensable tasks.

45

court relied on third-party report that block billing increased number of hours by 10-30%)); <u>Signature Homes of Haw., LLC v. Cascade Sur. and Bonding, Inc.</u>, No. CV 06-00663 JMS-BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block billed hours by 20%).  The Court emphasizes that in calculating the appropriate total percentage reduction based on the sampling, only the block billed entries were reduced by 15%, so the 15% reduction does not apply to all hours.

The Court additionally made reductions for meetings, discussions, and other communications, for which multiple attorneys billed.  The general rule is that two professionals cannot bill for attending the same meeting.  <u>Brandon E. v. Dep't of Educ., State of Hawaii</u>, No. CV 07-00536 ACK-LEK, 2008 WL 4602533, at *3 (D. Haw. Oct. 16, 2008).  Thus, when a party's counsel meet with one other, the Court deducts the duplicative time billed.  <u>Id.</u>; <u>In re Mullins</u>, 84 F.3d 459, 467 (D.C. Cir. 1996) (deducting fees incurred by the two lowest-billing attorneys where three attorneys billed

time spent attending a meeting together)).

Here, duplication occurred in a number of instances, namely with respect to multiple attorneys billing for attendance at the same meeting/conference. In the Court's sampling, Mr. Heihre's 11/13/08 entry (telephone conference) was duplicative of Mr. Reneker's 11/13/08 time entry billing for the same telephone conference. Ms. Nagata also described "conferences" regarding the motion to dismiss or transfer in her 11/13/08 entry, but it is unclear whether she was billing for attendance at the same conference as Mr. Heihre and Mr. Reneker, which would be duplicative.[11] In this instance, the Court excluded Mr. Heihre's entry, but not Mr. Reneker's entry. Other instances of duplication include, but are not limited to: 9/24/09 (MJ and TN), 10/1/09 (TN and CY), 11/20/09 (MT and TN),

_____

[11] It is reasonable to presume that Ms. Nagata was billing for her attendance at the same conference as Messrs. Heihre and Reneke because Mr. Reneke listed her as a participant. In any event, this entry was already excluded for insufficiency because Ms. Nagata did not include the participant(s) of the conferences, as required by Local Rule 54.3(d)(2).

11/24/09 (MT and TN), 1/11/10 (DF and MT), 5/21/10 (DF, CG, and TN), 6/30/10 (TN, DF, and CG), 11/15/10 (DF and TN), 3/15/11 (TN, DF, and CC), and 3/24/11 (CC, TN, and DF).

Along the same lines, the Court further deducts time considered excessive and/or unnecessary. <u>Tirona</u>, 821 F. Supp. at 637. Aloha seeks to recoup over 135 hours expended to prepare their motion to dismiss/transfer. The expenditure of 135 hours in connection with the motion to dismiss/transfer was excessive. Preparation of the motion should not have required over three weeks of work by multiple attorneys/staff, given their collective experience. The Court reduced the excessive entries (107.75 hours) on page two of Exhibit 6 by 33%. When multiple attorneys are involved, the Court frequently sees a duplication of efforts, which results in excessive billing.

Another task completed by defense counsel that resulted in excessiveness is the review of the HECO

48

Defendants' briefing.  See 2/16/09 and 2/17/09 entries.
The HECO Defendants request reimbursement for the work
completed by 36 attorneys, law clerks, paralegals,
document analysts, and IT support at Alston Hunt Floyd
& Ing.  It is unclear why it was necessary for Aloha's
counsel to review the HECO Defendants' briefing when so
many individuals at Alston were involved with the case.
At least 7.5 hours were expended on review.  While this
may be a constructive exercise for counsel, it should
not be charged to Plaintiff.  Practices such as these
support the Court's determination that a 35% reduction
to Defendants' claimed hours are reasonable and
necessary.

        Finally, to offset the exclusive use of
quarter-hour billing by counsel in the sampling, the
Court reduced the total number of hours (after
reductions were made for other non-compensable hours)
by 10%.  See Welch, 480 F.3d at 949 (affirming district
court's 20% across-the-board reduction for quarter-hour
billing where such billing resulted in a request for

excessive hours, i.e., a minimum of 15 minutes billed

for tasks that likely took a fraction of the time).  To

offset the excessive hours that resulted from this

billing practice, the Court has elected to impose a 10%

reduction.  A 20% reduction would be too severe because

approximately midway through the litigation (May 2010),

defense counsel began billing by the tenth of an hour.

Inasmuch as the 35% reduction will ultimately apply to

the all of the hours expended by the Cades'

attorneys/staff, the reduction should not penalize

Aloha for a billing practice that was discontinued in

mid-2010.

Even though the clerical entries were not part

of the sampling, instances of clerical work can be

found in the timesheets.  Mr. Chipchase's 1/24/11 entry

is an example of such.  Work completed on a table of

contents/table of authorities is clerical.  The

following is a list of tasks previously deemed clerical

or ministerial in this district and are therefore

deemed non-compensable:

> reviewing Court-generated notices;
> scheduling dates and deadlines;
> calendering dates and deadlines; notifying
> a client of dates and deadlines; preparing
> documents for filing with the Court;
> filing documents with the Court; informing
> a client that a document has been filed;
> personally delivering documents; bates
> stamping and other labeling of documents;
> maintaining and pulling files; copying,
> printing, and scanning documents;
> receiving, downloading, and emailing
> documents; and communicating with Court
> staff.[12]

Haw. Motorsports Inv., Inc. v. Clayton Grp. Servs.,
Inc., Civ. No. 09-00304 SOM-BMK, 2010 WL 4974867, at *5
(D. Haw. Dec. 1, 2010), adopted by 2010 WL 5395669 (D.
Haw. Dec. 22, 2010); see also, e.g., Yamada v. Weaver,
Civil No. 10-00497 JMS-RLP, 2012 WL 6019363, at *10 (D.
Haw. Aug. 30, 2012), adopted in pertinent part by 2012
WL 6019121 (D. Haw. Nov. 30, 2012) (deeming clerical
work completed on table of authorities).

In accordance with the foregoing, the Court
shall impose a 35% reduction to the hours requested by
Aloha.

---

[12] This list is a sampling and is not exhaustive.

### ii. <u>Munsch Hardt Kopf & Harr</u>

Having also taken a sampling from Aloha's Texas counsel, the Court finds that a reduction of 27% would be appropriate.  Like the Cades' attorneys, the Munsch attorneys' timesheets included block billing, insufficient descriptions, clerical work, and duplication.  Because the three-page sampling was nearly half of the timesheet submissions provided by Munsch for the Court's review, the Court believes that the 27% reduction is a fair and accurate reflection of the deductions that would be made to the requested hours were the Court to conduct a line-by-line review.

### b. <u>HECO Defendants</u>

As earlier mentioned, the HECO Defendants request that the Court impose a reduction of no more than 10% to their requested hours.  After careful consideration of the timesheets and the multiple clarifying exhibits attached to the HECO Defendants' reply memorandum, the Court, in the exercise of its discretion, finds that a 10% reduction is appropriate

under the circumstances.  Although a number of time entries (or portions thereof) in the charts attached as Exhibit 4 to the HECO Defendants Motion[13] are non-compensable, the supplemental documents that the HECO Defendants submitted with their reply memorandum rectified many of the deficiencies.[14]  Consequently, a 10% reduction should adequately account for non-compensable hours that may be part of the requested award.

Based on the foregoing, the Court shall reduce Cades Schutte's lodestar by 35%; Munsch Hardt Kopf & Harris' lodestar by 27%; and the HECO Defendants' counsel's lodestar by 10%.  The Court will then apply a

---

[13]  For example, there are a number of entries with insufficient descriptions and duplication.

[14]  In future fee submissions, counsel are advised to submit sufficient entries in the first instance. Proper submissions should not be filed only after the deficiencies are highlighted by the opposing party. The Court should not be required to compare original time entries with supplemental explanations/ clarification to confirm that requested hours are compensable.  Moreover, the Court cannot help but question how counsel were able to provide additional details years after they completed tasks when said details were not in the original time entries.

20% reduction to the resulting lodestars to account for the non-assumpsit claims.

     3.   <u>Total Fee Award</u>

     The Court finds the following fee award to be reasonable for Defendants:

     a.   <u>HECO Defendants</u>

**&lt;Alston Hunt Floyd & Ing&gt;**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Allison Kirk Griffiths | 654 | $180 | $117,720.00 |
| Britten McClain (paralegal) | 248.7 | $85 | $21,139.50 |
| Clyde J. Wadsworth | 3,060.4 | $290 | $887,516.00 |
| David Abidir | 5.8 | $150 | $870.00 |
| David Higgins | 3 | $180 | $540.00 |
| Daniel Povich | 372 | $160 | $59,520.00 |
| David Austin | 222.9 | $150 | $33,435.00 |
| Diane Brookins | .5 | $275 | $137.50 |
| Erica Chee (law clerk) | 277.3 | $100 | $27,730.00 |
| Erica Chee (associate) | 851.3 | $145 | $123,438.50 |
| Gail Pang (document analyst) | 211 | $50 | $10,550.00 |

| | | | |
|---|---|---|---|
| Glenn Melchinger | 88.4 | $200 | $17,680.00 |
| Herbert Chun (IT support) | 222.2 | $0 | $0.00 |
| Iris Takane (paralegal) | 1,550.1 | $90 | $139,509.00 |
| Jya-Ming Bunch (document analyst) | 57 | $50 | $2,850.00 |
| John Ferry | 475.1 | $145 | $68,889.50 |
| Jael Makagon | 34.4 | $150 | $5,160.00 |
| Jabin Vinoya (document analyst) | 2.3 | $50 | $115.00 |
| Jennifer Stringfellow | 1.4 | $100 | $140.00 |
| Kathryn Brockett (document analyst) | 637.3 | $50 | $31,865.00 |
| Kyoko Patoc (paralegal) | 20.9 | $85 | $1,776.50 |
| Kevin Worthington (IT support) | 362.8 | $0 | $0.00 |
| Louise Ing | 6.7 | $325 | $2,177.50 |
| Lexi McKay (paralegal) | 732.8 | $85 | $62,288.00 |
| Malia Kakos | 1,051.3 | $225 | $236,542.50 |
| Maren Calvert | 265.5 | $195 | $51,772.50 |
| Noreen Kanada (paralegal) | 21 | $85 | $1,785.00 |
| Orlesia Tucker | 646.1 | $225 | $145,372.50 |

| | | | |
|---|---|---|---|
| Paul Alston | 534.2 | $425 | $227,035.00 |
| Quentin Weld (law clerk) | 2 | $100 | $200.00 |
| Shellie Park Hoapili | 269.1 | $170 | $45,747.00 |
| Samson Lee (document analyst) | 569 | $50 | $28,450.00 |
| Thomas Bush | 4 | $260 | $1,040.00 |
| Thomas Moriarty (law clerk) | 66.6 | $100 | $6,660.00 |
| Tyler McNish | 76.3 | $140 | $10,682.00 |
| Zion Kawahakui (IT support) | 167.3 | $0 | $0.00 |
| Document Analyst | 210 | $0 | $0.00 |
| **SUBTOTAL** | 13,980.7 | 0 | $2,370,333.50 |
| | | with 10% reduction | $2,133,300.15 |
| | | with 20% reduction (for non-assumpsit claims) | $1,706,640.12 |
| | | 4.712% tax | $80,416.88 |
| **TOTAL** | | | **$1,787,057.00** |

**<Sonnenschein Nath & Rosenthal>**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| C. Michael Moore (2008) | 7.57 | $522 | $3,951.54 |
| C. Michael Moore (2009) | 19.7 | $585 | $11,524.50 |
| Gene Bensen (2008) | 46 | $324 | $14,904.00 |
| Gene Bensen (2009) | 22.81 | $364.50 | $8,314.25 |
| Robert Needham (2008) | 14.28 | $229.50 | $3,277.26 |
| Robert Needham (2009) | 42.29 | $243 | $10,276.47 |
| C. Taylor (paralegal) (2008) | 1.27 | $180 | $228.60 |
| C. Taylor (paralegal) (2009) | 8.38 | $189 | $1,583.82 |
| **SUBTOTAL** | 162.3 | | $54,060.44 |
| | | with 10% reduction | $48,654.40 |
| **TOTAL** | | with 20% reduction (for non-assumpsit claims) | **$38,923.52** |

b.  <u>Aloha</u>

**&lt;Cades Schutte&gt;**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| Amy Parker (paralegal) | 75.25 | $90 | $6,772.50 |
| Calvert Chipchase (2009) | 89 | $190 | $16,910.00 |
| Calvert Chipchase (2010) | 267.35 | $190 | $50,796.50 |
| Calvert Chipchase (2011) | 187.4 | $190 | $35,606.00 |
| C. Michael Heihre (2008) | 138.25 | $330 | $45,622.50 |
| C. Michael Heihre (2009) | 1,019.3 | $340 | $346,562.00 |
| C. Michael Heihre (2010) | 1,432.2 | $350 | $501,270.00 |
| C. Michael Heihre (2011) | 706.2 | $360 | $254,232.00 |
| Cheryl Yasunaga (paralegal) (2009) | 97.5 | $85 | $8,287.50 |
| Cheryl Yasunaga (paralegal) (2010) | 126.5 | $85 | $10,752.50 |
| Christopher Goodin (2010) | 235.25 | $165 | $38,816.25 |
| Christopher Goodin (2011) | 4.2 | $165 | $693.00 |
| Douglas Frederick (2009) | 83.5 | $135 | $11,272.50 |

| | | | |
|---|---|---|---|
| Douglas Frederick (2010) | 915.15 | $150 | $137,272.50 |
| Douglas Frederick (2011) | 249.4 | $150 | $37,410.00 |
| Diane Kon (paralegal) (2009) | 45 | $90 | $4,050.00 |
| Diane Kon (paralegal) (2010) | 21 | $90 | $1,890.00 |
| Dennis Chong Kee | .25 | $250 | $62.50 |
| E. Gunner Schull (2008) | 8.25 | $330 | $2,722.50 |
| E. Gunner Schull (2009) | .25 | $340 | $85.00 |
| E. Gunner Schull (2010) | .2 | $295 | $59.00 |
| Eaton O'Neil (2009) | 48.5 | $140 | $6,790.00 |
| Eaton O'Neil (2010) | 194.3 | $150 | $29,145.00 |
| Michael Schwartz (2009) | 45.5 | $190 | $8,645.00 |
| Michael Schwartz (2010) | 5.35 | $190 | $1,016.50 |
| Martin Hsia | .3 | $300 | $90.00 |
| Megan Johnson | 59 | $170 | $10,030.00 |
| Mitsuko Takahashi (2009) | 77.75 | $135 | $10,496.25 |
| Mitsuko Takahashi (2010) | 130.2 | $145 | $18,879.00 |

| | | | |
|---|---|---|---|
| Mitsuko Takahashi (2011) | 3 | $145 | $435.00 |
| Nathan Okubo (2009) | 47.25 | $165 | $7,796.25 |
| Nathan Okubo (2010) | 8 | $165 | $1,320.00 |
| Renee Mariano (paralegal) | 2.2 | $85 | $187.00 |
| Teri-Ann Nagata (2008) | 96.75 | $180 | $17,415.00 |
| Teri-Ann Nagata (2009) | 673 | $180 | $121,140.00 |
| Teri-Ann Nagata (2010) | 833.45 | $180 | $150,021.00 |
| Teri-Ann Nagata (2011) | 416.9 | $180 | $75,042.00 |
| Winnie Pham (paralegal) (2010) | 872.15 | $85 | $74,132.75 |
| Winnie Pham (paralegal) (2011) | 273.4 | $85 | $23,239.00 |
| **SUBTOTAL** | 9,488.4 | 0 | $2,066,964.50 |
| | | with 35% reduction | $1,343,526.93 |
| | | with 20% reduction (for non-assumpsit claims) | $1,074,821.54 |
| | | 4.712% tax | $50,645.59 |

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| **TOTAL** | | | **$1,125,467.13** |

**<Munsch Hardt Kopf & Harr>**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| D. Ronald Reneker | 39.2 | $400 | $15,680.00 |
| John Thompson | .4 | $275 | $110.00 |
| Michael Lee | 8.7 | $250 | $2,175.00 |
| **SUBTOTAL** | 48.3 | | $17,965.00 |
| | | with 27% reduction | $13,114.45 |
| **TOTAL** | | with 20% reduction (for non-assumpsit claims) | **$10,491.56** |

As prescribed by HRS § 607-14, the Court must ensure that the total fee award does not exceed 25% of the amount sued for. Haw. Rev. Stat. § 607-14 ("The above fees provided for by this section shall be assessed . . . upon the amount sued for if the defendant obtains judgment."). Plaintiff did not pray for damages, but in its First Amended Rule 26 Disclosures, it alleged that Defendants' wrongful

actions caused damages between $28,777,786.00 and $43,727,717.00.  Even if the Court uses the minimum $28,777,786.00 amount to calculate the 25% limitation, Defendants would be able to recover up to $7,194,446.50 in fees.  Accordingly, Defendants' $2,961,939.21 in reasonable fees is recoverable.

## II. Non-Taxable Costs

Defendants seek to recover non-taxable costs pursuant to HRS § 607-14.  Aloha requests $39,274.06 in costs and the HECO Defendants request $68,062.74 in costs.  Plaintiff did not oppose the request for non-taxable costs.

HRS § 607-14 does not expressly authorize an award of non-taxable costs in addition to attorneys' fees.  Sunday's Child, LLC v. Irongate Azrep BW LLC, Civil No. 13-00502 DKW-RLP, 2014 WL 2451556, at *4 (D. Haw. Apr. 11, 2014), adopted in pertinent part by 2014 WL 2451560 (D. Haw. May 30, 2014).  However, Hawaii courts have awarded non-taxable costs pursuant to § 607-14.  Id. (citing Ko Olina Dev., LLC v. Centex

<u>Homes</u>, CV. NO. 09-00272 DAE-LEK, 2011 WL 1235548, at
*14 (D. Haw. Mar. 29, 2011); <u>Fought & Co., Inc. v.
Steel Eng'g & Erection, Inc.</u>, 87 Hawai'i 37, 52, 951
P.2d 487, 502 (Haw. 1998)).

A.   <u>Mediation Expenses</u>

Defendants ask for $11,333.32 in mediation
expenses ($5,666.66 each).   Mediation fees are
recoverable pursuant to HRS § 607-14 and the Court
finds that the expenses were reasonably and necessarily
incurred.   <u>Ko Olina Dev.</u>, 2011 WL 1235548, at *15.
Thus, the Court recommends that the HECO Defendants and
Aloha each recover $5,666.66 in mediation expenses.

B.   <u>Travel Expenses</u>

The HECO Defendants request $4,328.48, and
Aloha requests $3,069.45, in travel expenses associated
with depositions in Dallas, San Diego, and Honolulu.[15]

---

[15]   The HECO Defendants cite a District of Oregon
case, <u>Scruggs v. Josephine Cty.</u>, Civil No. 06-6058-CL,
2009 WL 650626 (D. Or. Mar. 10, 2009), as well as a
case from this district, <u>Goray v. Unifund CCR Partners</u>,
Civil No. 06-00214 HG-LEK, 2008 WL 2404551 (D. Haw.
Jun. 13, 2008), to support the request.   Both of these
cases involved requests for non-taxable costs pursuant
to 42 U.S.C. § 2000e-5(k).   They are therefore

Travel expenses may be recovered, _id._, and it appears that these expenses were reasonable and necessary. Defendants provided documentation for the requested expenses. The Court therefore finds that $7,397.93 is compensable –$4,328.48 for the HECO Defendants and $3,069.45 for Aloha.

C. <u>Document Delivery Expenses</u>

The HECO Defendants and Aloha request $1,114.70 and $1,408.43 ($1,376.50[16] for Cades and $31.93 for Munsch) in document delivery expenses, respectively. The Court finds that these expenses are akin to postage/courier costs, and are recoverable. <u>Sunday's Child</u>, 2014 WL 2451556, at *5 (awarding postage costs).

---

inapposite. HRS § 607-14's standard is not whether the expenses are the type normally charged to a fee paying client. <u>But</u> <u>see</u> <u>Scruggs</u>, 2009 WL 650626, at *7 (emphasis added) ("Out-of-pocket expenses and other costs which are not recoverable as taxable costs under 42 U.S.C. § 1920 but are typically charged to a fee-paying client may be allowed by the court as part of an attorney's fee award under <u>42 U.S.C. § 2000e-5(k)</u>.").

[16] Aloha's total is $0.14 short. Exhibit 8J shows a total of $61.44, but Aloha's itemized table attached as Exhibit 8 logged only $61.30.

The HECO Defendants also request, as
miscellaneous costs, messenger delivery expenses
totaling $477.00 and postage costs totaling $189.77.
Although these expenses are generally recoverable, the
Court declines to award them here because other than
dates and associated costs, there is no description of
the postage or messenger expenses.  The limited
information provided by the HECO Defendant precludes a
reasonableness analysis.  Consequently, the Court
declines to award the postage and messenger expenses.

D.   Expert Fees

The HECO Defendants request $28,369.01, and
Aloha requests $28,285.00, in expert fees.  Expert fees
have been awarded in this district pursuant to HRS
§ 607-14.[17]  Deguchi v. Allstate Ins. Co., Civil No.
07-00144 JMS-LEK, 2008 WL 4344741, at *9 (D. Haw. Feb.
23, 2008).  Accordingly, the Court recommends that
Aloha recover $28,285.00 in expert fees and that the

_____

[17]   The HECO Defendants again improperly rely upon
Scruggs.  Scruggs implicated 42 U.S.C. § 2000e-5(k),
which expressly provides for the recovery of expert
fees.  Scruggs, 2009 WL 650626, at *7.

HECO Defendants recover $28,369.01 in expert fees.

E.   Discovery Expenses

Aloha seeks to recover expenses related to discovery, such as forensic collection and copying of a deponent's hard drive and retrieval of documents.  The Court declines to award these expenses.  Aloha has not cited any cases that support this request.  The Ninth Circuit case upon which they rely does not authorize discovery expenses under Hawaii law, as it pertains to expenses recoverable under 42 U.S.C. § 1988.  Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994).

F.   Electronic Research

The HECO Defendants request $26,306.07 in electronic/factual research expenses, arguing that such expenses are typically charged to fee paying clients and are compensable as reasonable attorneys' fees.  The Court disagrees.

> [I]n *DFS Group L.P. v. Paiea Properties*, the Hawaii Supreme Court examined whether [electronic research] costs were recoverable under Section 607-14 and expressly held that "computer-assisted research charges are subsumed within a law

66

> firm's overhead and therefore the client
> may not recover such costs by classifying
> them as separately billed attorneys'
> fees."

Sunday's Child, 2014 WL 2451556, at *5 (quoting DFS

Group, 110 Hawai'i at 225, 131 P.3d at 508).  The HECO

Defendants rely on a District of Idaho case, Bjornson

v. Dave Smith Motors/Frontier Leasing & Sales, 578 F.

Supp. 2d 1269, 1289 (D. Idaho 2008), to support their

request.  However, Bjornson directly contradicts Hawaii

precedent regarding the recovery of electronic research

expenses pursuant to HRS § 607-14.  Moreover, Bjornson

was a civil rights action, which implicates federal

statutory provisions with respect to the recovery of

expenses.[18]  The Court accordingly recommends that the

request for electronic research fees be denied.  Ko

Olina Dev., 2011 WL 1235548, at *15 ("Pursuant to DFS,

Defendant's requested online legal research fees must

---

[18]  The HECO Defendants' reliance on Goray is
likewise misplaced, as a federal statutory provision
governed the entitlement to costs.  Goray, 2008 WL
2404551, at *8.  Defendants are encouraged to verify
that expenses are compensable before seeking recovery
and to cite applicable cases.

be subsumed in KSG's overhead and cannot be recovered as costs separate from KSG's attorneys' fees.  The Court therefore concludes that Defendant's request for $9,094.38 in online legal research fees is not compensable.").

G.  Hawaii Supreme Court Filing Fee

The HECO Defendants request reimbursement of the $125.00 filing fee expended in connection with the certification to the Hawaii Supreme Court.  Insofar as this expense was reasonably and necessarily incurred, the Court shall permit its recovery.[19]

H.  Conference Calls

The HECO Defendants seek $94.09 in conference call expenses.  They represent that the telephone conferences were held to discuss case strategy, discovery issues, and a stipulation.  The Court is satisfied that the costs were reasonable and necessary and finds that they are compensable.

---

[19]  That this is an expense that would normally be paid to a fee paying client did not factor in the Court's decision.

I.  Supplies

The HECO Defendants request $1,149.28 in
supplies - two hard drive disks to capture documents
responsive to Plaintiff's first request for production
of documents.  These were for the convenience of the
HECO Defendants and were not reasonably necessary to
litigate this action.  Id. (deeming non-compensable
supplies that were purchased for use at arbitration and
trial because they "were for the use and convenience of
defense counsel, but were not reasonably necessary to
litigate this action").  The Court therefore finds that
the HECO Defendants' request for $1,448.72 in office
supplies is not compensable.

J.  Miscellaneous

The remaining costs requested by the HECO
Defendants are as follows:  1) long distance phone
calls ($62.78); 2) long distance fax ($2.50);
3) international fax ($2.00); and 4) Stahlkopf phone
bill ($189.77).  The HECO Defendants have not provided
any information about the purpose of the long distance

phone calls and faxes.  This makes it difficult to ascertain whether the costs were reasonably and necessarily incurred.  Given its inability to make a reasonableness determination based on the limited explanation provided, the Court declines to recommend an award of long distance calls and faxes.  By contrast, a sufficient description was provided with respect to the Stahlkopf phone bill.  The HECO Defendants may therefore recover $189.77.

In sum, the Court recommends that the HECO Defendants be awarded **$39,887.71** in non-taxable costs - $4,328.48 in travel expenses; $5,666.66 in mediation expenses; $1,114.70 in document delivery expenses; $28,369.01 in expert fees; $94.09 in conference call expenses; $125.00 in Hawaii Supreme Court filing fees; and $189.77 for the Stahlkopf phone bill.  The Court additionally recommends that Aloha be awarded **$38,429.54** in non-taxable costs - $3,069.45 in travel expenses; $5,666.66 in mediation expenses; $1,408.43 in document delivery expenses; and $28,285.00 in expert

fees.  Even with this additional award of $78,317.25 in non-taxable expenses, Defendants' total recovery is $3,040,256.46, well below the 25% cap imposed by HRS § 607-14.

## CONCLUSION

Based on the foregoing, this Court FINDS and RECOMMENDS that Defendant Hawaiian Electric Company, Inc., Maui Electric Company, Ltd., and Karl Stahlkopf's Motion for Attorneys' Fees and Non-Taxable Costs (Doc. No. 639) and Defendant Aloha Petroleum, Ltd.'s Motion for Attorneys' Fees and Related Non-Taxable Costs (Doc. No. 678) be GRANTED IN PART AND DENIED IN PART and that Plaintiff BlueEarth Biofuels, LLC's Motion for Award of Attorneys' Fees (Doc. No. 643), be DENIED.

The Court RECOMMENDS THAT the HECO Defendants be awarded **$1,825,980.52** in attorneys' fees and **$39,887.71** in non-taxable expenses, and that Aloha be awarded **$1,135,958.69** in attorneys' fees and **$38,429.54** in non-taxable expenses.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, December 29, 2014.



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 09-00181 LEK-KSC; <u>BlueEarth Biofuels, LLC v. Hawaiian Electric Company, Inc., et al.</u>; FINDINGS AND RECOMMENDATION TO (1) GRANT IN PART AND DENY IN PART DEFENDANTS HAWAIIAN ELECTRIC COMPANY, INC., MAUI ELECTRIC COMPANY, LTD., AND KARL STAHLKOPF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS; (2) GRANT IN PART AND DENY IN PART DEFENDANT ALOHA PETROLEUM, LTD.'S MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS; AND (3) DENY PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES